# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYES, | ) ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 23-1157 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. EPA, | ) ) ) ) | |
| Respondents. | ) ) | |

---

## STATE OF UTAH'S MOTION TO STAY THE FINAL RULE OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY

---

Emily C. Schilling
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107
trvanbockern@hollandhart.com
abtucker@hollandhart.com

Sean D. Reyes
ATTORNEY GENERAL OF UTAH
Melissa A. Holyoak
SOLICITOR GENERAL
*Counsel of Record*
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320
Ph. 801-538-9600
melissaholyoak@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW
LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Ph. 302-300-0388
William_Wehrum@comcast.net
*Attorneys for Petitioner State of Utah*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Petitioner, the State of Utah, hereby certifies as follows:

**(A) Parties and Amici**

   **i.    Parties, Intervenors, and Amici who Appeared in the District Court**

This case is a petition for review of final agency action, not an appeal from a district court's ruling.

   **ii.   Parties to this Case**

<u>Petitioner</u>: The State of Utah.

<u>Respondents</u>: The United States Environmental Protection Agency ("EPA") and Michael S. Regan, in his official capacity as Administrator of the EPA.

<u>Intervenors</u>: None at present.

**iii.   Amici in this Case**

None at present.

**iv.   Circuit Rule 26.1 Disclosures**

Not applicable because Petitioner is a state government.

**(B) Rulings Under Review**

Utah seeks review of EPA's final action promulgating a federal implementation plan ("FIP") for Utah to address the interstate transport requirements of 42 U.S.C. § 7410(a)(2)(D)(i)(I) for the 2015 8-hour ozone national ambient air quality standards.

EPA's final action is titled "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality," and is published in the Federal Register at 88 Fed. Reg. 36,654 (June 5, 2023) (EPA Docket No. EPA-HQ-OAR-2021-0668). Att. 1.

**(C) Related Cases**

There are no pending related cases before this Court.

The following petitions for review challenging the portions of EPA's Final Rule imposing the federal implementation plan on other states are pending before other Circuit Courts:

- *Texas v. EPA*, No. 23-60300 (5th Cir. June 7, 2023)

- *Nevada Cement Co. LLC v. EPA*, No. 23-1098 (9th Cir. June 5, 2023)

- *Tulsa Cement LLC v. EPA*, No. 23-9551 (10th Cir. June 5, 2023)

- *PacifiCorp v. EPA*, No. 23-9557 (10th Cir. June 26, 2023)

- *Oklahoma et. al. v. U.S. Environmental Protection Agency*, No. 23-9561 (10th Cir. June 30, 2023)

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULES 18(A)(1) AND (A)(2)

The undersigned certifies that this Motion for Stay complies with Circuit Rule 18(a)(1). Petitioner previously requested relief from Respondents EPA and Michael S. Regan, EPA Administrator, in a Petition for Administrative Stay submitted on June 14, 2023. Att. 2. Utah's Petition for Administrative Stay requested that EPA grant a stay of the portion of the Final Rule imposing a FIP for Utah. *Id.* After receiving no response from EPA or its Administrator, Utah filed this Motion to Stay.

In accordance with Circuit Rule 18(a)(2), on June 30, 2023, Utah notified the Respondents' counsel by email that it planned to file this Motion to Stay the Final Rule. The United States opposes this Motion and plans to file a response.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES ...................................................................................i

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULES 18(a)(1) AND (a)(2) .........................................................iii

TABLE OF AUTHORITIES ....................................................vi

GLOSSARY OF TERMS ..........................................................ix

LIST OF ATTACHMENTS ........................................................x

INTRODUCTION ......................................................................1

STATEMENT OF THE CASE ..................................................3

I.    Statutory Framework..........................................................3

    A.    Cooperative Federalism .........................................3

    B.    The Interstate Transport Provision and the Ozone NAAQS ......................................................................4

II.   Procedural Background.......................................................6

    A.    Utah's Interstate Transport SIP Submissions ......6

    B.    EPA's Proposed FIP ...............................................7

    C.    EPA's Disapproval of Utah's SIP ...........................9

    D.    Challenges to EPA's SIP Disapprovals..................9

    E.    EPA's Final Transport FIP ...................................10

ARGUMENT ...........................................................................12

I.    Utah is Likely to Prevail on the Merits. ..........................12

**A.** EPA Failed to Explain its Change in the Treatment of Interstate Transport in the West.......................................... 14

    **1.** EPA has Long Recognized That Assessing Interstate Transport in the West Requires Distinct Analytical Considerations.............................. 14

    **2.** EPA Failed to Explain Its Abrupt Change in Course................................................................... 18

**B.** EPA Arbitrarily Applied the Four-Step Approach to Assess Significant Contribution for Utah But Not Other Western States. ........................................... 19

    **1.** EPA Continues to Apply a Separate Analytical Approach for Interstate Transport in the West. ......... 20

    **2.** EPA Arbitrarily Applied the Four-Step Framework to the Exclusion of the Weight-of-Evidence Approach........................................ 22

**II.** Utah Will Suffer Irreparable Injury Absent a Stay. ..................... 23

    **A.** Harms Flowing From the FIP................................. 23

    **B.** Harms Flowing From the Judicial Orders Staying EPA's SIP Disapprovals for Other States. ........................... 24

**III.** The Balance of Harms and the Public Interest Favor a Stay. ....... 26

CONCLUSION ........................................................ 28

CERTIFICATE OF COMPLIANCE......................................... 30

CERTIFICATE OF SERVICE.............................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ATK Launch Sys. v. EPA,*
  669 F.3d 330 (D.C. Cir. 2012) ............................................................. 12

