<u>ORAL ARGUMENT NOT YET SCHEDULED</u>
IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF UTAH, et al.,

  Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and MICHAEL
S. REGAN,

  Respondents.

No. 23-1157
(And consolidated cases,
except 23-1201)

**Opposition of Intervenor-Respondents States of New York, Connecticut, Delaware, Illinois, Maryland, New Jersey, and Wisconsin, the Commonwealths of Massachusetts and Pennsylvania, the District of Columbia, the City of New York, and Harris County, Texas to Petitioners' Stay Motions**

JUDITH N. VALE
  *Deputy Solicitor General*
ELIZABETH A. BRODY
  *Assistant Solicitor General*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
  *Assistant Attorneys General*
  *Of Counsel*

*Additional Counsel on Signature Pages*

LETITIA JAMES
  *Attorney General of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
State Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov

Dated: August 18, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................ii

TABLE OF AUTHORITIES......................................................iv

GLOSSARY .........................................................................vii

PRELIMINARY STATEMENT.................................................1

BACKGROUND ...................................................................2

ARGUMENT .......................................................................6

I.   PETITIONERS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR
     CLAIMS ........................................................................6

     A.   State Petitioners Primarily Object to a Separate Agency Action
          Not Before This Court...............................................6

     B.   The Rule Is Consistent with the Act..............................7

          i.   The Act's cooperative federalism framework relies on EPA's
               substantive role to protect downwind States from pollutants
               emitted by upwind sources. .......................................7

          ii.  EPA's timing in promulgating the Rule was lawful and not
               arbitrary and capricious. ........................................10

          iii. The Rule does not result in over-control. ..................12

     C.   Judicial Stays of Certain State Implementation Plans and
          EPA's Interim Final Rule Do Not Render the Rule Arbitrary. .17

     D.   The Rule's Treatment of Other Upwind States, such as New
          York, Is Not Arbitrary and Capricious......................19

II.  THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH STRONGLY
     AGAINST A STAY. ..........................................................21

     A.   The Alleged Harms to State Petitioners Are Neither Substantial
          nor Imminent..........................................................21

B.  Downwind States Will Experience Harm
    If the Rule Is Stayed. ................................................. 22

CONCLUSION ................................................................. 25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .... 29

CERTIFICATE OF SERVICE ................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona ex rel. Darwin v. EPA,*
   815 F.3d 519 (9th Cir. 2016)...................................................................8

*EME Homer City Generation, L.P. v. EPA,*
   696 F.3d 7 (D.C. Cir. 2012) (*Homer City I*) ....................................8, 16

*EPA v. EME Homer City Generation, L.P.,*
   572 U.S. 489 (2014) (*Homer City II*)....................3-4, 8-9, 11, 16, 18-20

*Mexichem Specialty Resins, Inc. v. EPA,*
   787 F.3d 544 (D.C. Cir. 2015) ...........................................................22

*Michigan v. EPA,*
   213 F.3d 663 (D.C. Cir. 2000) ...........................................................10

*Midwest Ozone Grp. v. EPA,*
   61 F.4th 187 (D.C. Cir. 2023)..............................................................3

*Nat. Res. Def. Council, Inc. v. Browner,*
   57 F.3d 1122 (D.C. Cir. 1995) .............................................................9

*New York v. Regan,*
   No. 1:21-cv-252-ALC, Doc. 38 (S.D.N.Y. Nov. 15, 2021) ...............5, 11

*Nken v. Holder,*
   556 U.S. 418 (2009)...........................................................................22

*NRDC v. EPA,*
   25 F.3d 1063 (D.C. Cir. 1994) .............................................................6

*Sierra Club v. Regan,*
   No. 3:22-cv-01992-JD, Doc. 37 (N.D. Cal. Jan. 24. 2023) .................11

*Texas v. EPA,*
   829 F.3d 405 (5th Cir. 2016)...............................................................9

*West Virginia v. EPA*,
    No. 23-1418 (4th Cir. Apr. 14, 2023), ECF No. 3-1 .............................. 5

*Wisconsin v. EPA*,
    938 F.3d 303 (D.C. Cir. 2019) ..........................................6-7, 11-12, 15

**Federal Statutes**

42 U.S.C.
    § 7206(y) ...................................................................................... 9
    § 7410(a)(1) .................................................................................. 8
    § 7410(a)(2)(D)(i) ........................................................................ 9
    § 7410(a)(2)(D)(i)(I) ............................................................3-4, 18
    § 7410(c)(1) ............................................................................ 4, 9
    § 7410(c)(1)(B) .......................................................................... 10
    § 7410(k)(5) ............................................................................... 10
    § 7607(b)(1) ..............................................................................6-7

