**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| STATE OF UTAH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 23-1157, and |
| | ) | consolidated cases |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, et al., | ) | |
| | ) | |
| Respondents | ) | |
| _____ | ) | |

**JOINT BRIEFING PROPOSAL OF PETITIONER WISCONSIN,
PETITIONER-INTERVENOR SIERRA CLUB, RESPONDENT EPA, AND
STATE AND PUBLIC INTEREST RESPONDENT-INTERVENORS**

Pursuant to the Court's October 11th Order, ECF 2021268, Respondents the

United States Environmental Protection Agency and Michael S. Regan,

Administrator (collectively, "EPA"), in these consolidated petitions for review

respectfully submit this briefing proposal.  EPA has shared and discussed its

proposed briefing format with all parties.  The following 27 Petitioners, Petitioner-

Intervenors, and Respondent-Intervenors have authorized EPA to represent that

they concur in EPA's proposed briefing format:

- Petitioner State of Wisconsin

- Petitioner-Intervenor Sierra Club

- State Respondent-Intervenors: States of New York, Connecticut, Delaware, Illinois, Maryland, New Jersey, and Wisconsin, the Commonwealths of Massachusetts and Pennsylvania, the District of Columbia, the City of New York, and Harris County, Texas

- Public Interest Respondent-Intervenors: Air Alliance Houston, Appalachian Mountain Club, Center for Biological Diversity, Chesapeake Bay Foundation, Citizens for Pennsylvania's Future, Clean Air Council, Clean Wisconsin, Downwinders at Risk, Environmental Defense Fund, Louisiana Environmental Action Network, Sierra Club, Southern Utah Wilderness Alliance, and Utah Physicians for a Healthy Environment

A brief recitation of the background for this proposal is set forth below in Part I.  Part II sets forth EPA's, Public Interest Respondent-Intervenors', and Respondent-Intervenor and Petitioner-Intervenor Sierra Club's rationales for their opposition to consolidation of the above-captioned petitions with a separate set of consolidated petitions, per the Court's October 11th Order.  ECF 2021268.  Part III sets forth EPA's proposed briefing format, and each concurring party's rationale in support of that proposed format.  Finally, in Part IV, EPA addresses its general understanding of and opposition to the opposed parties' ("Opposing Petitioners") alternative proposal.  State Respondent-Intervenors concur in this proposal except as set forth in their position statement in Part III.C.

## I.     BACKGROUND

Petitioners in the above-captioned consolidated cases challenge a rule promulgated by EPA under the Clean Air Act entitled, "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards," 88 Fed. Reg.

2

36654 (June 5, 2023) (the "Good Neighbor Plan" or "Plan"). That Plan

implements the Clean Air Act's Good Neighbor Provision, 42 U.S.C.

§ 7410(a)(2)(D)(i)(I), which ensures that upwind states prohibit emissions that will

significantly contribute to nonattainment of the National Ambient Air Quality

Standards in downwind states. In accordance with that provision, the Plan

establishes a coordinated, interstate emissions control program for large industrial

polluters in multiple states that will assist downwind states in meeting the updated

2015 National Ambient Air Quality Standards for ozone.

The Plan largely tracks previous EPA rulemakings implementing the Good

Neighbor Provision for earlier ozone standards, including the "Revised CSAPR

Update" (reviewed in *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023)),

the "CSAPR Update" (reviewed in *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir.

2019)), and the original "CSAPR," which stands for Cross-State Air Pollution Rule

(reviewed in *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7 (D.C. Cir.

2012) (reversed and remanded by the Supreme Court) and 795 F.3d 118 (D.C. Cir.

2015) (on remand)). It employs EPA's longstanding 4-step framework – which

has been repeatedly upheld by this Court and the Supreme Court – to define and

implement necessary ozone reductions from power plants in upwind states that

failed to submit adequate state plans to reduce pollution flowing into downwind

states.  And the Plan extends that framework to reduce ozone from certain other industrial sources in those states.

At promulgation, the Good Neighbor Plan's ozone reductions were required in 23 upwind states that had submitted insufficient state plans or failed to submit any plan at all.  Following promulgation of the Good Neighbor Plan, regional Circuits considering EPA's disapproval of some of those state plans stayed EPA's disapproval action pending judicial review.  Because a valid disapproval of a state plan is a predicate to EPA's implementation of a federal plan, the Good Neighbor Plan currently continues in effect in 11 states (those not covered by a judicial stay).

The above-captioned case consolidates 18 petitions for review that were filed in this Court and another two petitions, filed in another Circuit, that have now been transferred to this Court, *see* ECF 2025739 (consolidating transferred challenges).  Another four petitions were transferred from the Sixth Circuit; their consolidation with the above-captioned case is currently pending.  *See* D.C. Cir. Nos. 23-1314, 23-1315, 23-1316 & 23-1317.  All but one of those 24 petitions were brought by upwind states whose sources were initially or are presently included in the Good Neighbor Plan, or by those sources themselves.  This proposal refers to those petitioners as Upwind State and Industry Petitioners, or as the parties who believe the Plan is too stringent.  The remaining petition was filed by the State of Wisconsin in its capacity as a downwind state, and generally

challenges the Plan as not stringent enough.  Numerous parties have also joined as both Petitioner- and Respondent-Intervenors.

On September 25th and October 11th, the Court denied all motions to stay the Good Neighbor Plan pending judicial review, ECF 2018645 & 2021268, though some petitioners have submitted applications for stay to the Supreme Court, which remain pending.  In its October 11th Order, the Court also ordered the parties to submit proposed briefing formats in this case within 30 days and to address whether these consolidated cases should be consolidated with a second set of cases, consolidated under *National Mining Association v. EPA*, D.C. Cir. No. 23-1275, et al., that are pending before the Court.

The *National Mining* case challenges a separate EPA action related to the Good Neighbor Plan.  Specifically, it encompasses five petitions challenging EPA's promulgation of the First Interim Final Rule, which implements the judicial stays mentioned above by confirming the Good Neighbor Plan's inapplicability in covered states during the pendency of the stays.  Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States, 88 Fed. Reg. 49,295 (July 31, 2023).  The rule also returns those states to the status quo of federal ozone regulation before the Plan's promulgation (which for many states means re-entry into the ozone emissions trading program governing their compliance with earlier

Good Neighbor rules). EPA has also promulgated a Second Interim Final Rule addressing states not covered by the First Interim Final Rule. Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Additional Judicial Stays of SIP Disapproval Action for Certain States, 88 Fed. Reg. 67,102 (Sept. 29, 2023). Petitions for review of the Second Interim Final Rule must be filed in this Court by November 28th of this year. *Id.* at 67,106.