*Burlington Northern & Santa Fe Ry. v. Surface Transp. Bd.,*
  403 F.3d 771 (D.C. Cir. 2005) ....................................................... 19, 22

*Dominion Transmission, Inc. v. Summers,*
  723 F.3d 238 (D.C. Cir. 2013) ............................................................... 3

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ...................................................................... 13, 19

*Lone Mountain Processing, Inc. v. Secretary of Labor,*
  709 F.3d 1161 (D.C. Cir. 2013) ......................................................... 19

*Nasdaq Stock Mkt. LLC v. SEC,*
  38 F.4th 1126 (D.C. Cir. 2022) .......................................................... 13

*Sierra Club v. Ga. Power Co.,*
  180 F.3d 1309 (11th Cir. 1999) ......................................................... 28

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) ....................................................... 24, 28

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................ 12

## STATUTES

5 U.S.C. § 706(2)(A) ............................................................................ 12

42 U.S.C. §§ 7408–7409 ........................................................................ 3

42 U.S.C. § 7410(a)(1) ..................................................................... xi, 3

42 U.S.C. § 7410(a)(2)(D)(i) ............................................................ 3, 4

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...................................................................... ii

42 U.S.C. § 7410(c)(1) .................................................................................. 3

42 U.S.C. § 7607(d)(9).................................................................................. 12

### FEDERAL REGISTER

62 Fed. Reg. 60,318 (Nov. 7, 1997)............................................................ 16

63 Fed. Reg. 57,356 (Oct. 27, 1998) .......................................................... 16

70 Fed. Reg. 25,162 (May 12, 2005) ............................................................ 4

70 Fed. Reg. 25162 (May 12, 2005) ........................................................... 16

75 Fed. Reg. 45,210 (Aug. 2, 2010)............................................................ 16

76 Fed. Reg. 48,208 (Aug. 8, 2011)....................................................... 4, 16

80 Fed. Reg. 65,292 (Oct. 26, 2015)...................................................... 5, 15

80 Fed. Reg. 75,706 (Dec. 3, 2015) ..................................................... 17, 20

81 Fed. Reg. 15,200 (Mar. 22, 2016) .................................................... 20, 21

81 Fed. Reg. 71,991 (Oct. 19, 2016)........................................................... 18

81 Fed. Reg. 74,504 (Oct. 26, 2016)................................................... 5, 6, 17

83 Fed. Reg. 65,878 (Dec. 21, 2018) ......................................................... 17

86 Fed. Reg. 23,054 (Apr. 30, 2021) .......................................................... 17

87 Fed. Reg. 20,036 (Apr. 6, 2022) ............................................... 7, 8, 20, 21

87 Fed. Reg. 31,470 (May 24, 2022) ............................................................ 9

88 Fed. Reg. 9,336 (Feb. 13, 2023) .............................................................. 9

88 Fed. Reg. 36,654 (June 5, 2023) .................................................... *passim*

## RULES

Cir. R. 8(a)(1) ................................................................ 12

Cir. R. 18(a)(1) ...........................................................iii, 12

Cir. R. 18(a)(2) ................................................................iii

Cir. R. 26.1 ......................................................................i

Cir. R. 27(a)(2) ............................................................... 30

Cir. R. 28(a)(1) ..................................................................i

Fed. R. App. P. 25(c) ....................................................... 30

Fed. R. App. P. 27(d)(1)-(2) ........................................... 30

Fed. R. App. P. 27(d)(1)(E) ............................................ 30

Fed. R. App. P. 32(f) ....................................................... 30

# GLOSSARY OF TERMS

| | |
|---|---|
| Act or CAA | Clean Air Act |
| APA | Administrative Procedure Act |
| EGU | Electricity generating units |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | *Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality,* 88 Fed. Reg. 36,654 (June 5, 2023) |
| FIP | Federal Implementation Plan |
| NAAQS | National Ambient Air Quality Standards |
| $NO_x$ | Nitrogen oxide |
| Ozone Transport Provision | Section 110(a)(1) of the CAA; 42 U.S.C. § 7410(a)(1) |
| Proposed FIP | *Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard,* 87 Fed. Reg. 20,036 (Apr. 6, 2022) |
| SIP | State Implementation Plan |
| UDAQ | Utah Division of Air Quality |
| VOCs | Volatile Organic Compounds |

# LIST OF ATTACHMENTS

**Number**                                      **Title**

1    "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality," 88 Fed. Reg. 36,654 (June 5, 2023) ("Final Rule")

2    Utah's Petition for Administrative Stay (June 14, 2023)

3    Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I), (March 27, 2018), available at https://www.epa.gov/sites/default/files/2018-03/documents/transport_memo_03_27_18_1.pdf, ("March 2018 Memorandum")

4    Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards, (August 31, 2018), available at https://www.epa.gov/sites/default/files/2018-09/documents/contrib_thresholds_transport_sip_subm_2015_ozone_memo_08_31_18.pdf, ("August 2018 Memorandum")

5    Declaration of Bryce Bird, Director of the Utah Division of Air Quality

6    Utah's 2015 State Implementation Plan Infrastructure Elements for Ozone, EPA-R08-OAR-2022-0315-0007, (January 24, 2020), available at https://www.regulations.gov/document/EPA-R08-OAR-2022-0315-0007, ("Utah SIP")