**Federal Regulations**

76 Fed. Reg. 48,208 (Aug. 8, 2011) ................................................ 12

80 Fed. Reg. 65,292 (Oct. 26, 2015) ................................................ 4

82 Fed. Reg. 23,054 (Apr. 30, 2021) ............................................... 12

87 Fed. Reg. 9,516 (Feb. 22, 2022) ................................................. 4

87 Fed. Reg. 9,838 (Feb. 22, 2022) ................................................. 4

88 Fed. Reg. 9,336 (Feb. 13, 2023) ................................................. 5

88 Fed. Reg. 36,654 (June 5, 2023) .............3-5, 9, 12-14, 16-17, 19, 21-23

**Rules**

Fed. R. App. P. 27(d)(2) ............................................................... 29

Fed. R. App. P. 32(a)(5) and 27(d)(1)(E) ...................................... 29

Fed. R. App. P. 32(a)(6) and 27(d)(1)(E) ...................................... 29

## Miscellaneous Authorities

Comment Letter from Att'ys Gen. (June 21, 2022),
 *https://downloads.regulations.gov/EPA-HQ-OAR-2021-0668-0367/attachment_1.pdf* ..................................................... 3

Comments of Att'ys Gen. (Dec. 14, 2020).
 *https://downloads.regulations.gov/EPA-HQ-OAR-2020-0272-0114/attachment_1.pdf* ...................................................... 16, 21

EPA, Final GNP O3 DVs_Contributions (2023) ("2023gf Ozone Contributions" tab,
 *https://www.epa.gov/system/files/documents/2023-03/AQ%20Modeling%20Final%20Rule%20TSD.pdf* ........................ 23

EPA, *Health Effects of Ozone Pollution* (last updated May 24, 2023) *https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution* ......................................... 2, 23

EPA, Illinois Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants,
 *https://www3.epa.gov/airquality/greenbook/anayo_il.html* .......... 23

Massachusetts (n.d.),
 *https://www3.epa.gov/region1/airquality/ma_over.html* ............... 24

# GLOSSARY

| | |
|---|---|
| Act | Clean Air Act |
| AFPA | American Forest & Paper Association et al. |
| FIP | Federal Implementation Plan |
| Good Neighbor Plan or Rule | Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36,654 (June 5, 2023). |
| SIP | State Implementation Plan |
| State Intervenors | States of New York, Connecticut, Delaware, Illinois, Maryland, New Jersey, and Wisconsin, the Commonwealths of Massachusetts and Pennsylvania, the District of Columbia, the City of New York, and Harris County, Texas. |
| EPA | U.S. Environmental Protection Agency |

# PRELIMINARY STATEMENT

Petitioners challenge the Good Neighbor Plan (Rule), a rule issued by EPA to address ozone pollution from sources in upwind States that travels into downwind States. State Intervenors require the Rule's emission reductions to protect their residents' health and welfare and meet fast-approaching deadlines to attain or maintain federal ozone standards.

Ohio, Indiana, and West Virginia (State Petitioners) and industry groups and private companies (Industry Petitioners), move to stay the Rule, or portions thereof, pending adjudication of their challenges. The Court should deny these motions.

Petitioners are unlikely to succeed on the merits. Many of State Petitioners' arguments do not challenge the Rule but collaterally attack EPA's separate action disapproving state implementation plans (SIPs). Moreover, Petitioners incorrectly argue that EPA plays only a ministerial role under the Good Neighbor Provision. The Act empowers EPA to step into a state's shoes and regulate sources directly when that State's SIP is inadequate, without waiting for a State to address such deficiencies. Indeed, EPA's substantive role is critical to the Good Neighbor

Provision's core purpose of protecting downwind States from upwind pollution.

Finally, the equities and public interest weigh dispositively against a stay. Petitioners fail to establish that they will experience immediate, irreparable harm absent a stay. Their asserted harms are speculative or related to features of the Rule not implemented until 2026 or later. But a stay would immediately, irreparably harm State Intervenors and the public interest. State Intervenors have worked for years to limit ozone-forming pollution from sources in their jurisdictions, but nevertheless, continue to face high levels of ozone because they cannot directly control pollution from upwind sources. State Intervenors need timely implementation of the Rule to protect their residents' health and safety from ozone pollution and to attain or maintain the federal ozone standards by upcoming statutory deadlines.

## BACKGROUND

Ozone pollution poses a major health threat, triggering asthma, worsening bronchitis and emphysema, and causing early death. EPA, *Health Effects of Ozone Pollution* (last updated May 24, 2023). To protect their residents from these harmful effects and to comply with federal

ozone standards, State Intervenors regulate in-state sources of emissions. But no matter how stringently State Intervenors control emissions, sources in upwind States generate ozone-forming pollutants that travel into downwind States, sometimes thousands of miles away. *See* 88 Fed. Reg. 36,654, 36,658 (June 5, 2023). Further, "many downwind States receive pollution from multiple upwind States." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496 (2014) (*Homer City II*). These upwind emissions harm State Intervenors' residents and can also prevent downwind States from attaining or maintaining federal ozone standards. *See Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 189 (D.C. Cir. 2023).