## II.  OPPOSITION TO CONSOLIDATION WITH *NATIONAL MINING ASSOCIATION V. EPA,* NO. 23-1275, ET AL.

This Court's October 11th Order asked the parties to address whether the above-captioned cases, *Utah v. EPA*, No. 23-1157, et al., should be consolidated with *National Mining Association v. EPA*, No. 23-1275, et al., or otherwise coordinated. EPA, Public Interest Respondent-Intervenors, and Respondent-Intervenor and Petitioner-Intervenor Sierra Club oppose consolidation. And as explained below, EPA believes the benefit of other coordination would be limited.

### A.  EPA's Rationale

First, any theoretical overlap between petitioners' arguments in the *Utah* and *National Mining* cases is illusory. The First (and Second) Interim Final Rule was compelled by judicial order and enacts a stay of the Good Neighbor Plan as to certain states in keeping with those orders. That task was not an exercise of EPA discretion, and to the extent Petitioners see discretion in it – for example, by

6

accusing EPA of failing to reconsider the Good Neighbor Plan as a whole – their challenges are contrary to law. Litigation over the First Interim Final Rule will not simply adjudicate overlapping grievances against the Good Neighbor Plan; it will require that the Court consider distinct issues of administrative law concerning, among other things, EPA's discretion in the face of judicial stays and the proper means of seeking reconsideration of the Good Neighbor Plan in light of those stays. Those issues – whether raised at the merits stage or in a dispositive motion (which might moot the *National Mining* challenges altogether) – would only complicate the Court's review of the Good Neighbor Plan itself. Consolidation of the *Utah* and *National Mining* cases will thus frustrate rather than serve judicial efficiency.

Moreover, consolidation would create needless practical complications. As noted above, *National Mining* challenges EPA's First Interim Final Rule implementing the judicial stays. But EPA has promulgated a second, functionally identical rule, the Second Interim Final Rule, implementing judicial stays as to additional states not covered by the First Interim Final Rule. As the regional Circuits issued judicial stays of EPA's rule disapproving state ozone plans at different times, the Second Interim Final Rule came a few months after the First. So the period for filing petitions for judicial review of the Second Interim Final Rule has not yet run. It is indisputable that challenges to those two Interim Final

Rules should be consolidated: absent a handful of additional clarifications and its application to different states, the Second Interim Final Rule is identical to the First in both form and substance.  But consolidating challenges to these twin rules with the *Utah* challenges to the Good Neighbor Plan itself would unreasonably delay this litigation.

Both EPA's and Opposing Petitioners' proposals are built on the assumption that briefing will begin on the *Utah* Good Neighbor Plan challenges immediately. In fact, Opposing Petitioners' proposal, as EPA understands it, would have Petitioners' briefs due on December 20th, only 22 days after the deadline for filing challenges to the Second Interim Final Rule (which is November 28th).  Any would-be petitioner challenging the Second Interim Final Rule cannot be expected to prosecute their challenge to that rule in 22 days, and that problem is on top of the obvious conflict between such a schedule and the usual initial case management deadlines, including deadlines for filing the administrative record, filing procedural motions, and filing dispositive motions.  To be sure, EPA's proposed schedule affords more time before the first brief in these *Utah* cases is due, but EPA still believes it would be inequitable to force any new petitioners challenging the Second Interim Final Rule to brief their challenges on a more rapid schedule than they might wish without any opportunity for input.

At the same time, it would create enormous inefficiencies to brief challenges to the First Interim Final Rule as part of the *Utah* litigation, but then brief challenges to the Second Interim Final Rule in separate briefs on a separate schedule.  In that arrangement, any efficiency gained from consolidation would be lost.  The only sensible solution is to leave the *Utah* and *National Mining* challenges unconsolidated, and then consolidate the *National Mining* challenges to the First Interim Final Rule with whatever challenges may be filed to the Second Interim Final Rule.

That result is also the most sensible given the nature of the Interim Final Rules themselves.  Those rules effectuate judicial stays that will dissolve when review of EPA's state plan disapproval rule is concluded in the regional Circuits. Those proceedings are well underway: oral argument will be held on December 4, 2023, in the 5th Circuit challenges and on January 17, 2024, in one of the 10th Circuit challenges.  EPA recently filed its response brief in the 8th Circuit, and has response briefs due in the 6th and 11th Circuits in the next month, with other briefs potentially following thereafter.  EPA expects that the regional Circuits will schedule the remaining oral arguments in due course.

Resolution of any of those cases could change the scope and effect of the Interim Final Rules and, thus, the nature of the challenges in this Court.  Petitioners in the *National Mining* case and any cases filed as to the Second Interim Final Rule

might see their concerns dissolve if EPA's disapproval is vacated as to their state. If EPA's disapproval is instead upheld, and a new rule issued to reintegrate states into the Good Neighbor Plan (as EPA has confirmed will be necessary, *see* 88 Fed. Reg. 49,297), Petitioners' concerns might be mooted or substantially altered. Other kinds of practical complications might arise if, instead, the regional Circuits conclude they lack venue, which is still at issue in those cases, and so transfer the state plan challenges to the D.C. Circuit for a new round of briefing. No matter the nature of the disruption, because litigation over the Interim Final Rules may be directly affected by developments in the state plan litigation – and the vast majority of issues in the Good Neighbor Plan challenges will not be – the consolidation of the *Utah* and *National Mining* cases is more likely to breed chaos than order.

Finally, while EPA recognizes that the basic factual overlap between these cases might otherwise counsel for coordination of these cases before a single panel, the benefit of such coordination would be limited here by the differential timing of the Good Neighbor Plan and Interim Final Rule challenges, as discussed above.