7    Utah's Comments on the Proposed Rule, EPA-HQ-OAR-2021-0668-0436, (June 21, 2022), available at https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0436, ("UDAQ Comments")

8    Berkshire Hathaway Energy Company's Comments, EPA-HQ-OAR-2021-0668-0554, (June 21, 2022), available at

https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0554, ("BHE Comments")

9       Utah Associated Municipal Power Systems' Comments, EPA-HQ-OAR-2021-0668-0520, (June 21, 2023), available at https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0520, ("UAMPS Comments")

10      EPA Memorandum from Joseph Goffman, Principal Deputy Assistant Administrator, Office of Air and Radiation, regarding Notice of Forthcoming EPA Action to Address Judicial Stay Orders (June 1, 2023), available at https://www.epa.gov/system/files/documents/2023-06/Goffman%20Memo%20re%20Stay%20Orders_060123%20JG%20%281%29.pdf, ("EPA Memorandum")

11      EPA Air Quality Modeling Final Rule Technical Support Document 2015 Ozone NAAQS Good Neighbor Plan, Appendix C, available at https://www.epa.gov/system/files/documents/2023-03/AQ%20Modeling%20Final%20Rule%20TSD.pdf, ("Technical Support Document")

12      EPA, Response to Public Comments on Proposed Rule, Excerpts, available at https://www.epa.gov/system/files/documents/2023-03/Response%20To%20Comments%20Document%20Final%20Rule.pdf, ("Response to Comments")

13      EPA, Regulatory Impact Analysis for the Final Federal Good Neighbor Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard, Excerpts, available at https://www.epa.gov/system/files/documents/2023-03/SAN%208670%20Federal%20Good%20Neighbor%20Plan%2020230315%20RIA_Final.pdf, ("Regulatory Impact Analysis")

14      EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, Excerpts (April 2020), Excerpts, available at https://www.epa.gov/isa/integrated-science-

assessment-isa-ozone-and-related-photochemical-oxidants, ("ISA")

15    Declaration of Chris Parker, Director of the Utah Division of Public Utilities

16    Declaration of Thad LeVar, Chair of the Utah Public Service Commission

17    Declaration of Malcolm Nash, Director of the Economic Development Department for Sevier County, Utah

## INTRODUCTION

The State of Utah moves under Federal Rule of Appellate Procedure 18(a)(2), Circuit Rule 18, and Administrative Procedure Act ("APA"), 5 U.S.C. § 705, for a stay of EPA's "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality" ("Final Rule"), 88 Fed. Reg. 36,654 (June 5, 2023), Att. 1, as applied to Utah. EPA's Final Rule is predicated on disapproval of state plans, including the plan submitted by Utah, and imposes an emissions control program in 23 states to address the Clean Air Act's ("CAA") interstate transport requirements for the 2015 8-hour ozone national ambient air quality standards ("NAAQS").

EPA's decision to impose a federal implementation plan ("FIP") requiring emission reductions in Utah to address downwind air quality in Colorado is arbitrary, capricious, and contrary to law. Utah, like other Western states, faces conditions distinct from those affecting interstate transport in the East—conditions that EPA acknowledges and has consistently considered in previous interstate transport rulemakings. EPA failed to adequately explain why it changed its analytical approach here for Utah and arbitrarily chose to dismiss a methodology designed to

account for unique conditions that have a material impact on interstate ozone transport in the West.

Compliance with the FIP's draconian emission reductions requires immediate action by Utah power plants' operators. They must quickly decide whether to install expensive air pollution controls (at a cost of hundreds of millions of dollars per unit), scale back operations, or purchase emissions allowances. These measures will lead to higher retail electricity prices and the very real possibility that power plants will be shuttered, severely compromising the reliability of Utah's power supply at a time when the country is on the brink of a "reliability crisis."[1] These costs and power reliability impacts will ultimately be borne by Utah and its citizens.

Furthermore, the increasing number of states exempt from the FIP by judicial stays of EPA's disapprovals of state plans leaves Utah in an allowance trading program in which over 40% of the allowance credits

---

[1] Statement of Federal Energy Regulatory Commission Commissioner Mark C. Christie, Senate Energy and Natural Resources Committee Hearing (May 4, 2023), https://www.energy.senate.gov/services/files/1D618EDD-7CED-4BC5-8F09-C8F0668FE608.

held by other states are no longer in the program. While this situation persists, allowances will be less available and will cost even more than EPA projected when it finalized the rule, thus materially increasing the cost of compliance, harming Utah and the affected sources in Utah.

A stay of EPA's decision to impose a FIP on Utah pending judicial review is therefore justified.

## STATEMENT OF THE CASE

### I.    Statutory Framework

### A.    Cooperative Federalism

"Air quality regulation under the CAA is an exercise in cooperative federalism[.]" *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 240 (D.C. Cir. 2013). Congress directs EPA to establish NAAQS for pollutants such as ozone, 42 U.S.C. §§ 7408–7409, but then shifts responsibility to the states to develop emissions control programs needed to comply with the NAAQS. *Id*. § 7410(a)(1). After EPA issues a new or revised NAAQS, each state must submit to EPA a SIP that sets out programs and emission limitations adequate to demonstrate compliance with the NAAQS. *Id*.

If EPA determines that a state failed to submit an adequate SIP, EPA must promulgate a FIP within two years, unless the state corrects the deficiency before a FIP is issued. *Id.* § 7410(c)(1).