To compensate for upwind pollution, downwind States must regulate in-state sources more stringently—at greater cost to these sources. *See Homer City II*, 572 U.S. at 519-20; Comment Letter from Att'ys Gen. 8 (June 21, 2022).

Congress enacted the Good Neighbor Provision to address this problem. 42 U.S.C. § 7410(a)(2)(D)(i)(I). It requires that each State's SIP prohibit emissions from sources within that State that contribute significantly to nonattainment, or interfere with maintenance of, federal

3

air quality standards in a downwind State. *Id*. § 7410(a)(2)(D)(i)(I); *Homer City II*, 572 U.S. at 509. If a SIP fails to prohibit harmful emissions downwind, EPA must disapprove it and, within two years, issue a federal implementation plan (FIP). 42 U.S.C.§ 7410(c)(1).

On several prior occasions, EPA has issued multistate rules, comprising multiple FIPs, to correct for deficient SIPs. Like the Rule here, past rules also established interstate trading programs and other compliance flexibilities. *See* 88 Fed. Reg. at 36,668-36,669 (summarizing previous rules).

After EPA strengthened the ozone standards in 2015, 80 Fed. Reg. 65,292 (Oct. 26, 2015), States were required to submit SIPs that would comply with the Good Neighbor Provision. However, many upwind States failed to submit SIPs, or submitted plans that downplayed the severity of ozone pollution in downwind States or the significance of their own contributions. *See, e.g.*, 87 Fed. Reg. 9,838, 9,846, 9,850 (Feb. 22, 2022); 87 Fed. Reg. 9,516, 9,522 (Feb. 22, 2022).

When EPA failed to act on these SIPs by deadlines in the Act, State Petitioners did not seek to compel EPA's action. Instead, New York and other downwind States—facing a strong likelihood that they would be

unable to meet the federal ozone standards by the statutory deadline— sued EPA to obtain action, and the parties entered into a consent decree establishing deadlines for EPA to act on these States' plans, among others. *See* Consent Decree, *New York v. Regan*, No. 1:21-cv-252-ALC, Doc. 38 (S.D.N.Y. Nov. 15, 2021).

EPA disapproved State Petitioners' SIPs in February 2023 and explained their deficiencies. 88 Fed. Reg. 9,336 (Feb. 13, 2023). Ohio and Indiana did not challenge EPA's disapproval, and West Virginia challenged disapproval of its SIP in another circuit. *See* Pet. for Review, *West Virginia v. EPA*, No. 23-1418 (4th Cir. Apr. 14, 2023), ECF No. 3-1. EPA then promulgated the Rule challenged here. 88 Fed. Reg. at 36,654. State Petitioners challenged the Rule and now move to stay the Rule for their respective States. *See* Doc. 2008555. Several weeks later, Industry Petitioners filed stay motions. *See* Docs. 2010655, 2009836, 2009932, 2011121, and 2011451.

# ARGUMENT

## I.    PETITIONERS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A.    State Petitioners Primarily Object to a Separate Agency Action Not Before This Court.

State Petitioners primarily argue that by disapproving their SIPs, EPA denied them opportunities to develop their own plans to comply with the Good Neighbor Provision. Ohio Mot. 9-12; *see also* Doc. 2010029, ¶1. But EPA's separate disapproval of SIP submissions are not before the Court in this litigation. Indeed, Ohio and Indiana never challenged EPA's disapproval of their SIPs in *any* court, and challenges are now jurisdictionally barred. *See* 42 U.S.C. § 7607(b)(1); *Wisconsin v. EPA*, 938 F.3d 303, 335 (D.C. Cir. 2019). And West Virginia is challenging disapproval of its SIP in the Fourth Circuit—where it contests this Court's authority to review that SIP disapproval. *See* Pet'r's Opp. to Resp'ts' Mot. to Transfer 12-20, *West Virginia*, No. 23-1418 (May 16, 2023), ECF No. 15.

This Court's precedent forecloses State Petitioners' collateral attack on EPA's separate SIP disapprovals through their current challenge to the Rule. *See Wisconsin*, 938 F.3d at 336; *NRDC v. EPA*, 25

F.3d 1063, 1073 (D.C. Cir. 1994). Indeed, in a recent case challenging a prior ozone transport rule, Ohio and other States raised essentially the same arguments as State Petitioners here. This Court rejected them, explaining that challenges to a FIP that "depend on the invalidity of the prior SIP disapprovals" or that "expressly assume [] the illegitimacy" of SIP disapprovals are the "hallmark of an improper collateral attack." *Wisconsin* 938 F.3d at 383 (quotation marks and alterations omitted).

Also meritless is State Petitioners' speculation that EPA might someday disapprove hypothetical revised SIPs whose requirements are not identical to the Rule. State Petitioners have submitted no such SIPs, and none are before the Court. If State Petitioners do submit revised SIPs and EPA disapproves them, State Petitioners can petition for review of those disapprovals. 42 U.S.C. § 7607(b)(1).