### B.    Public Interest Respondent-Intervenors' and Respondent-Intervenor and Petitioner-Intervenor Sierra Club's Rationale

Public Interest Respondent-Intervenors and Respondent-Intervenor and Petitioner-Intervenor Sierra Club oppose consolidation of this case with *National Mining* because consolidation could delay resolution of challenges to the Good Neighbor Plan. The deadline for dispositive motions in the *National Mining* case

10

has not yet arrived, Order of Oct. 3, 2023, ECF 2020227; and EPA has moved to extend that deadline to December 8 in the interest of judicial economy. Motion to Extend Dispositive Motions Deadline, ECF 2026277 (Nov. 10, 2023). Further, as EPA notes, the period for filing petitions for judicial review of a second Interim Final Rule has not yet run. *Id.* at 4. Consolidation of the *Utah* case with those separate challenges therefore would introduce substantial risk of delaying the resolution of challenges to the Good Neighbor Plan. Petitioner-Intervenor Sierra Club, who along with Petitioner Wisconsin seeks a determination that the Plan is insufficiently protective, would be particularly prejudiced by that undue delay.

## III.    BRIEFING FORMAT PROPOSAL AND RATIONALE

### A.    Proposal

| BRIEF | LENGTH/FORMAT | DEADLINE |
|---|---|---|
| Brief of Upwind State Petitioners[1] | 18,000 words | Friday, January 26 |
| Brief of Industry Petitioners[2] | (up to 3 briefs) | Friday, January 26 |
| Brief of Petitioner Wisconsin | 12,000 words | |

---

[1] Upwind State Petitioners' challenges are Case Nos. 23-1157, 23-1183, and 23-1209.  Case Nos. 23-1314 and 23-1315, where consolidation is pending, are also Upwind State petitions.

[2] Industry Petitioners' challenges are Case Nos. 23-1181, 23-1190, 23-1191, 23-1193, 23-1195, 23-1199, 23-1200, 23-1202, 23-1203, 23-1205, 23-1206, 23-1207, 23-1208, 23-1211, 23-1306, and 23-1307.  Case Nos. 23-1316 and 23-1317, where consolidation is pending, are also Industry petitions.

| | | |
|---|---|---|
| Brief of Petitioner-Intervenor City Utilities of Springfield | 8,400 words | Wednesday, February 14 |
| Brief of Petitioner-Intervenor Sierra Club | 8,400 words | |
| Brief of Respondent EPA | 30,000 words | Wednesday, April 10 |
| Brief of Public-Interest Respondent-Intervenors | 12,600 words (up to 2 briefs) | Monday, April 29 |
| Brief of State Respondent-Intervenors | | |
| Brief of Respondent-Intervenor Midwest Ozone Group | 8,400 words | |
| Reply Brief of State Petitioners | 9,000 words (up to 3 briefs) | Monday, May 20 |
| Reply Brief of Industry Petitioners | | |
| Reply Brief for Petitioner Wisconsin | 6,000 words | |
| Reply Brief of Petitioner-Intervenor City Utilities of Springfield | 4,200 words | Friday, May 31 |
| Reply Brief of Petitioner-Intervenor Sierra Club | 4,200 words | |
| Deferred Appendix | | Thursday, June 6 |
| Final Form Briefs | | Thursday, June 13 |

## B.    EPA's Rationale

**1.    Length of briefs.**  EPA acknowledges the Court's admonition that it will look in this case "with extreme disfavor on repetitive submissions," "will, where appropriate, require a joint brief of aligned parties with total words not to exceed the standard allotment for a single brief," and requires "*detailed*

12

justifications for any request … to exceed in the aggregate the standard word allotment."  Order, ECF 2021268 (emphasis in original).  The Good Neighbor Plan is the latest in a long line of iterative rulemakings that implement the Good Neighbor provision for successive ozone standards, and that have been reviewed time and again by this Court, so many of the legal questions surrounding EPA's implementation of this program have already been answered.  EPA believes this limits petitioners' bases for justifying an enlarged word allotment.  However, in recognition of the presence of petitioners seeking opposite outcomes (a more stringent versus less stringent rule) and the discrete set of issues that diverge between the particular industries regulated here, EPA proposes some adjustments to a standard-length briefing format.

Those adjustments replicate, wherever applicable, the word counts ordered by this Court in the most recent comparable case: the consolidated challenges in *Wisconsin v. EPA*, D.C. Cir. No. 16-1406, et al.  *See* ECF 1675267 (original briefing order).  That case concerned EPA's issuance of a federal implementation plan governing upwind states' Good Neighbor obligations for the *2008* ozone standard; this case concerns EPA's issuance of a federal implementation plan governing upwind states' Good Neighbor obligations for the updated *2015* ozone standard.  Although some particulars of the two federal plans at issue differ, much more is consistent between the two cases, even beyond the identical statutory and

regulatory framework at play.  For example, both involve challenges brought primarily by state and industry parties claiming the rule is too stringent, but also contain at least one challenger claiming the rule is not stringent enough.  And both involve both broad legal issues and industry- or facility-specific challenges of a more technical nature.

As here, the Court in *Wisconsin* was presented with competing briefing proposals from the parties, which the Court resolved by setting its own word limits. Because *Wisconsin*'s briefing order represents the Court's own assessment of the length of briefs appropriate in this type of challenge, and given the similarities between *Wisconsin* and the challenges here, EPA believes that the Court's order in *Wisconsin* sets appropriate word counts for all parties in *this* case, excepting Petitioner-Intervenors (as there were no petitioner-intervenors in *Wisconsin*). Thus, EPA proposes that the Court adopt the same word limits ordered in *Wisconsin*, and proposes additional word limits for the two Petitioner-Intervenors, as follows:

- 12,000 words total for opening briefs of Downwind Petitioners claiming the Plan is not stringent enough (here, the State of Wisconsin)

- 18,000 words total for opening briefs of Upwind Petitioners claiming the Plan is too stringent (here, Upwind State and Industry Petitioners)

- 8,400 words each for opening briefs of Petitioner-Intervenors (here, City Utilities of Springfield supporting Upwind State and Industry Petitioners, and Sierra Club supporting Petitioner Wisconsin)

- 30,000 words for the brief of Respondent EPA

14

- 12,600 words total for the briefs of State and Public Interest Respondent-Intervenors responding to challenges that the Plan is too stringent (i.e., 70% of Upwind Petitioners' words)

- 8,400 words for the brief of Industry Respondent-Intervenors responding to challenges that the Plan is not stringent enough (here, Midwest Ozone Group)

- Reply briefs for respective parties (6,000 words for not-stringent-enough Petitioners; 9,000 words for too-stringent Petitioners; 4,200 words for each Petitioner-Intervenor)

For Petitioner-Intervenors City Utilities of Springfield and Sierra Club, the parties for whom *Wisconsin* does not provide a ready analogue, EPA proposes 8,400 words each for opening briefs and 4,200 words each for reply briefs. Consolidation between these two parties is inappropriate, as they are on opposite sides concerning the appropriate stringency of EPA's Good Neighbor Plan. And 8,400 words is the same word count afforded Industry Respondent-Intervenor Midwest Ozone Group, which (unlike the coalition of State and Public Interest Respondent-Intervenors) is a single party writing in support of a principal brief.