## B. The Interstate Transport Provision and the Ozone NAAQS

CAA Section 110(a)(2)(D)(i) requires "adequate provisions" in SIPs to mitigate in-state emissions that "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any" NAAQS. *Id.* § 7410(a)(2)(D)(i).

Neither the CAA nor EPA's regulations define when upwind states "contribute significantly" to downwind nonattainment or "interfere with maintenance." Instead, EPA developed a policy-based four-step analytical "framework" that it has applied in making its own significant contribution determinations.[2]

The four steps are as follows:

> (Step 1) identify[ ] downwind receptors [ ] expected to have problems attaining or maintaining the NAAQS;
>
> (Step 2) determin[e] which upwind states contribute to these identified problems in amounts

_____

[2] 70 Fed. Reg. 25,162 (May 12, 2005); 76 Fed. Reg. 48,208 (Aug. 8, 2011).

4

sufficient to "link" them to the downwind air quality problems …;

(Step 3) for states linked to downwind air quality problems, identify[ ] upwind emissions that significantly contribute to downwind nonattainment or interfere with downwind maintenance of the NAAQS …; and

(Step 4) for states that are found to have emissions that significantly contribute to nonattainment or interfere with maintenance of the NAAQS in downwind areas, implement[ ] the necessary emissions reductions through enforceable measures.

88 Fed. Reg. at 36,659. EPA has never codified this framework through notice and comment rulemaking.

In 2015, EPA lowered the ozone NAAQS to 70 parts per billion. 80 Fed. Reg. 65,292 (Oct. 26, 2015). Rather than promulgate a rule establishing parameters for ozone interstate transport SIPs, EPA issued several guidance memoranda emphasizing state flexibility in assessing significant contribution "so long as their chosen approach has adequate technical justification and is consistent with the requirements of the CAA." Att. 3, March 2018 Memorandum at 3; Att. 4, August 2018 Memorandum at 2. EPA emphasized that "states have flexibility to follow the familiar four-step transport framework … or alternative frameworks." March 2018 Memorandum at 3.

## II.    Procedural Background

### A.    Utah's Interstate Transport SIP Submissions

Prior to 2016, EPA declined to require Western states (including Utah) to assess interstate transport requirements for ozone-causing emissions—ozone transport was seen as a uniquely Eastern issue. Att. 5, Declaration of Bryce Bird, ¶12; 81 Fed. Reg. 74,504, 74,523 (Oct. 26, 2016). In 2016, following revision of the ozone NAAQS, EPA shifted its approach and stated that it would work with Western states to assess whether emissions from within their states significantly contributed to downwind ozone air quality concerns. 81 Fed. Reg. at 74,523.

The Utah Division of Air Quality ("UDAQ") collaborated with EPA for over a year to develop Utah's Interstate Transport SIP. Bird Decl. ¶13. Utah and EPA relied on methodologies in the 2018 Memoranda, as well as approaches previously approved by EPA in other interstate transport SIPs. Utah opted to apply a "weight-of-evidence" approach that EPA had used in approving Arizona's SIP addressing interstate transport under the 2008 ozone NAAQS. Att. 6, Utah SIP, at 15–17 & n.6. Under the weight-of-evidence approach, all relevant data is considered to analyze a state's contribution. Most notably, a contribution above 1% to a downwind air quality problem is not considered significant if the

6

collective contribution of all upwind states to the given receptor is not considerable. This approach departs from EPA's four-step framework, devised to apply to the East, where a 1% contribution threshold was determined to be necessary to address the significant contribution resulting from small contributions from numerous upwind states. *See infra*, Argument § I.A.

In a SIP submitted to EPA in January 2020, Utah concluded that its contribution to downwind state air quality was not significant when considering all relevant data. Att. 6, Utah SIP, at 22.

### B.    EPA's Proposed FIP

Before taking any action on Utah's proposed SIP, EPA issued a proposed FIP on April 6, 2022. For the first time, EPA proposed that Utah and other Western states significantly contribute to downwind nonattainment or interfere with maintenance and should therefore be subject to a federal emissions control program. 87 Fed. Reg. 20,036, 20,038 (Apr. 6, 2022).

For Utah, EPA applied its four-step framework in proposing to find that emissions from Utah significantly contribute to downwind air quality problems in Colorado. In step one, EPA identified the Denver

7

ozone nonattainment area as potentially relevant. *Id*. at 20,054, 20,066–70. In step two, EPA predicted that Utah emissions would contribute at least 1% to ambient ozone levels in the Denver area. *Id*. at 20,054–55, 20,070–75. In step three, EPA proposed to find that cost-effective emissions controls are available for certain power plants and large industrial sources in Utah. *Id*. at 20,055–56, 20,075–99. In step four, EPA proposed to require significant emissions reductions from these sources. *Id*. at 20,056–57, 20,099–153.

Utah and others submitted comments to EPA explaining that the four-step framework, which was originally developed to assess interstate transport in the East, is not an appropriate method for assessing significant contribution for Utah and other Western states. Att. 7, UDAQ Comments, at 5; Att. 8, BHE Comments, at 2–3; Att. 9, UAMPS Comments, at 2. Commenters highlighted the many factors that make interstate transport in the West significantly different than in the East (e.g., rugged terrain, greater incidence and impact of wildfires, fewer states making lower overall contribution to downwind states) and argued that EPA should have considered these factors when assessing whether Utah emissions significantly contribute to air quality problems in the

Denver area. Att. 7, UDAQ Comments, at 4–5; Att. 8, BHE Comments, at 2–3, 14–15.