### B.     The Rule Is Consistent with the Act.

> i.     <u>The Act's cooperative federalism framework relies on EPA's substantive role to protect downwind States from pollutants emitted by upwind sources.</u>

State Petitioners incorrectly argue (Ohio Mot. 11) that EPA exceeded its authority in promulgating the Rule because EPA has only a ministerial role in both reviewing SIPs and issuing FIPs under the Act.

To the contrary, "EPA has substantive authority to assure that a state's proposals comply with the Act, not simply the ministerial authority to assure that the state has made some determination[.]" *Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 531 (9th Cir. 2016). This authority protects downwind States, which are "unable to achieve clean air because of the influx of out-of-state pollution they lack authority to control." *See Homer City II*, 572 U.S. at 495. And Congress has repeatedly strengthened the Good Neighbor Provision because prior versions depending on upwind States to police their own cross-state contributions proved ineffective. *See id.* at 499.

To protect downwind States from pollutants emitted in upwind States, EPA must determine whether a SIP "contain[s] adequate provisions" to prohibit significant cross-border emissions. 42 U.S.C. § 7410(a)(1). In doing so, EPA must calculate the level of emission reduction needed to eliminate that State's significant contribution to air quality problems in downwind States. *See EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 13 (D.C. Cir. 2012) (*Homer City I*) (recognizing EPA's "critical role" in "calculating each upwind State's good neighbor obligation"), *rev'd on other grounds*, *Homer City II*, 572 U.S. at 489.

8

When EPA determines that a SIP inadequately prohibits those emissions, EPA *must* disapprove it and issue a FIP. 42 U.S.C. § 7410(c)(1). The Act gives EPA no discretion to approve an insufficient SIP or disapprove a SIP and do nothing further. EPA must promulgate a FIP within two years unless a State corrects its SIP and EPA approves it. *See Homer City II*, 572 U.S. at 509.

State Petitioners mistakenly argue that after EPA disapproves a SIP, it may not select specific control measures in a FIP. Ohio Mot. 9-11. But "EPA's obligations and authority to promulgate the federal implementation plan are the same the state had when promulgating its state implementation plan." *Texas v. EPA*, 829 F.3d 405, 412 (5th Cir. 2016). This authority "ensures that progress toward NAAQS attainment will proceed notwithstanding inadequate action at the state level." *See Nat. Res. Def. Council, Inc. v. Browner*, 57 F.3d 1122, 1124 (D.C. Cir. 1995). Moreover, the Act authorizes EPA to regulate "any source"—such as a power plant and other industrial source—or "emissions activity" directly in a FIP. *See* 42 U.S.C. §§ 7410(a)(2)(D)(i) & 7206(y). A FIP may include "enforceable emission limitations or other control measures, means or techniques." 42 U.S.C. § 7206(y); *see* 88 Fed. Reg. at 36,675.

9

State Petitioners' repeated invocation of *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000), to argue that the Rule leaves States no room to customize their control measures is unavailing. Ohio Mot. 9-12. *Michigan* did not concern EPA's authority to issue FIPs, *see* 42 U.S.C. § 7410(c)(1)(B), but rather its separate authority to issue a "SIP call" for States to revise SIPs in response to changed circumstances, *see id.* § 7410(k)(5). *Michigan* held that EPA had not impermissibly used the SIP call to circumscribe States' choices regarding source-specific control measures. *See* 213 F.3d at 688. Thus, *Michigan* did not address EPA's authority to set specific control measures in a FIP.

    ii.   <u>EPA's timing in promulgating the Rule was lawful and not arbitrary and capricious.</u>

State Petitioners also attempt to relitigate settled law by arguing that EPA acted arbitrarily and capriciously by promulgating the Rule without waiting two years—the maximum amount of time that EPA may take to promulgate a FIP after disapproving a SIP—for States to voluntarily address the deficiencies in their SIPs. Ohio Mot. 12. As the Supreme Court explained when two of the State Petitioners raised the same argument in challenging EPA's prior ozone transport rule, "EPA is not obliged to wait two years or postpone its action even a single day: The

Act empowers the Agency to promulgate a FIP 'at any time' within the two-year limit." *Homer City II*, 572 U.S. at 509 (quoting 42 U.S.C. § 7410(c)).

State Petitioners' timing argument also ignores statutory and court-ordered deadlines that did not permit EPA to wait two years before promulgating the Rule. EPA must act quickly enough to ensure that upwind States' good-neighbor obligations are settled in time for downwind States to reach their attainment deadlines. *See Wisconsin*, 938 F.3d at 313. Here, in accordance with *Wisconsin* and the Act, courts ordered EPA to take final action on pending SIP submissions and certain FIPs that might be required, by the 2023 ozone season, which began May 1, 2023. *See, e.g., New York v. Regan, supra*; Consent Decree, *Sierra Club v. Regan,* No. 3:22-cv-01992-JD, Doc. 37 (N.D. Cal. Jan. 24. 2023). Neither the statute nor those orders permitted EPA to wait the full two years.