EPA has made only one other adjustment to the briefing format provided in the *Wisconsin* order, which is to indicate that Upwind State and Industry Petitioners may file up to three briefs, rather than the two suggested in *Wisconsin*. The ability to file three briefs was an element of Opposing Petitioners' own proposal, as shared with EPA; EPA does not object to this division, provided it does not enlarge the word count, and so has included it in its proposal.

Altogether, EPA believes that these proposed word limits and briefing format allow sufficient space to brief all of the major issues in this case and will deter repetitive submissions.

### 2. Timing of briefs.

EPA believes that its proposed briefing deadlines above are appropriate in light of the number of words encompassed by each side's briefs; the technical nature of the issues presented; the number of parties coordinating to draft joint opening, intervenor, and reply briefs; the presence of both Petitioner-Intervenors and Respondent-Intervenors; and the fact that EPA requires substantial time for coordination between EPA and the Department of Justice ("DOJ"), and review by EPA and DOJ management.

Specifically, the briefing schedule affords the principal parties – Petitioners and EPA – 74 days and 75 days, respectively, to file their opening briefs. This timeframe accords with that provided in other multi-party challenges to EPA rulemakings. For example, in the *Wisconsin* case addressing EPA's Good Neighbor rule for the 2008 ozone standard, the Court afforded Petitioners and Respondents more than 90 days for their respective opening briefs. ECF 1675267 at 2. The timeframe proposed here accounts for EPA's unusually lengthy dual-agency review process – which typically necessitates a 60-day briefing interval

even in a standard-length case – and, in this instance, also ensures that Petitioners have adequate time for briefing over the winter holidays.

The schedule also provides a 19-day interval between Petitioner and Respondent opening briefs and the briefs of supporting Intervenors. Staggering intervenor briefs in this manner is consistent with Circuit Rule 28(d)(2)'s requirement that intervenor briefs avoid repetition of the principal briefs, and with Handbook IX.A.1, which indicates that intervenor briefs should be "staggered" seven days after the principal briefs to effectuate this command. The longer staggered interval here will help ensure that Intervenors' briefs are not duplicative of the enlarged briefs filed by the parties they support.

The schedule further provides 40 days for Petitioners' reply briefs, an additional 11 days for Petitioner-Intervenors' reply briefs (staggered to prevent duplication with Petitioners' replies), six days for compilation of the deferred appendix, and seven days for the production of final form briefs. These intervals are generally consistent with the timeframes provided in the Federal Rules of Appellate Procedure, the D.C. Circuit Local Rules and Handbook, or similar past cases.

**C.    Rationales of Concurring Parties**

**1.    Statement of Petitioner State of Wisconsin**

Wisconsin's concurrence in this proposal is based on three considerations: (1) staffing within the Wisconsin Department of Justice and the Wisconsin Department of Natural Resources; (2) the schedule and briefing format in *Wisconsin v. EPA*; and (3) Wisconsin's unique position as the sole sovereign state challenging the Plan as insufficiently stringent.

First, undersigned counsel for the State of Wisconsin will be the principal attorney responsible for research and drafting of the state's brief. This joint proposed schedule reflects the absolute earliest that undersigned counsel could reasonably prepare a brief that will be helpful to this Court, building in sufficient time for internal review by the client, the Wisconsin Department of Natural Resources. Between now and the proposed due date, counsel has multiple deadlines, including five summary judgment briefs across three cases; two substantial appellate briefs; and an oral argument in one of the summary-judgment cases (a multi-issue regulatory case). The proposed schedule also accounts for time undersigned counsel will be with his family during his children's winter break from school.

Relatedly, undersigned counsel's work unit within the Wisconsin Department of Justice does not currently have the capacity to absorb a more

18

aggressive briefing schedule for this case. The work unit is relatively small—16 attorneys, all of whom are carrying heavy caseloads across diverse subject areas. The unit handles nearly all of the civil appeals for the State of Wisconsin, as well as a substantial trial-level caseload, including certain civil-rights litigation, complex regulatory cases, all election-related litigation on behalf of the State, and challenges to state statutes and administrative rules. In light of all other attorneys' existing caseloads and schedules, it would be a substantial burden within the unit for another attorney to either take on any of undersigned counsel's earlier deadlines or to handle briefing in this case.

Next, the State of Wisconsin's proposed word allocation draws heavily from this Court's briefing order in *Wisconsin v. EPA*, No. 16-1406 (Dkt. 1675267), and the relative similarity in the number of petitioners, types of alignments, and types of issues between the two cases.

In this case, the State of Wisconsin is the sole petitioner challenging the Plan as insufficiently stringent and therefore is not aligned with any of the other petitioners. It would therefore be infeasible, if not impossible, for Wisconsin to coordinate briefing space with other petitioners.

It also would not be feasible for Wisconsin to share briefing space with petitioner-intervenor Sierra Club, which has been allowed to intervene in support of Wisconsin's petition. (*See* Dkt. 2015340, 2021227.) The State of Wisconsin (by

its Department of Natural Resources) is the entity principally responsible for

implementing the Clean Air Act's attainment obligations within the state, including

those obligations resulting from the Plan's failure to adequately control emissions

from states upwind of Wisconsin. The state therefore has unique sovereign

interests separate from Sierra Club's interests in protecting the health and welfare

of its members. Indeed, Sierra Club's intervention was permissible precisely

because the two entities' interests may diverge on multiple issues. (*See* Dkt.

2015340:7–8, 2021227.)

Wisconsin's proposed word allotment acknowledges and accounts for the

numerous issues to be addressed by other parties, as well as the Court's directive to

avoid duplication wherever possible. Thus, despite the multiple unique issues

Wisconsin plans to raise (*see* Dkt. 2015339), the state's requested allotment is

already less than what typically would be allowed for a petitioner's opening and

reply briefs under the Federal Rules of Appellate Procedure. *See* Fed.  R. App.