## C.    EPA's Disapproval of Utah's SIP

EPA proposed to disapprove Utah's SIP in May 2022. 87 Fed. Reg. 31,470 (May 24, 2022). EPA objected to Utah's use of the weight-of-evidence approach and disagreed with Utah's assessment that conditions in the West are materially different than in the East. *Id.* at 31,478–81.

On February 13, 2023, EPA finalized its disapproval of Utah's SIP. 88 Fed. Reg. 9,336 (Feb. 13, 2023). EPA reiterated the points raised in the proposed SIP disapproval, relying on modeling which projected that Utah is "linked above 1 percent of the NAAQS to three nonattainment receptors and one maintenance-only receptor" in the Denver area. *Id.* at 9,360.

## D.    Challenges to EPA's SIP Disapprovals

EPA's disapproval of Utah's SIP is the subject of pending litigation in the Tenth Circuit. *Utah v. EPA*, No. 23-9509 (10th Cir.). On March 7, 2023, Utah moved to stay disapproval of its SIP pending judicial review; Utah refiled its stay motion on June 6, 2023 pursuant to a scheduling order. *Id.*, Doc. 010110870022. The stay motion remains pending.

9

The Fifth and Eighth Circuits have stayed EPA's disapproval of the ozone transport SIPs for several states pending judicial review. Att. 10, EPA Memorandum. The Sixth Circuit issued an administrative stay pending evaluation of stay motions. *Id.*

### E.    EPA's Final Transport FIP

On June 5, 2023, EPA finalized the FIP for 23 states, including Utah. 88 Fed. Reg. 36,654. EPA determined that emissions from Utah significantly contribute to nonattainment or interfere with maintenance of the NAAQS in the Denver area. *Id.* at 36,677, 36,717–18; Att. 11, Technical Support Document, at C-3, C-7. EPA rejected comments explaining that the four-step framework is not an appropriate method for assessing significant contribution for the West stating that it "has applied the 4-step interstate transport framework across all states for purposes of the 2008 and 2015 ozone NAAQS, and its approach to western-state good neighbor obligations in this action is consistent with those prior actions." Att. 12, Response to Comments, at 157.

While EPA acknowledged that "a unique consideration has warranted approval of a western state's good neighbor SIP submittal that might otherwise be found to contribute above 1 percent of the NAAQS,"

88 Fed. Reg. at 36,717, EPA asserted that the agency had never "conclude[d] that a fundamentally different approach to ozone transport must be adopted in the west as compared to the east" and "that air quality conditions and contribution from upwind states, including the problem of collective contribution, are sufficiently analogous to the regional ozone problem in the eastern U.S. that applying the same framework across all linked states is warranted[.]" Att. 12, Response to Comments, at 157–58. EPA provided no further analysis or citation to substantiate this claim.

Nonetheless, under the FIP, electricity generating units ("EGUs") in Utah and 21 other states will become subject to an allowance-based trading program. The first phase is designed to reduce nitrogen oxide ("$NO_x$") emissions during the 2023 ozone season, with compliance requirements beginning immediately upon the effective date of the Final Rule (August 4, 2023). 88 Fed. Reg. at 36,654. Under the second phase of the FIP, Utah's state $NO_x$ emissions budget will decrease from 15,755 tons in 2023 to only 2,593 tons in 2027—a 74% reduction relative to 2021, which is the most of any state subject to the trading program. 88 Fed. Reg. at 36,663 (Table I.B-1). But, as EPA acknowledged, because of the court orders staying the effectiveness of EPA's SIP disapprovals for

11

Arkansas, Kentucky, Louisiana, Missouri, and Texas, those states are not currently subject to the FIP. Att. 10, EPA Memorandum. As a result, over 40% of the emissions allowances allocated to these states are unavailable for trading.

Despite all these new constraints that impose great costs and reliability risks on Utah, improvements in ambient air quality at downwind receptors from the Final Rule are predicted by EPA to be modest, with "ozone reductions just under 0.2 ppb … predicted at receptors in Denver." Att. 13, Regulatory Impact Analysis at 118.

## ARGUMENT

This Court considers four factors in determining whether to grant a stay: (1) likelihood of success on the merits; (2) irreparable injury if relief is withheld; (3) possibility of harm to other parties if relief is granted; and (4) the public interest. Cir. R. 8(a)(1), 18 (a)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four factors amply support a stay of the FIP as applied to Utah.

## I.    Utah is Likely to Prevail on the Merits.

The CAA authorizes this Court to reverse EPA action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9). This Court's "review of

EPA's rulemaking pursuant to the CAA is under the same standard as the [APA]." *ATK Launch Sys. v. EPA*, 669 F.3d 330, 336 (D.C. Cir. 2012); 5 U.S.C. § 706(2)(A).

Bedrock principles of administrative law require an agency to acknowledge when it shifts course and reasonably explain its different approach. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("[A]n unexplained inconsistency in agency policy is a reason for holding an [action] to be an arbitrary and capricious change from agency practice.") (internal quotations omitted). Additionally, an agency's decision-making is "at its most arbitrary" where it fails to "provide an adequate explanation to justify treating similarly situated parties differently." *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1141 (D.C. Cir. 2022) (internal brackets, quotations, and citations omitted).

EPA's determination that emissions from Utah significantly contribute to air quality problems in the Denver area, thereby justifying a FIP for Utah, violated both bedrock principles.