Moreover, EPA's action on State Petitioners' SIPs years after the statutory deadlines benefited these States and harmed downwind States. There is no merit to State Petitioners' attempt to use that delay as a reason to stay implementation of the Rule and thus to further delay

11

upwind State emission reductions that downwind States need to attain or maintain the federal standards. Necessary regulation and emissions reductions of sources in these upwind States have been delayed eight years after EPA's 2015 tightening of the ozone standards. During that time, sources in State Petitioners' jurisdictions were able to avoid costs associated with operating their controls in a manner that would reduce emissions that travel to downwind States.

### iii.   The Rule does not result in over-control.

Industry Petitioners' arguments that the Rule results in over-control—requiring reductions beyond the Good Neighbor Provision's requirements—are meritless. *See* AFPA Mot. 6-9. These Petitioners claim the Rule is unprecedented, but it is similar to EPA's prior ozone-transport rules promulgated pursuant to EPA's settled authority under the Act. Indeed, EPA has used iterations of the same four-step framework used in the Rule in several prior rules, including the original Cross-State Air Pollution Rule (CSAPR), 76 Fed. Reg. 48,208, 48,211-12 (Aug. 8, 2011); and the recent Revised CSAPR Update, 82 Fed. Reg. 23,054, 23,057 (Apr. 30, 2021). *See also* 88 Fed. Reg. at 36,659, 36,680; *Wisconsin*, 938 F.3d at 310-12 (discussing four-step framework).

Also unavailing are arguments that certain features of the Rule—most of which are not required to be implemented until 2026—constitute unlawful over-control. AFPA Mot. 6-9. These features include: (i) dynamic budgeting, where EPA will annually recalculate a State's seasonal emissions budget based on up-to-date information about power generation activities within that State, 88 Fed. Reg. at 36,782-785; (ii) allowance bank recalibration, where EPA will trim excess emissions allowances in the marketplace by a percentage after each trading year to prevent oversupply from depressing prices, *id.* at 36,766-67; and (iii) backstop daily emission rates, where EPA will require specific, large power plants with existing pollution control technology to surrender additional allowances if they exceed a daily emissions rate, *id.* at 36,767-770.[1] None of these features requires upwind States to do more than their fair share to reduce their cross-state emissions. For example, the backstop daily emissions rate merely prevents sources in upwind States from emitting at high rates on a single day of the ozone season, while keeping the seasonal budget intact. Large quantities of emissions on

---

[1] The backstop daily emissions rate goes into effect in 2024 for units that already have control technology installed and in 2030 for those that do not. 88 Fed. Reg. at 36,663, 36,772.

single days can produce high-ozone days in downwind States—events that affect the calculus for whether a downwind States has met the federal air quality standards. Moreover, certain of the challenged features actually operate in Petitioners' favor. For example, the Rule provides that EPA will calculate dynamic budgets annually, but, before 2030, dynamic budgets will replace the Rule's preset emissions budget for that year only if the dynamic budget is *greater* than the preset budget. Dynamic budgeting is thus a one-way ratchet that operates in an upwind State's favor until 2030. *See* 88 Fed. Reg. at 36,663.

Furthermore, these features do not result in over-control merely because, as Industry Petitioners argue, EPA described them as "enhancements" to the Rule's seasonal emissions budget. *See, e.g.,* AFPA Mot. 6. The seasonal emissions budget is one component of a suite of emissions control requirements that EPA sets at Step 4 of its four-step framework. These emissions requirements operate together to reduce the "significant contribution" that EPA identifies at Step 3. *See* 88 Fed. Reg.

at 36,678 ("emissions reductions associated with [a selected] level of control stringency . . . constitute significant contribution" downwind).[2]

Prior federal ozone rules have likewise included "enhancements" to the seasonal emissions budget. For instance, EPA has set an "assurance level" at 121% of the budget to "ensure that a State does not entirely skirt its good neighbor obligations by buying a large number of allowances." *Wisconsin*, 938 F.3d at 311. The Rule's "enhancements" serve the same function. For example, the backstop daily rate does not require additional reductions on top of the budget; it simply affects how power plants choose to distribute their individual allocations over the months-long ozone season. And allowance bank recalibration does not alter a State's preset emissions budget, but rather prevents a glut of emissions allowances from accumulating on the market and incentivizing sources not to operate their control equipment. The enhancements simply constitute evidence-based methods to maintain the stringency of the Rule

---

[2] Petitioners are incorrect that the emissions budget, by itself, is sufficient to eliminate upwind States' significant contributions to downwind States. *See, e.g.,* AFPA Mot. 6. States may emit more pollutants than their budgets permit by purchasing allowances from other States or by using banked allowances that EPA has allowed them to roll over from prior ozone programs or from prior years of the current program.