Proc. 32(a)(7).

## 2.    Statement of Sierra Club as Petitioner-Intervenor

Petitioner-Intervenor Sierra Club (supporting Petitioner Wisconsin) requests

that the court allot 8,400 words for their opening brief and 4,200 words for their

reply brief. These word counts are less than the words typically granted to

intervenors under D.C. Circuit Rule 32(e)(2)(B) and in the same proportion to

Petitioner Wisconsin's requested words as intervenor briefs are to petitioner briefs under that rule. Sierra Club submits that it should not be required to share a brief with Petitioner-Intervenor City Utilities of Springfield (supporting Upwind State and Industry Petitioners), because City Utilities' interests and aims in this litigation are adverse to Sierra Club's, and there is no overlap of issues.

### 3. Statement of State Respondent-Intervenors Concerning Separate Briefing, Word Count and Potential Expedition

Up to two separate briefs are appropriate for the State Respondent-Intervenors and the Public Interest (NGO) Respondent-Intervenors. State Respondent-Intervenors are nine States, the District of Columbia, the City of New York, and Harris County, Texas. This Court ordinarily does not compel government intervenors to file joint briefs with other Intervenors, *see* D.C. Cir. R. 28(d)(4), and there is no reason to depart from that sound practice here.

The EPA action here established federal implementation plan requirements to address 23 States' obligations to eliminate significant contribution to nonattainment, or interference with maintenance, of the 2015 ozone standards in other States. This action was promulgated to enforce the "Good Neighbor Provision" of the Clean Air Act, 42 U.S.C. § 110(a)(2)(D)(i)(I). As relevant here, this provision is intended to protect downwind States—such as State Respondent-Intervenors —and their residents from emissions of ozone-forming pollutants from sources in upwind States. Additionally, the Good Neighbor Provision requires

21

upwind States to eliminate significant contribution by downwind States' upcoming attainment deadlines. *See Wisconsin v. EPA*, 938 F. 3d 303, 315 (D.C. Cir. 2019). Therefore, State Respondent-Intervenors have a strong and unique interest in the Plan's validity. The State Respondent-Intervenors will join with the NGO Respondent-Intervenors and the federal Respondents in defending the Plan, but will have a different perspective and unique interests as state and municipal governments. As proposed, the State and NGO Respondent-Intervenors will share word count, but each group will be able to file their own briefs, avoiding duplication among themselves and with the federal Respondents.

Regarding word count, the State Respondent-Intervenors concur with the proposal that affords them (along with the NGO Respondent-Intervenors) 70 percent of the words allotted to the Petitioners (excepting Petitioner State of Wisconsin),[3] consistent with the ratio in this Court's rules. *Compare* Fed. R. App. P. 32(a)(7)(B)(i) *with* D.C. Circuit R. 32(e)(2)(b) (70 percent ratio). In addition, 70 percent of Petitioners' words is justified because there are two groups of Respondent-Intervenors with distinct interests. *See* D.C. Cir. R. 28(d)(4). These groups include a large group of States and Municipal governments who intend to

---

[3] State Respondent-Intervenors are not participating as Respondents in the challenge filed by the State of Wisconsin in Case No. 23-1201. *See* Circuit Rule 15(b) Notice by Intervenor-Respondents State of New York, et al., ECF 2015360 (filed Sept. 5, 2023).

robustly defend the Plan as necessary to protect their residents and assist them with attaining and maintaining the federal ozone standards, as well as a group of nonprofit environmental and public health organizations whose members have strong interests in defending EPA's action. Granting the Respondent-Intervenors a proportional share of the Petitioners' words is justified here, because the Petitioners include dozens of State and industry parties, who are expected to raise a panoply of issues, as indicated by their respective statements of issues filings.

With respect to the briefing schedule, the State Respondent-Intervenors believe the proposed timing of briefs will balance the need for expeditious briefing and consideration with the time needed for thorough briefing of a multitude of issues and coordination with aligned parties. This Court previously denied stay motions by numerous Petitioners, allowing the Plan to remain in effect during these challenges. *See* ECF 2018645, 2021268.  Ongoing implementation of the Plan is critical because the emissions reductions it requires are needed in the upcoming 2024 ozone season, which begins May 1, 2024. However, the State Respondent-Intervenors also note that several emergency motions for stay of the Rule are pending before the Supreme Court of the United States. Therefore, State Respondent-Intervenors may seek expedited consideration in this Court, including expedited oral argument, to prevent harms to public health, particularly if the

Supreme Court grants one or more of these applications staying the Good

Neighbor Plan in whole or in part.

### 4.    Statement of Public Interest Respondent-Intervenors

Public Interest Respondent-Intervenors are national, regional, and local

environmental and public health groups, whose interests are aligned but distinct.

As organizations devoted to the protection of human health and the environment,

Public Interest Respondent-Intervenors (including Sierra Club, which is also a

Petitioner-Intervenor) have long advocated for states and EPA to adopt the

strongest protections against ozone pollution consistent with the law. Many Public

Interest Respondent-Intervenors submitted extensive legal and technical comments

urging EPA to adopt the proposed Good Neighbor Plan with alterations that would

increase the degree of protection it affords to public health and the environment.[4]

Many aspects of the Good Neighbor Plan—including the requirements for

pollution reductions from both power plants and other industrial sources, and from

states throughout the country—will benefit the health of Public Interest

Respondent-Intervenors' members.

To ensure that they have a full ability to represent their and their members'

interests, Public Interest Respondent-Intervenors request that the Court permit

---

[4] Comments of Earthjustice et al. (June 21, 2022), EPA-HQ-OAR-2021-0668-
0758.

them and State Respondent intervenors to submit up to two briefs with a total word count equal to 70% (12,600 words under EPA's proposal) of the total words allotted to petitioners other than Wisconsin. *See* Fed. R. App. Pro. 32(e)(2) (granting respondent-intervenors 70% of the word count to which they are responding). In recognition of the Court's rules concerning briefing in consolidated appeals, and to avoid excessive briefing, while also allowing adequate space to ventilate the issues and protect their unique interests, Public Interest Respondent-Intervenors agree to share with Respondent-Intervenor States the word count that would otherwise be afforded a single respondent-intervenor.  They will coordinate to avoid duplication.