*First*, EPA failed to sufficiently explain its change in analytical approach for assessing interstate transport for the West—a decision that cannot be reconciled with the Agency's longstanding position that the

13

four-step framework for determining significant contribution in the East does not properly account for conditions in the West.

*Second,* EPA arbitrarily treated Utah differently than other Western states when assessing interstate contribution. The record shows that EPA in fact applies two different approaches for ascertaining significant contribution in the West—the four-step approach originally developed for the East and a "weight-of-evidence" approach that allows for greater consideration of unique Western conditions. Here, EPA arbitrarily limited its analysis to the four-step approach to Utah, while continuing to apply the weight-of-evidence approach to Arizona and Oregon.

### A. EPA Failed to Explain its Change in the Treatment of Interstate Transport in the West.

#### 1. EPA has Long Recognized That Assessing Interstate Transport in the West Requires Distinct Analytical Considerations.

EPA has long recognized the unique conditions affecting interstate ozone transport in the West—declining to include Western states in

previous interstate transport programs and devising a separate analytical approach for the Western states. That was for good reason.

Western States are generally geographically larger and more sparsely populated than Eastern states, resulting in smaller contributions from upwind states individually and collectively. Moreover, the West faces unique regional conditions that complicate efforts both to reduce ozone levels and accurately model contributions.[3] Those include varied topography, higher altitude, elevated natural background ozone levels,[4] deep stratospheric intrusions,[5] increased instances of wildfire,[6] significant biogenic contributions,[7] and a greater influence of internationally transported pollutants.[8] These factors are exacerbated in Utah and Colorado because of the Rocky Mountains.

---

[3] 80 Fed. Reg. 65,292, 65,300 (Oct. 26, 2015).

[4] Att. 14, ISA at ES-3; Att. 7, UDAQ Comments, at 2–5; Att. 8, BHE Comments, at 2–3.

[5] Att. 14, ISA at IS-14–IS-15; Att. 8, BHE Comments, at 2–3.

[6] Att. 7, UDAQ Comments, at 4–5; Att. 8, BHE Comments, at 2–3.

[7] Att. 7, UDAQ Comments, at 4–5.

[8] Att. 14, ISA at IS-14–IS-15; Att. 7, UDAQ Comments, at 4–5.

EPA consistently recognized these fundamental differences over three decades of interstate transport rulemakings. Tellingly, prior to the Final Rule, EPA expressly declined to include Western states in any interstate transport rulemaking because the analysis of transport is "analytically distinct" and requires consideration of "geographic specific factors" not present in the East.

EPA's first interstate transport rule—the "NO$_x$ SIP Call"—applied exclusively to Eastern states. 63 Fed. Reg. 57,356, 57,356 (Oct. 27, 1998). EPA was unconcerned with the West, making only passing references to Western states in the proposed and final rules. *See id*. at 57,372, 57,477, 57,486; 62 Fed. Reg. 60,318, 60,334–35, 60,375 (Nov. 7, 1997). In the next rulemaking, the "Clean Air Interstate Rule," EPA dismissed Western states with only cursory analysis. *See* 70 Fed. Reg. 25,162, 25,169 (May 12, 2005).

In 2011, EPA finalized the "Cross-State Air Pollution Rule" ("CSAPR"), which "identified a 37 state region for the technical analysis, including all states east of the Rockies, from the Dakotas through Texas eastward." 75 Fed. Reg. 45,210, 45,227 (Aug. 2, 2010) (proposal); 76 Fed. Reg. 48,208 (final rule). But EPA expressly excluded Western states from

16

the rule because "the transport issues in the eastern United States are *analytically distinct* and this rule focuses only on that subset of the 110(a)(2)(D)(i)(I) issues." 75 Fed. Reg. at 45,227 (emphasis added).

The proposed Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS ("CSAPR Update") continued this trend, limiting the geographic scope to "states in the eastern U.S." and noting that "[t]hese rules did not address contributions in the 11 western contiguous United States." 80 Fed. Reg. 75,706, 75,715 (Dec. 3, 2015). EPA explained that while modeling data "shows that there are problem receptors in the West to which western states contribute amounts greater than or equal to the screening [1%] threshold used to evaluate transport across eastern states … [t]here may be additional criteria to evaluate regarding collective contribution of transported air pollution in the West" beyond the 1% threshold. *Id.*

Next, when EPA finalized its decision declining to extend the CSAPR Update to Western states, EPA noted that "for western states, the EPA believes that there may be geographically specific factors to consider in evaluating interstate ozone pollution transport." 81 Fed. Reg. 74,504, 74,523 (Oct. 26, 2016).

17

EPA's last two interstate transport rules aimed to complete the original CSAPR rulemaking and EPA did not expand the geographic scope of the program to the West. *See* 83 Fed. Reg. 65,878 (Dec. 21, 2018); 86 Fed. Reg. 23,054 (Apr. 30, 2021).

## 2. EPA Failed to Explain Its Abrupt Change in Course.

In stark contrast to its approach in the unbroken line of six prior interstate transport rules, EPA here made a 180-degree turn and analyzed interstate transport in the West using the four-step framework that it developed for the East, resulting in expansion of CSAPR to include, for the first time, Utah and other Western states. 88 Fed. Reg. at 36,775.

EPA does not justify its abrupt change of course. Indeed, rather than provide a substantive basis for this change, EPA doubles down, erroneously asserting that it has used this approach all along in the West. *See* 88 Fed. Reg. at 36,717 ("While the EPA has not previously included action on linked western states in its prior CSAPR rulemakings, the EPA has consistently applied the 4-step framework in evaluating good neighbor obligations from these states."). But EPA's claim is directly contradicted by statements in the chain of rules described above.