15

consistently "on all days of the ozone season and over time." 88 Fed. Reg. at 36,657. Moreover, EPA ensured that these program features would not result in overcontrol by applying the tests prescribed by this Court and the Supreme Court. *See id.* at 36,749-50; *see also Homer City II*, 572 U.S. at 521; *Homer City I*, 696 F.3d at 127-29.

Industry Petitioners wrongly claim that EPA imposed these enhancements without analysis or supporting evidence. AFPA Mot. 10. EPA adopted these enhancements based on data and analysis from years of experience implementing transport rules and from information provided by downwind stakeholders, including State Intervenors. For instance, EPA and State Intervenors observed instances of power plants idling their emissions controls or running those controls in less optimal ways during high-ozone days, particularly in the later years of a trading program. *See* 88 Fed. Reg. at 36,763-64 & 36,767-68. State Intervenors have long advocated for short-term (daily) emission limits to ensure that sources with controls operate them on high-ozone days—the ones that matter most for determining downwind compliance with the ozone standards. *See* Comments of Att'ys Gen. 13-14 (Dec. 14, 2020). EPA also

amply supported its adoption of dynamic budgeting and recalibration of the allowance bank. *See* 88 Fed. Reg. at 36,789.

### C.    Judicial Stays of Certain State Implementation Plans and EPA's Interim Final Rule Do Not Render the Rule Arbitrary.

Petitioners also miss the mark in relying on partial judicial stays and an interim final rule that EPA issued in response to those stays. In that rule, EPA paused the Rule's implementation for States that had secured judicial stays of EPA's disapproval of their SIPs after EPA finalized the Rule. [3] Petitioners claim that those stays, and interim final rule now render the Rule arbitrary with respect to States that remain covered. Ohio Mot. 13-15; AFPA Mot. 14-17; Enbridge Mot. 21-22. These unexhausted challenges to a separate EPA action are improper for the reasons stated by Environmental and Public Health Respondent-Intervenors. *See* Br. of Env. & Pub. Health Resp.-Intervenors (Env. Br.).

Even if the interim final rule were relevant here, it would not render the Rule arbitrary. The States that remain covered are subject to

---

[3] After EPA promulgated the interim final rule, the Fourth Circuit administratively stayed EPA's disapproval of West Virginia's SIP, pending oral argument on the full stay motion. *See* Order, *West Virginia* (Aug. 10, 2023), ECF No. 39.

17

the same emissions budgets set by the Rule. Neither the Rule nor the interim final rule requires them to make further emission reductions to compensate for the temporary absence of States that are subject to judicial stays.

Conversely, pausing the Rule's requirements for all States would violate the Act's requirement that EPA protect downwind States by addressing *all* significant contributions by sources in upwind States. The Good Neighbor Provision requires *each* State's SIP to "contain adequate provisions . . . prohibiting" emissions "in amounts which will contribute significantly to nonattainment" in another State. 42 U.S.C. § 7410(a)(2)(D)(i)(I). And the Good Neighbor Provision does not require that an upwind State be the but-for cause of a downwind State's nonattainment. Congress amended the Good Neighbor Provision to shift away from such a paradigm. The previous version of the statute had called for upwind States to reduce pollution that would "'*prevent* attainment or maintenance,'" *see Homer City II*, 572 U.S. at 499 (quoting 42 U.S.C. § 7410(a)(2)(E) (1976)) (emphasis added), which "proved ineffective" at reducing downwind pollution because it was "often 'impossible to say that any single source or group of sources is the one

18

which actually prevents attainment' downwind," *id.* (Quoting S. Rep. No. 101-228, at 21 (1989)). Adopting Petitioners' argument would read a defunct requirement into the current statute and recreate the very problems Congress sought to solve by amending it.

### D.  The Rule's Treatment of Other Upwind States, such as New York, Is Not Arbitrary and Capricious.

State Petitioners mistakenly rely on the percentage reductions they must make under the Rule as purporting to show disparate treatment among States. Ohio Mot. 18. But the emission budgets, not the percentages, are what matter here. State Petitioners' emissions budgets—the amounts of pollutants their sources can emit each season— are much higher than State Intervenors' budgets. Ohio's 2023 budget is 9,100 tons of nitrogen oxides (NOx), more than twice New York's 3,912 tons and nine times New Jersey's 773 tons. 88 Fed. Reg. at 36,663, Table I.B-1. In 2029, after the reductions of which State Petitioners complain (Ohio Mot. 18), Ohio's budget of 6,409 tons and Indiana's budget of 5,808 tons will still be nearly twice that of New York's 3,888 tons. And West Virginia's 2029 budget of 9,678 tons will be nearly three times New York's. 88 Fed. Reg. at 36,663, Table I.B-1.