Public Interest Respondent-Intervenors have distinct interests from those of State Respondent-Intervenors, who are sovereign governmental entities that must balance the multiple and competing interests of their residents. Public Interest Respondent-Intervenors submit that they should be permitted to file a separate brief from State Respondent-Intervenors, in accordance with standard practice in similar D.C. Circuit litigation. *See, e.g.*, D.C. Cir. R. 28(d)(4).

## IV.    OPPOSING PETITIONERS' PROPOSAL

Based on informal discussions to date, EPA understands that Upwind State and Industry Petitioners intend to file a separate briefing proposal that will suggest that the parties brief an excessively large word count in very truncated briefing

25

intervals.  The proposal – as EPA understands it – also contains several other unreasonable features and diverges from this Court's rules, as addressed below.

## A.  Length of Briefs.

Opposing Petitioners' proposed word counts are unreasonable.  This Court requires that "[p]arties with common interests in consolidated or joint appeals must join in a single brief where feasible" and "looks with extreme disfavor on the filing of duplicative briefs in consolidated cases."  *See* Handbook IX.A.2; ECF 2021268. While the Court does grant expanded word counts in large consolidated cases, EPA understands that Opposing Petitioners intend to propose 47,000 words total for all petitioners' opening briefs.  That total word count is excessive and, indeed, greater than word counts allowed in much larger and more complicated cases.  For example, EPA's "Clean Power Plan" – the Agency's first attempt to set greenhouse gas regulations for power plants – was the subject of 39 different petitions from numerous states and industry parties.  The Court granted petitioners 42,000 words for opening briefs, but that covered far more petitions and petitioners, and concerned issues of such magnitude that the case went directly to *en banc* review. ECF 1594951.

And as noted above, previous cases concerning earlier iterations of EPA's Good Neighbor rules for ozone have drawn similar challenges and been afforded far more modest word counts.  In *Wisconsin*, this Court ordered upwind state and

26

industry petitioners to brief their challenges in 18,000 words. In total, the

consolidated petitions in *Wisconsin* were afforded 30,000 words for their opening

briefs. ECF 1675267, 1691655, 1704975 (setting and resetting briefing schedule).[5]

In the *EME Homer* litigation over the earlier CSAPR rule, 15 states, two

localities, and 66 industry petitioners sought review and received 28,000 words

collectively for two briefs (at a time when standard-length briefs were 14,000

rather than 13,000 words). On remand from the Supreme Court, those parties were

instructed to split 14,000 words total for the remaining legal issues, including

general programmatic and procedural challenges and state- and facility-specific

challenges. And those challenges concerned implementation of a particulate

matter standard as well as an ozone standard, which is not the case here.

Notwithstanding these obvious analogues, Opposing Petitioners seek 47,000

words for all petitioners – well beyond what this Court has found appropriate in

past Good Neighbor challenges – and seek 35,000 words just for Upwind State and

Industry Petitioners – nearly twice what the Court ordered for upwind states and

industry petitioners in *Wisconsin*. Such a dramatic enlargement is unjustified. As

in this case, the two other large Good Neighbor cases noted above incorporated the

challenges of different states and industry parties and addressed both broad legal

---

[5] Indeed, in *Wisconsin*, petitioners similarly requested 44,000 words for all petitioners, including 32,500 words for upwind states and industries specifically, ECF 1666899, and the Court rejected that request.

questions and more granular and highly technical considerations raised by individual states or facilities.

The fact that EPA's rule includes obligations for industrial sources other than power plants is not a reason to expand either Upwind States' or Industry Petitioners' word count – and certainly not a reason to nearly double it.[6]  To begin, EPA's own proposed word count is already more than double that afforded petitioners in a typical case and so properly accounts for any expansion in the slate of issues.  And in any case, there is substantial reason to doubt that Petitioners here seek to raise more issues than petitioners in earlier challenges.  First, Petitioners' own statements of issues filed with the Court, while non-binding, indicate substantial overlap between Upwind State and Industry Petitioners (that is, everyone excluding the State of Wisconsin).  Second, the long line of cases addressing the Good Neighbor provision have substantially narrowed the field of remaining legal issues on questions including EPA's authority under the statute and the design of the obligations applicable to power plants.  EPA's Good

---

[6] In addition to the inclusion of other industry parties, Opposing Petitioners' proposal appears to be based, at least in part, on cases related to a separate rulemaking (EPA's disapproval of state Good Neighbor plans for ozone), where regional Circuits have granted very large word counts.  But those word counts – for example, more than 100,000 words for petitioners in the 8th Circuit – arose in cases where petitions were not consolidated and where petitioners were not required to file combined briefs or avoid duplication of issues.  So they are inapposite.

Neighbor rules, and the 4-step framework that guides them, have been extensively litigated before this Court (and in the Supreme Court) in the last 20 years – in *Midwest Ozone Group*, *Wisconsin*, and *EME Homer* noted above, but also: *New York v. EPA*, 781 Fed. App'x 4 (D.C. Cir. 2019); *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1593 (2014); *North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008); and *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000).

The Good Neighbor program and its underlying legal framework are not getting their first day in court.  So it is reasonable to expect that the application of longstanding frameworks to power plant and non-power plant sources can be reasonably addressed by petitioners in briefing that is comparable to previous cases.

Opposing Petitioners' proposal, as EPA understands it, also has several other defects:

(1) Despite proposing 47,000 words for Petitioners' opening briefs, it affords EPA only 35,000 words in response.  That asymmetry is unreasonable.  Even if a larger word count is granted to Petitioners, EPA should have an equitable opportunity to respond to the arguments raised.  Accordingly, if the Court were to order word limits that are higher (or lower) than those proposed by EPA, EPA respectfully requests that the Court grant EPA parity with the aggregate word count for Petitioners' opening briefs.

(2) Opposing Petitioners also suggest that State and Public Interest Respondent-Intervenors should have only 12,600 words collectively, even though they are responding to Petitioners (everyone other than State of Wisconsin) whose word count is 35,000 words.[7]  The word limits in Federal Rule 32(e)(2) anticipate that intervenors will have 70% of the word count to which they are responding, and that proportion should be maintained here with respect to whatever word count is afforded Upwind State and Industry Petitioners.  While EPA's proposal also suggests that Respondent-Intervenors be granted 12,600 words, that is 70% of the word count proposed for the (non-Wisconsin) Petitioners to which they are responding.  But if Upwind State and Industry Petitioners are in fact afforded 35,000 words, Respondent-Intervenors should be collectively entitled to 70% of *that* word count, which is 24,500 words – or 70% of whatever word count the Court ultimately sets for those Petitioners.