Moreover, EPA previously approved of the use of the weight-of-evidence approach in its review of Utah's interstate transport SIP for the 2008 ozone NAAQS. EPA there emphasized that it was "appropriate to analyze all information for western states and make a conclusion based on a weight of the evidence[.]" 81 Fed. Reg. 71,991, 71,994 (Oct. 19, 2016) (noting that EPA could not perform the analysis in that instance because it had not received adequate information).

EPA's failure to admit that it fundamentally changed course in the Final Rule for Utah and other Western states, and its failure to provide any justification for the change, are the epitome of arbitrary and capricious decision-making. *Encino Motorcars, LLC*, 579 U.S. at 222; *Lone Mountain Processing, Inc. v. Secretary of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013).

## B.    EPA Arbitrarily Applied the Four-Step Approach to Assess Significant Contribution for Utah But Not Other Western States.

EPA arbitrarily rejected, without adequate justification, use of a weight-of-evidence approach in Utah's SIP, despite approving the same approach for Arizona and Oregon. "Where an agency applies different standards to similarly situated entities and fails to support this disparate

treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington Northern & Santa Fe Ry. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005).

### 1.    EPA Continues to Apply a Separate Analytical Approach for Interstate Transport in the West.

Contrary to EPA's assertions, the record establishes that EPA has applied two different analytical approaches to the West—the four-step and "weight-of-evidence." The latter approach considers relevant factors beyond the 1% screening threshold that are designed to account for unique conditions in the West. *See* 80 Fed. Reg. at 75,715; 81 Fed. Reg. 15,200 (Mar. 22, 2016) (approval of Arizona's 2008 ozone transport SIP); 87 Fed. Reg. at 20,075 (applying weight-of-evidence approach to exclude Oregon in this action); Att. 3, March 2018 Memorandum, at 2, A-1.

In approving Arizona's SIP for the 2008 ozone NAAQS, EPA defined with specificity how a weight-of-evidence approach should be applied in the West. *See* 81 Fed. Reg. at 15,203. When determining whether a state "should be considered to significantly contribute to nonattainment or interfere with maintenance of the NAAQS," EPA will examine "several factors . . . including the air quality and contribution modeling, receptor

20

data, and the statewide measures reducing emissions of VOCs and NO$_x$." *Id*. As EPA noted, "no single piece of information is by itself dispositive of the issue for purposes of this analysis ... [i]nstead, EPA has considered the total weight of all the evidence taken together." *Id*.

When EPA approved Arizona's SIP using a weight-of-evidence analysis, one relevant factor was the "magnitude of ozone attributable to transport from all upwind states collectively contributing to the air quality problem." *Id*. EPA concluded that removing the receptors to which Arizona was linked was appropriate because "a 4.4% and 2.5% cumulative ozone contribution from all upwind states is negligible, particularly when compared to the relatively large contributions from upwind states in the East or in certain other areas of the West." *Id*. In the East, EPA had "found the total upwind states' contribution to ozone concentration (from linked and unlinked states) based on modeling for 2017 ranges from 17% to 67% ..., with between 4 and 12 states each contributing above 1% to the downwind air quality problem." *Id*.

In the proposed FIP, EPA—using a weight-of-evidence analysis— declined to impose interstate transport obligations on Oregon despite contributions exceeding the 1% threshold. 87 Fed. Reg. at 20,074 ("EPA

21

finds that for one linked state—Oregon—the same considerations that led it to approve another state's SIP submission, Arizona's, for the 2008 ozone NAAQS apply to Oregon's circumstances for the 2015 ozone NAAQS."). While EPA deferred finalizing a finding for Oregon in the Final Rule, Oregon currently remains exempt from FIP obligations despite being linked to California receptors above the 1% threshold. 88 Fed. Reg. at 36,718.

### 2. EPA Arbitrarily Applied the Four-Step Framework to the Exclusion of the Weight-of-Evidence Approach.

Having developed and applied two different analytical approaches to the West, EPA decided here to limit its analysis to the four-step approach in assessing Utah's potential impact on air quality in the Denver area. But EPA failed "to support this disparate treatment with a reasoned explanation and substantial evidence in the record." *Burlington Northern & Santa Fe Ry.*, 403 F.3d at 777. Instead, EPA made a one-off decision for Utah that was not grounded in any objective decision-making principles and was not reconciled with the prior application of the alternative weight-of-evidence approach to Arizona and the current

application to Oregon. In short, EPA is arbitrarily treating Western states differently without any adequate justification.

For all these reasons, Utah is likely to prevail on the merits.

## II. Utah Will Suffer Irreparable Injury Absent a Stay.

### A. Harms Flowing From the FIP.

EPA's Final Rule requires sources in Utah to install costly emission controls, despite UDAQ's findings that such controls are unnecessary. Att. 15, Declaration of Chris Parker, ¶9; Att. 16, Declaration of Thad LeVar, ¶¶10–11. If affected utilities determine that it is not economically feasible to comply with EPA's required controls under the FIP, they may prematurely shut down plants. Indeed, that appears to be EPA's goal. EPA's FIP contemplates that, "as the cost of emitting $NO_x$ increases, it becomes increasingly cost-effective for units with lower $NO_x$ rates to increase generation, while units with higher $NO_x$ rates reduce generation." 88 Fed. Reg. at 36,720.