19

State Petitioners must reduce a greater percentage of emissions over time because they "have done relatively less in the past to control their pollution." *Homer City II*, 572 U.S. at 519. By contrast, New York's percentage reduction between 2023 and 2029 is lower because it has already lowered ozone-forming emissions more than these upwind States. Far from requiring that State Petitioners "subsidize" New York, *see* Ohio Mot. 18, the Rule remedies longstanding inequities between downwind States like State Intervenors, which have required sources to cut emissions for decades, and upwind States like State Petitioners, which have resisted requiring even the most basic pollution control equipment in their States. As the Supreme Court articulated with respect to the Rule's predecessor regulation, the goal is that upwind States "that have not yet implemented pollution controls of the same stringency as their neighbors will be stopped from free riding on their neighbors' efforts to reduce pollution." *Homer City II*, 572 U.S. at 519.

The differences in costs required to implement necessary controls in already highly controlled States like State Intervenors and poorly controlled States like State Petitioners further support EPA's approach here. The Rule imposes budgets in 2023 based on sources employing

20

pollution control equipment costing up to $1,800 per ton of nitrogen oxides removed. Since New York sources are already controlled at costs up to $5,500 per ton, *see* Comments of Att'ys Gen. 19 (Dec. 14, 2020), there are very few additional emissions reductions available in 2023—only 64 tons. 88 Fed. Reg. 36,737, Table V.C.1-1. By comparison, just by running industry-standard pollution control equipment already installed at sources in Ohio, 2023 ozone-season emissions were projected to fall by 1,154 tons—more than New Jersey's *entire* emissions budget and approximately one-third of New York's budget for 2023. *Id.*

## II.   THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH STRONGLY AGAINST A STAY.

### A.   The Alleged Harms to State Petitioners Are Neither Substantial nor Imminent.

State Petitioners' arguments regarding electrical grid reliability are meritless for the reasons discussed in the Environmental and Public Health Respondent-Intervenors' brief. *See generally* Env. Br.

Nor does State Petitioners limited and speculative discussion of purported sovereign harms entitle them to a stay. Contrary to State Petitioners' contentions (Ohio Mot. 21), permitting or other administrative activities that States may need to undertake to facilitate

21

polluting sources' compliance with the Rule do not support a stay under these circumstances. EPA's three prior cross-state ozone rules required similar permitting modifications, but the sole declaration that purports to address compliance burdens on state regulators fails to identify any excessive administrative burdens caused by those rules. Crowder Decl. ¶¶ 40-44. And EPA has explained that permitting under the Rule will operate as it did for prior rules. *See* 88 Fed. Reg. at 36,843. Petitioners fail to demonstrate that anticipated compliance for *this* Rule will cause the type of imminent, irreparable harm justifying a stay.

## B. Downwind States Will Experience Harm If the Rule Is Stayed.

In contrast, a stay would harm State Intervenors and the public interest by delaying long-awaited emissions reductions in upwind States. Downwind States urgently need those reductions for the 2023 and 2024 ozone seasons. Such imminent harms to State Intervenors and the public health and welfare in their jurisdictions counsel strongly against a stay. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015).

A stay would also harm downwind States and their residents because multiple areas within or comprising many of the State

22

Intervenors' jurisdictions are currently in "moderate" nonattainment status for the 2015 federal ozone standards and must achieve the federal ozone standards by August 3, 2024, or likely be subject to additional pollution control requirements for in-state sources.[4] *See, e.g.*, 88 Fed. Reg. at 36,696.

Pollution from upwind States significantly contributes to that nonattainment status. For example, this year, Indiana is projected to contribute approximately five to ten percent of the federal ozone standards to Cook County, Illinois, and eleven to fourteen percent of the federal ozone standards to multiple counties in Wisconsin. *See* EPA, Final GNP O3 DVs_Contributions (2023) ("2023gf Ozone Contributions" tab). And upwind States contribute fifty percent of the federal ozone standards for one Fairfield, Connecticut, monitor. These numbers are similar for other State Intervenors. *See id.* The Rule is critical to enabling downwind States to achieve attainment by the 2024 deadline.

A stay would also harm other State Intervenors that, even if they are in attainment, continue to measure unhealthy spikes in ozone levels.

---

[4] *See, e.g.*, EPA, Illinois Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants.

These spikes, which can cause high-ozone days that threaten the health of vulnerable communities, are due in part to emissions from upwind States like State Petitioners. *See, e.g.*, EPA, Massachusetts (n.d.) (registering exceedances of the ozone standards at seven different monitoring sites across Massachusetts in 2021).

These harms would be irreparable. After each ozone season concludes, State Intervenors cannot retroactively reduce pollution levels for that time period, meet an attainment deadline that has already passed, or protect residents from harmful air they have already breathed. Postponing necessary pollution reduction any further would severely and irreparably harm State Intervenors and the public.