(3) Opposing Petitioners' propose that reply briefs for Upwind State and Industry Petitioners total 18,000 words.  The Court's Handbook, at IX.A.7, anticipates that reply briefs will be half the word count of opening briefs, but

---

[7] Note that State and Public Interest Respondent-Intervenor parties have agreed to share the word count that would otherwise be afforded a single respondent-intervenor, in recognition of the Court's rules concerning briefing in consolidated appeals.  The Court should hold Upwind States and Industry Petitioners to the same standard.

Opposing Petitioners' 18,000 words is more than 50% of the 35,000 words they've proposed for their opening briefs. The reply briefs should be reduced accordingly.

All told, Opposing Petitioners suggest 148,000 words of briefing here, or about 750 pages, excluding amici (and even without adjusting for the inequitable distribution of words noted above). This is plainly excessive to brief a rule that flows directly from numerous preceding rules that this Court has already reviewed and largely upheld.

### B.    Timing of briefs.

Opposing Petitioners' proposed schedule is also unreasonable and unworkable. The United States routinely seeks 60 days or more in this Court to draft a standard-length response brief. *See, e.g.*, ECF 1299440 (granting EPA 90 days to write a standard-length brief in the most recent Good Neighbor case, *Midwest Ozone Group*); *cf., e.g.*, ECF 1780502 (granting EPA 56 days to write a 18,000-word brief in the 2019 *New York* Good Neighbor case, even where the case was expedited). Opposing Petitioners would provide 47 days for EPA to respond to Petitioner briefs that are, in total, more than three-and-a-half times a standard-length brief. Moreover, the 47 days Opposing Petitioners propose for EPA's brief begins on December 20th and ends February 5th, amounting to little more than a month of actual briefing time once the winter holiday period is over. Such a compressed interval would be taxing even with smaller word counts, but the

drafting and review obligations associated with substantially enlarged briefs would make that timeframe unworkable.

Opposing Petitioners' truncated schedule appears to be intended to secure oral argument in the spring of 2024. But whether argument is held in late spring or early fall will not ultimately affect Petitioners' obligations under the Good Neighbor Plan: either way, an opinion will not issue in time to affect the Plan's application during the 2024 ozone season (which runs from May to October), but is very likely to issue in time to affect this Plan's application during the 2025 ozone season. So there is no reason for the Court to burden EPA and the parties concurring here with short briefing intervals merely to advance argument by a handful of months. And in any case, Opposing Petitioners had the opportunity to seek expedited briefing to ensure an early argument date but declined. They should not be allowed now to secure that relief by the backdoor, without the necessary legal showings and coming months after the deadline for such procedural motions.[8]  *See* Handbook VIII.B.

---

[8] Nor does their choice to file stay motions excuse their choice not to seek expedition, which they could have sought in the alternative. Moreover, Petitioners' applications asking the Supreme Court to overrule this Court's rejection of a stay of the Good Neighbor Plan pending judicial review are still pending before that Court, so any prejudice to Opposing Petitioners from a longer schedule is speculative in any case.

Opposing Petitioners' schedule has other disqualifying defects. First, as EPA understands it, it proposes that both Petitioner-Intervenor and Respondent-Intervenor briefs be due on February 5th, the same day EPA's response brief is due. EPA can think of no logic (or justice) that would countenance having a petitioner-intervenor's briefs filed contemporaneous with a respondent's brief. EPA is entitled to respond to the arguments levied against it – including by Petitioner-Intervenors – and it must be a afforded a substantial opportunity to do so, accounting for the time not only to draft its responses but also to seek the necessary approvals of the final brief from EPA and DOJ management. Should the Court accept any element of Opposing Petitioners' schedule, EPA respectfully requests that it remedy this glaring problem, provide for Petitioner-Intervenor briefs to be staggered a reasonable time[9] after Petitioners' opening briefs, and extend the remainder of the schedule accordingly.

Petitioners' proposal that Respondent-Intervenors file their briefs the same day as EPA's – and Petitioner-Intervenors' – is also unreasonable. Not only should Respondent-Intervenors have the opportunity to respond to all the opposing parties, intervenors have an obligation under Circuit Rule 28(d)(2) to avoid

---

[9] In its own proposal, EPA suggests that Petitioner-Intervenor briefs be staggered 19 days after Petitioners' briefs. But that interval assumes EPA has another 56 days thereafter before its filing deadline. A 19-day staggered interval for Petitioner-Intervenor briefs would not be reasonable were EPA to be afforded only 47 days total to brief this case.

repetition of the principal briefs, which necessitates an interval between the filing deadline for principal and intervenor briefs. Under Circuit Rule 28(d)(2) and Handbook IX.A.1, that interval is presumed to be "stagger[ed]" by 7 days after the relevant principal brief. Again, EPA respectfully requests that, should the Court accept any element of Opposing Petitioners' schedule, it provide for Respondent-Intervenor briefs to be staggered a reasonable time after EPA's brief and extend the remainder of the schedule accordingly.

In addition, the proposal that Opposing Petitioners provided to the parties suggested that all Petitioners file opening briefs by December 20th – 37 days after submission of these proposals. But the coalition making that proposal does not include all Petitioners; as noted above, Petitioner State of Wisconsin has indicated that it supports EPA's proposal because a compressed briefing interval would be substantially burdensome.

## CONCLUSION

For all the foregoing reasons, Respondent EPA and concurring parties Petitioner Wisconsin, Petitioner-Intervenor Sierra Club, State Respondent-Intervenors, and Public Interest Respondent-Intervenors respectfully request that the Court forgo consolidation of these petitions with Case No. 23-1275 et al., and adopt EPA's briefing proposal as set forth above.