Whether a power plant achieves compliance with the FIP by installing emissions controls or closing early, the cost of compliance will ultimately be borne by Utah and its citizens. Parker Decl. ¶¶12–13; LeVar Decl. ¶¶14–15. Closing plants early will result in a less reliable system, including power outages. Parker Decl. ¶¶21–28; LeVar Decl.

¶¶24–31. It will also decrease the fuel diversity of the system, which has helped Utah weather reliability and price shocks for decades. Parker Decl. ¶¶20–28. "[P]lant closures, the threat of grid instability and potential brownouts alone constitute irreparable injury" to Utah and its citizens. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).

Relatedly, closing Utah's coal-fired plants could significantly harm the citizens of Sevier County, Utah, who depend on the coal mine in the County, operated to provide coal to Utah's and other states' coal-fired EGUs. Att. 17, Declaration of Malcolm Nash ¶¶7–18.

## B.    Harms Flowing From the Judicial Orders Staying EPA's SIP Disapprovals for Other States.

Utah requests that the Court consider circumstances outside the context of EPA's implementation of the Final Rule—namely, the several judicial stays of EPA's SIP disapprovals for other states—as sources of irreparable harm justifying a stay of the Final Rule as applied to Utah.

Federal circuits have issued orders staying the effectiveness of EPA's disapprovals of the interstate transport SIPs for the 2015 ozone NAAQS for Arkansas, Kentucky, Louisiana, Missouri, and Texas pending judicial review. As a result, the FIP does not apply in those states at least until merits decisions are issued by the courts. In the meantime,

24

emissions allowances allocated to those states—which amount to over 40% of the total emissions allowances allocated under the FIP—will not be available for use in the FIP emissions trading program.

The trading program is an integral element of the FIP. According to EPA, "the advantages of trading programs … depend on the existence of a marketplace for purchasing and selling allowances" and that "broader marketplaces generally provide greater market liquidity and therefore make trading programs better at providing these advantages." 88 Fed. Reg. at 36,766 n.295. Importantly, EPA's assessment assumes that allowances from all affected states would be potentially available for trading. That is no longer the case.

Because the current judicial stays take over 40% of the total allowances out of play, the opportunity for trading will be considerably more limited than the FIP projected. Bird Decl. ¶¶26–27. That means it will be harder for affected sources to achieve compliance and the compliance costs will be greater than anticipated. *Id.*

Utah acknowledges that the harms here are not caused by a flaw in the FIP. Instead, they flow from potential legal infirmity in the SIP disapprovals for the states that have received stays. But the stays

effectively change the FIP, reducing implementation flexibility and increasing costs for the subset of states (including Utah) that remain subject to the program. *Id.* As a result, a stay of the FIP will prevent the irreparable harm to Utah flowing from the SIP disapprovals.

Through no fault of its own, Utah is now subject to a different FIP than the one that EPA promulgated. Utah and affected sources in Utah should not have to bear the implementation difficulties that EPA did not intend and did not consider in issuing the FIP, and that materially change FIP implementation. Absent a stay, Utah and affected sources will suffer irreparable harm.

## III.  The Balance of Harms and the Public Interest Favor a Stay.

The last two stay factors favor Utah. Because the Final Rule violates the CAA and is arbitrary and capricious, *see* Argument Sections I.A.–B., a stay is in the public interest and will preserve the status quo. Bird Decl. ¶33–34.

In addition, any corresponding delay in the effectiveness of EPA's FIP will not materially affect its implementation. EPA designed its FIP to accomplish limited emissions reductions during the 2023 ozone season and to achieve the bulk of the mandated emissions reductions through

new emissions controls that would not be required until 2026 or later. 88 Fed. Reg. at 36,755. In the Final Rule, EPA acknowledges that for "the 2023, 2024, and 2025 ozone seasons … full remedy reductions related to post combustion control installation … *are not yet available*." 88 Fed. Reg. at 36,754 (emphasis added). Assuming expeditious resolution of this litigation, a stay during litigation should not significantly affect the implementation of the FIP for later ozone seasons. In any event, as demonstrated by EPA's decision to defer action for Arizona and other states, staying the FIP is possible without public harm.

UDAQ already implemented various other programs that have, and will continue, to reduce ozone emissions within the state, Bird Decl. ¶34, negating harm to the public in the interim.

Staying the Final Rule will prevent the harms that threaten Utah's ability to regulate power plants within the state to meet its citizens' needs, as well as protect Utahns' "interest in ready access to affordable electricity," *Texas*, 829 F.3d at 435, and "a steady supply of electricity during the summer months," *Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1311 (11th Cir. 1999).

## CONCLUSION

The Court should stay the Final Rule imposing the FIP on Utah.

Dated: July 7, 2023.

Respectfully submitted,

*/s/ Melissa A Holyoak*

Sean D. Reyes
    ATTORNEY GENERAL OF UTAH
Melissa A. Holyoak
    SOLICITOR GENERAL
    *Counsel of Record*
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320
Ph. 801-538-9600
melissaholyoak@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Ph. 302-300-0388
William_Wehrum@comcast.net

Emily C. Schilling
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107 / Fax 720-545-9952
trvanbockern@hollandhart.com
abtucker@hollandhart.com
*Attorneys for Petitioner State of Utah*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the format and word limit of Circuit Rule 27(a)(2) and Fed. R. App. P. 27(d)(1)–(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,156 words. This document also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: July 7, 2023

*/s/ Melissa A. Holyoak*

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: July 7, 2023

*/s/ Melissa A. Holyoak*