## CONCLUSION

The stay motions should be denied.

Dated: August 18, 2023      Respectfully submitted,

FOR THE STATE OF
NEW YORK

LETITIA JAMES
Attorney General

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
ELIZABETH A. BRODY
  *Assistant Solicitor General*
MORGAN A. COSTELLO
  *Assistant Attorney General*
   of Counsel

*/s/Claiborne E. Walthall[5]*
CLAIBORNE E. WALTHALL
Assistant Attorney General
The Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov

FOR THE STATE OF
CONNECTICUT

FOR THE STATE OF
DELAWARE

WILLIAM TONG
Attorney General of
Connecticut

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

*/s/ Christian Douglas Wright*
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Christian.wright@delaware.gov

---

[5] Counsel for the State of New York certifies that the other parties listed in the signature blocks consent to this filing.

25

FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
Attorney General of the
District of Columbia

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General
for the District of Columbia
400 6th Street N.W., Ste 8100
Washington, D.C. 20001
Tel. (202) 724-6609
caroline.vanzile@dc.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

*/s/ Elizabeth Dubats*
ELIZABETH DUBATS
Supervising Attorney
JASON E. JAMES
Assistant Attorney General
MATTHEW DUNN
Chief, Environmental
Enforcement/
Asbestos Litigation Division
Illinois Office of the Attorney
General
69 W. Washington, Suite 1800
Chicago, IL 60602
(312) 814-2069
elizabeth.dubats@ilag.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Joshua M. Segal*
JOSHUA M. SEGAL
Special Assistant Attorney
General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6446
jsegal@oag.state.md.us

FOR THE COMMONWEALTH OF MASSACHUSETTS

ANDREA JOY CAMPBELL
Attorney General of
Massachusetts

*/s/ Jillian M. Riley*
JILLIAN M. RILEY
JOHN S. CRAIG
JULIA JONAS-DAY
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2424
jriley@mass.gov

26

FOR THE STATE OF
NEW JERSEY

MATTHEW J. PLATKIN
Attorney General of New Jersey

*/s/Lisa Morelli*
LISA MORELLI
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
Telephone: (609) 376-2735
Email:
lisa.morelli@law.njoag.gov


FOR THE STATE OF
WISCONSIN

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53702-7857
Telephone: (608) 267-8904
Fax: (608) 267-2223
johnsonkarpg@doj.state.wi.us

FOR THE COMMONWEALTH
OF PENNSYLVANIA

MICHELLE A. HENRY
Attorney General

*/s/ Ann R. Johnston*
ANN R. JOHNSTON
Assistant Chief Deputy Attorney
General
Office of the Attorney General
Civil Environmental
Enforcement Unit
Strawberry Square
14th Floor
Harrisburg, PA 17120
ajohnston@attorneygeneral.gov
717-497-3678


FOR THE CITY OF
NEW YORK

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City
of New York

*/s/Christopher Gene King*
CHRISTOPHER GENE KING
Senior Counsel, Environmental
Law Division
New York City Law Department
100 Church Street
New York, NY 10007
cking@law.nyc.gov

27

FOR HARRIS COUNTY, TEXAS

CHRISTIAN MENEFEE
Harris County Attorney
JONATHAN FOMBONNE
First Assistant County Attorney
TIFFANY BINGHAM
Managing Counsel

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
Environmental Division Director
State Bar No. 24042075
1019 Congress, 15th Floor.
Houston, Texas 77002
Telephone: (713) 274-5124
Fax: (713) 437-4211
Email:
sarah.utley@harriscountytx.gov

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned attorney, Claiborne E. Walthall, hereby certifies:

1.    This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) and the Court's August 17, 2023, order, ECF#2013011. According to the word processing system used in this office, this document contains 4,534 words, which combined with the total for Environmental and Public Health Respondent-Intervenors, is less than 10,000 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 27(d)(1)(E) and the type-style requirements of Fed. R. App. P. 32(a)(6) and 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook.

Dated: August 18, 2023        /s/ *Claiborne E. Walthall*
                              Claiborne E. Walthall
                              Assistant Attorney General
                              New York State Office of
                              the Attorney General
                              Environmental Protection Bureau
                              The Capitol
                              Albany, New York 12224
                              (518) 776-2380
                              claiborne.walthall@ag.ny.gov

29

## CERTIFICATE OF SERVICE

I certify that the foregoing Opposition to Petitioners' Stay Motions was filed on August 18, 2023, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system and that, therefore, service was accomplished upon counsel of record by the Court's system.

Dated: August 18, 2023                    */s/ Claiborne E. Walthall*
                                          Claiborne E. Walthall
                                          Assistant Attorney General
                                          New York State Office of
                                          the Attorney General
                                          Environmental Protection Bureau
                                          The Capitol
                                          Albany, NY 12224
                                          (518) 776-2380
                                          claiborne.walthall@ag.ny.gov

30