DATED:   November 13, 2023

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN
ELISABETH H. CARTER
ZOE B. PALENIK
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-9277 (Kolman)
chloe.kolman@usdoj.gov

*Counsel for Respondents*

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General
Wisconsin Bar #1084731

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904 (GJK)
(608) 294-2907 (Fax)
johnsonkarpg@doj.state.wi.us

*Attorneys for Petitioner State of
Wisconsin*

/s/ Shaun A. Goho
Shaun A. Goho
Hayden Hashimoto
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us
hhashimoto@catf.us

*Counsel for Citizens for Pennsylvania's Future, Clean Air Council, and Clean Wisconsin*


/s/ Megan M. Herzog
Megan M. Herzog
Sean H. Donahue
David T. Goldberg
Donahue & Goldberg, LLP
1008 Pennsylvania Avenue SE
Washington, DC 20003
(650) 353-8719
megan@donahuegoldberg.com
sean@donahuegoldberg.com

Noha Haggag
Vickie L. Patton
Michael Panfil
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
(202) 572-3286
nhaggag@edf.org
vpatton@edf.org
mpanfil@edf.org

*Counsel for Environmental Defense Fund*

*/s/ Joshua D. Smith*
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

David R. Baake
Baake Law, LLC
2131 N. Main Street
Las Cruces, NM 88001
575-343-2782
david@baakelaw.com

*Counsel for Sierra Club*


*/s/ Neil Gormley*
Neil Gormley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
202-797-5239
202-745-5227
202-797-5245
ngormley@earthjustice.org
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston, Appalachian Mountain Club, Center for Biological Diversity, Chesapeake Bay Foundation, Downwinders at Risk, Louisiana Environmental Action Network, Sierra Club, Southern Utah Wilderness Alliance, and Utah Physicians for a Healthy Environment*

Ariel Solaski
Chesapeake Bay Foundation, Inc.
6 Herndon Avenue
Annapolis, MD 21403
Phone: (443) 482-2171
Fax: (410) 268-6687
asolaski@cbf.org

*Counsel for Chesapeake Bay Foundation*

| FOR THE STATE OF NEW YORK | FOR THE STATE OF CONNECTICUT |
|---|---|
| LETITIA JAMES<br>Attorney General<br>BARBARA D. UNDERWOOD<br>Solicitor General | WILLIAM TONG<br>Attorney General of<br>Connecticut |
| */s/Claiborne E. Walthall*<br>JUDITH N. VALE<br> Deputy Solicitor General<br>ELIZABETH A. BRODY<br> Assistant Solicitor General<br>MORGAN A. COSTELLO<br> Assistant Attorney General<br>CLAIBORNE E. WALTHALL<br>Assistant Attorney General<br>The Capitol<br>Albany, NY 12224<br>(518) 776-2380 | */s/ Jill Lacedonia*<br>JILL LACEDONIA<br>Assistant Attorney General<br>165 Capitol Avenue<br>Hartford, CT 06106<br>(860) 808-5250<br>Jill.Lacedonia@ct.gov |

| | |
|---|---|
| claiborne.walthall@ag.ny.gov | |

| FOR THE STATE OF DELAWARE | FOR THE DISTRICT OF COLUMBIA |
|---|---|
| KATHLEEN JENNINGS<br>Attorney General of Delaware<br><br>*/s/ Christian Douglas Wright*<br>CHRISTIAN DOUGLAS WRIGHT<br>Director of Impact Litigation<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>Christian.wright@delaware.gov | BRIAN L. SCHWALB<br>Attorney General of the<br>District of Columbia<br><br>*/s/ Caroline S. Van Zile*<br>CAROLINE S. VAN ZILE<br>Solicitor General<br>Office of the Attorney General for the<br>District of Columbia<br>400 6th Street N.W., Ste 8100<br>Washington, D.C. 20001<br>Tel. (202) 724-6609<br>caroline.vanzile@dc.gov |
| FOR THE STATE OF ILLINOIS | FOR THE STATE OF MARYLAND |
| KWAME RAOUL<br>Attorney General<br><br>*/s/ Elizabeth Dubats*<br>ELIZABETH DUBATS<br>Supervising Attorney<br>JASON E. JAMES<br>Assistant Attorney General<br>MATTHEW DUNN<br>Chief, Environmental Enforcement/<br>Asbestos Litigation Division<br>Illinois Office of the Attorney<br>General<br>69 W. Washington, 18th Floor<br>Chicago, IL 60602<br>(312) 814-2069<br>elizabeth.dubats@ilag.gov | ANTHONY G. BROWN<br>Attorney General of Maryland<br><br>*/s/ Joshua M. Segal*<br>JOSHUA M. SEGAL<br>Assistant Attorney General<br>Office of the Attorney General<br>200 St. Paul Place<br>Baltimore, MD 21202<br>(410) 576-6446<br>jsegal@oag.state.md.us |

FOR THE COMMONWEALTH OF MASSACHUSETTS

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Jillian M. Riley*
JILLIAN M. RILEY
JOHN S. CRAIG
JULIA JONAS-DAY
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2424
jriley@mass.gov

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
Attorney General of New Jersey

*/s/Lisa Morelli*
LISA MORELLI
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
Telephone: (609) 376-2735
Email: lisa.morelli@law.njoag.gov

FOR THE COMMONWEALTH OF PENNSYLVANIA

MICHELLE A. HENRY
Attorney General

*/s/ Ann R. Johnston*
ANN R. JOHNSTON
Assistant Chief Deputy Attorney General
Office of the Attorney General
Civil Environmental Enforcement Unit
Strawberry Square
14th Floor
Harrisburg, PA 17120
ajohnston@attorneygeneral.gov
717-497-3678

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53702-7857
Telephone: (608) 267-8904
Fax: (608) 267-2223
johnsonkarpg@doj.state.wi.us

FOR THE CITY OF NEW YORK

HON. SYLVIA O. HINDS-RADIX

FOR HARRIS COUNTY, TEXAS

CHRISTIAN MENEFEE
Harris County Attorney

| | |
|---|---|
| Corporation Counsel of the City of New York<br><br>*/s/Christopher Gene King*<br>CHRISTOPHER GENE KING<br>Senior Counsel, Environmental Law Division<br>New York City Law Department<br>100 Church Street<br>New York, NY 10007<br>cking@law.nyc.gov | JONATHAN FOMBONNE<br>First Assistant County Attorney<br>TIFFANY BINGHAM<br>Managing Counsel<br><br>*/s/ Sarah Jane Utley*<br>SARAH JANE UTLEY<br>Environmental Division Director<br>State Bar No. 24042075<br>1019 Congress, 15th Floor.<br>Houston, Texas 77002<br>Telephone: (713) 274-5124<br>Fax: (713) 437-4211<br>Email:<br>sarah.utley@harriscountytx.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing JOINT BRIEFING PROPOSAL with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN