ORAL ARGUMENT NOT YET SCHEDULED
No. 23-1201 (and consolidated cases)

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

State of Wisconsin,

Petitioner,

v.

United States Environmental Protection Agency and Michael S. Regan, Administrator,
United States Environmental Protection Agency,

Respondents.

**On Petition For Judicial Review Of Final Agency Action Of The United States
Environmental Protection Agency, 88 Fed. Reg. 36,654 (June 5, 2023)**

**BRIEF OF RESPONDENT-INTERVENOR MIDWEST OZONE GROUP**

David M. Flannery
Kathy G. Beckett
Keeleigh S. Huffman
Steptoe & Johnson PLLC
Post Office Box 1588
Charleston, WV 25326
(304) 353-8000
Dave.Flannery@steptoe-johnson.com
Kathy.Beckett@steptoe-johnson.com
Keeleigh.Huffman@steptoe-johnson.com

Edward L. Kropp
Steptoe & Johnson PLLC
Post Office Box 36425
Indianapolis, Indiana 46236
(317) 946-9882
Skipp.Kropp@steptoe-johnson.com

*Counsel for Respondent-Intervenor Midwest Ozone Group*

Dated: July 8, 2024

## RULE 28(a)(1) CERTIFICATE

Pursuant to Circuit Rule 28(a)(1), Midwest Ozone Group provides the following:

### A. Parties, Intervenors, and Amici Curiae

These cases involve the following parties:

<u>Petitioners:</u>

- No. 23-1157 (lead case): State of Utah

- No. 23-1181: Kinder Morgan, Inc.

- No. 23-1183: States of Ohio, Indiana, and West Virginia

- No. 23-1190: American Forest & Paper Association

- No. 23-1191: Midwest Ozone Group

- No. 23-1193: Interstate Natural Gas Association of America and American Petroleum Institute

- No. 23-1195: Associated Electric Cooperative, Inc., Ohio Valley Electric Corporation, America's Power, Deseret Generation & Transmission Co-Operative, National Rural Electric Cooperative Association, Portland Cement Association, and Wabash Valley Power Association, Inc.

- No. 23-1199: National Mining Association

- No. 23-1200: American Iron and Steel Institute

- No. 23-1201: State of Wisconsin

- No. 23-1202: Enbridge (U.S.) Inc.

- No. 23-1203: American Fuel & Petrochemical Manufacturers and American Chemistry Council

- No. 23-1205: TransCanada Pipeline USA Ltd.

i

- No. 23-1206: Hybar LLC

- No. 23-1207: United States Steel Corporation

- No. 23-1208: Union Electric Company

- No. 23-1209: State of Nevada

- No. 23-1211: Arkansas League of Good Neighbors

- No. 23-1306, 23-1307: Energy Transfer L.P.

- No. 23-1314: Commonwealth of Kentucky, Energy and Environment Cabinet

- No. 23-1315: Commonwealth of Kentucky

- No. 23-1316: Energy Transfer LP

- No. 23-1317: Buckeye Power, Inc., Ohio Valley Electric Corporation

Respondents:

Respondents are the United States Environmental Protection Agency and Michael S. Regan, Administrator, United States Environmental Protection Agency.

Intervenors for the Petitioners:

- No. 23-1157: City Utilities of Springfield, Missouri

- No. 23-1201: Sierra Club

Intervenors for the Respondents:

- No 23-1157: City of New York; Commonwealth of Massachusetts; Commonwealth of Pennsylvania; District of Columbia; Harris County, Texas; State of Connecticut; State of Delaware; State of Illinois; State of Maryland; State of New Jersey; State of New York; State of Wisconsin; Air Alliance Houston; Appalachian Mountain Club; Center for Biological Diversity; Chesapeake Bay Foundation; Citizens for Pennsylvania's Future; Clean Air Council; Clean Wisconsin; Downwinders at Risk;

Environmental Defense Fund; Louisiana Environmental Action Network; Sierra Club; Southern Utah Wilderness Alliance; Utah Physicians for a Healthy Environment

• No. 23-1201: Midwest Ozone Group

<u>Amici Curiae for Petitioners:</u>

• No. 23-1157: Chamber of Commerce of the United States of America, Energy Infrastructure Council

## **B. Rulings Under Review**

Petitioners challenge a final action taken by the United States Environmental Protection Agency on June 5, 2023, published in the Federal Register at 88 Fed. Reg. 36,654, entitled *"Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards."*

## **C. Related Cases**

Additional cases pending in other U.S. Courts of Appeals challenging the same final action:

• *State of Texas v. EPA*, No. 23-60300 (and consolidated cases) (5th Cir.)

• *State of Arkansas v. EPA*, No. 23-2769 (8th Cir.)

• *State of Missouri v. EPA*, No. 23-2771 (8th Cir.)

• *Energy Transfer LP v. EPA*, No. 23-2773 (8th Cir.)

• *Energy Transfer LP v. EPA*, No. 23-2774 (8th Cir.)

• *Hybar LLC v. EPA*, No. 23-2782 (8th Cir.)

• *Union Electric Co. v. EPA*, No. 23-2786 (8th Cir.)

- *ALLETE v. EPA*, No. 23-2789 (8th Cir.)

- *Nevada Cement Co. LLC v. EPA*, No. 23-1098 (9th Cir.)

- *Tulsa Cement LLC v. EPA*, No. 23-9551 (10th Cir.)

- *PacifiCorp v. EPA*, No. 23-9557 (10th Cir.)

- *State of Oklahoma v. EPA*, No. 23-9561 (10th Cir.)

- *Energy Transfer LP v. EPA*, No. 23-9569 (10th Cir.)

- *Alabama Power Co. v. EPA*, No. 23-12531 (11th Cir.)

## RULE 26.1 DISCLOSURE STATEMENT

The Petitioner makes the following statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26:

**The Midwest Ozone Group** is a 'trade association,' within the meaning of Circuit Rule 26.1(b), as it is a continuing association of organizations and individual entities operated to promote the general interests of its membership on matters related to air emissions and air quality. Midwest Ozone Group has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public, although specific individuals in the membership of Midwest Ozone Group have done so. Midwest Ozone Group has no outstanding shares or debt securities in the hands of the public and has no parent company. No publicly held company has a 10% or greater ownership interest in Midwest Ozone Group.

## TABLE OF CONTENTS

**Page**

**RULE 28(a)(1) CERTIFICATE** ........................................................................... i

**RULE 26.1 DISCLOSURE STATEMENT** ......................................................... ii

**TABLE OF AUTHORITIES** ............................................................................ iv

**GLOSSARY OF ABBREVIATIONS, ACRONYMS, AND TERMS** ................. v

**STATUTES AND REGULATIONS** ................................................................. vi

**SUMMARY OF ARGUMENT** ......................................................................... 1

**ARGUMENT** ..................................................................................................... 2

      I.    As Set Forth In The Four-Step Good Neighbor Provision Process, "Significant Contribution" Is Based On Cost Effective Improvements Of Air Quality In Downwind States ........................................................ 2

      II.   Wisconsin Misunderstands And Misapplies Four-Step Good Neighbor Provision Process ........................................................................................ 4

      III.  Wisconsin Ignores Precedential Decisions Approving Of The Use Of Cost-Effective Improvements Of Air Quality In Downwind States To Determine Significant Contribution Using The Four-Step Good Neighbor Provision Process ...................................................................... 6

**CONCLUSION** ................................................................................................. 10

**CERTIFICATE OF COMPLIANCE** ............................................................... 11

**CERTIFICATE OF SERVICE** ......................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ohio v. EPA*, No. 23A349 (U.S. June 27, 2024)...........................................................3-4, 9

*EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7 (D.C. Cir. 2012) ........................ 6-8

*Maryland v. Envtl. Prot. Agency*, 958 F.3d 1185, 1197 (D.C. Cir. 2020) ...................... 6, 8-9

*Wisconsin v. Envtl. Prot. Agency*, 938 F.3d 303, 320 (D.C. Cir. 2019) ........................... 6, 8-9

*EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584 (2014) ................................ 6-9

*Michigan v. EPA*, 213 F.3d 663, 678 (D.C. Cir. 2000) ................................................. 6, 8-9

**Federal Statutes**

42 U.S.C. §§ 7408 .........................................................................................................2

42 U.S.C. §§ 7409 .........................................................................................................2

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...................................................................................2

**Federal Register Notices**

88 Fed. Reg. 36,654 (June 5, 2023)............................................................................3, 5-6

78 Fed. Reg. 48,208 (August 8, 2011) ..........................................................................7

## GLOSSARY OF ABBREVIATIONS, ACRONYMS, AND TERMS

| | |
|---|---|
| EPA | United States Environmental Protection Agency |
| Good Neighbor Provision | 42 U.S.C. §7410(a)(2)(D)(i)(I) |
| NAAQS | National Ambient Air Quality Standard(s) |

## **STATUTES AND REGULATIONS**

Midwest Ozone Group submits that the applicable statutes, 42 U.S.C. §§ 7407 to 7410, 7413, 7426, 7607, and regulations, 40 C.F.R. § 52.40 et seq., appear in the Joint Opening Brief of the Industry Petitioners filed April 1, 2024.

## SUMMARY OF ARGUMENT

Wisconsin seeks a more stringent version of the *"Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards."* To that end, Wisconsin argues that an upwind state's obligation to eliminate "significant contribution" should not be based on cost-effective improvements in downwind air quality as set forth in the four-step Good Neighbor Provision process. Instead it misinterprets the Good Neighbor Provision, relying on an erroneous application of data, and ignoring decisions approving of the use of cost-effective air quality improvement as the basis for determining "significant contribution.". Accordingly, this Court should deny Wisconsin's Petition challenging the *"Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards."* [*]

---

[*] In this brief, Midwest Ozone Group addresses only Wisconsin's argument for a more stringent rule. Midwest Ozone Group, as an Industry Petitioner, joints other Industry Petitioners in separate briefing to explain why the rule is already too stringent because, in part, it fails to justify control requirements such as dynamic budgeting (over-control), banking, backstop, and its requirements of paper and iron. Additionally, Midwest Ozone Group has previously joined other Industry Petitioners seeking to stay the rule in its entirety given several regional courts have stayed related disapprovals. *See* Emergency Application for Immediate Stay of Final Agency Action Pending Disposition of Petition for Review, *American Forest & Paper Assoc. v. EPA*, No. 23A351 (U.S. filed Oct. 13, 2023); Petitioners' Joint Opposed Motion to Stay Final Rule, *Utah v. EPA*, No. 23-1157 (D.C. Cir. filed Aug. 2, 2023).

## ARGUMENT

EPA uses a long-approved four-step process to eliminate "significant contributions" to nonattainment in downwind states. During that process, EPA accounts for improvements of air quality that are related to cost-effective emission reductions. Wisconsin seeks a more stringent process that does not account for cost-effective air-quality improvement. In making its case, Wisconsin misunderstands and misapplies the process *and* proposes an already-rejected alternative. And for those reasons, this Court should deny the Petition for Review proffered by Wisconsin.

**I.    As Set Forth In The Four-Step Good Neighbor Provision Process, "Significant Contribution" Is Based On Cost Effective Improvements Of Air Quality In Downwind States.**

The Clean Air Act requires that EPA establish national ambient air quality standards ("NAAQS") for pollutants in order to protect public health and welfare. 42 U.S.C. §§ 7408, 7409. Where EPA finds an area is noncompliant with those standards, the Agency may designate that area as being in "nonattainment" with the NAAQS. 42 U.S.C. § 7407(d).

In recognition of the fact that air emissions are transient, causing emissions from "upwind" states to move into "downwind" states, Congress provided EPA with the authority to manage this complication by and through 42 U.S.C. §7410(a)(2)(D)(i)(I), known as the Good Neighbor Provision of the Clean Air Act. By virtue of the Good Neighbor Provision, EPA has the authority to manage air emissions from upwind states

that contribute significantly to nonattainment and maintenance areas within downwind states. Congress did not specifically prescribe the manner by which EPA is required to allocate responsibility between instances where multiple upwind states are found to be significant contributors to nonattainment in downwind states. However, the longstanding and judicially confirmed test for eliminating significant contribution is tied to emission reductions that are achievable through the implementation of the cost-effective controls that result in air-quality improvements. The cost-effective test, of course, not only drives the level of the emission reductions, but also the timing of the imposition of these reductions and the impact on downwind air quality.

The Supreme Court recently explained how this looks in action. *Ohio v. EPA*, No. 23A349, slip op. at 5–6 (U.S. June 27, 2024). The Court began by walking through EPA's process that identifies control measures, predicts the effect of those measures in upwind states, and estimates downwind effects:

> First, the agency identified various emissions-control measures and, using nationwide data, calculated how much each typically costs to reduce a ton of nitrous-oxide emissions. Next, the agency sought to predict how much each upwind State's nitrous-oxide emissions would fall if emissions-producing facilities in the State adopted each measure. In making those predictions, EPA often considered data specific to the emissions-producing facilities in the State, and fed unit-level and state-level values into its calculations. Then, the agency estimated how much, on average, ozone levels would fall in downwind States with the adoption of each measure. In making those estimations, too, EPA calibrated its modeling to each State's features,

> determining the relationship between changes in emissions
> and changes in ozone contributions on a state-by-state basis.

*Id.* at 5 (cleaned up). The Court also outlined how EPA would choose the most cost-

effective measure to improve downwind air quality:

> EPA focused on what it called the 'knee in the curve,' or the
> point at which more expenditures in the upwind States were
> likely to produce very little in the way of additional emissions
> reductions and air quality improvement downwind. EPA
> used this point to select a uniform level of cost, and so a
> uniform package of emissions reduction tools, for upwind
> States to adopt. And EPA performed this analysis on two
> parallel tracks—one for power plants, one for other
> industries.

*Id.* at 6 (cleaned up).

Suffice it to say, as recently as the past few months, the Court has recognized

EPA's longstanding commitment to considering cost-effective improvement in

downwind air quality in relation to determining what is "significant contribution" under

the Good Neighbor Provision. *Id.* at 8, 14, 18.

## II.    Wisconsin Misunderstands And Misapplies Four-Step Good Neighbor Provision Process.

Wisconsin incorrectly notes that elimination of significant contribution is based

on bringing a downwind state into attainment, rather than cost-effective improvement

in downwind air-quality. Despite providing this Court with an overview of EPA's

obligations under the Clean Air Act and the Good Neighbor Provision, and despite

citing case law, it does not mention the crux of the methodology affirmed by various

4

federal courts: cost-effectiveness at Step 3, rather than simply linkage at Step 2, governs. These are missteps that illuminate the faults in Wisconsin's arguments.

*First*, Wisconsin misunderstands the process. According to Wisconsin, Step Two is about the "signification contribution" determination *and* Step Three is used to decide which emissions must be eliminated. *See* Wisc. Br. 12. To the contrary, EPA uses Step Two to determine whether upwind states are linked to downwind nonattainment or maintenance areas. *See* 88 Fed. Reg. at 36,659. It also establishes a "contribution threshold" of 1% of the NAAQS to screen out de minimus impacts. *Id.* Contrary to Wisconsin's claims, Step Two does not concern the "signification contribution" determination. Rather, "signification contribution" only comes into play at Step Three. *Id.* Although the Rule provides that "a state-level threshold of 1 percent of the NAAQS is a reasonably small enough value to identify only the greater-than-de minimis contributors yet is not so large that it unfairly focuses attention for further action only on the largest single or few upwind contributors," whatever figure may quantify as "greater-than-de minimis" is not the same thing as "significant contribution." *See* 88 Fed. Reg. 36,674.

*Second*, Wisconsin then misapplies data at Step Three. At Step Three, a multi-factor test assesses the cost and feasibility of alternative control strategies, the total reductions related to those strategies and the anticipated improvement in air quality in the downwind states. *Id.* Despite that, Wisconsin relies on "linkage" data—which is part

of the Step Two analysis—to support its Step Three analysis. *See* Wisc. Br. 29–31. There is no legal basis for this interpretation. In fact, EPA addressed this specifically in the Rule: "Further, commenters incorrectly associate the EPA's Step 2 contribution threshold with the identification of "significant" emissions (which does not occur until Step 3)." 88 Fed. Reg. 36,716.

Accordingly, this Court should conclude that Wisconsin has failed to appropriately interpret and apply the four-steps to the present facts.

## III.  Wisconsin Ignores Precedential Decisions Approving Of The Use Of Cost-Effective Improvements Of Air Quality In Downwind States To Determine Significant Contribution Using The Four-Step Good Neighbor Provision Process.

Not only does Wisconsin misunderstand and misapply the four-step process, but it also ignores precedent. It believes that eliminating "significant contribution" is about downwind attainment alone, and thus, cost-effectiveness doesn't enter the picture. That belief is, however, contrary to decisions from this Court and the Supreme Court.

This Court has affirmed EPA's consideration of costs and rejected alternative approaches. More than 20 years ago, it determined that EPA properly used a cost-based, multi-factor test to determine whether upwind contributions were "significant contribution" for Good Neighbor Provision purposes, and that decision still stands. *Michigan v. EPA*, 213 F.3d 663, 678(D.C. Cir. 2000); *See EME Homer City Generation LP v. EPA*, 696 F.3d 7, 28 (D.C. Cir. 2012), ("*Homer I*"); *EPA v. EME Homer City Generation*

*LP*, 572 U.S. 489 (2014) ("*Homer II*"); *Wisconsin v. Envtl. Prot. Agency*, 938 F.3d 303, 320 (D.C. Cir. 2019); *Maryland v. Envtl. Prot. Agency*, 958 F.3d 1185, 1197 (D.C. Cir. 2020).

And in the context of a prior approach, the Supreme Court rejected an attempt to displace the cost-effective improvement in downwind air quality test. *See Homer I* and *Homer II*. The *Homer* cases concerned EPA's process to determine the extent to which upwind emissions must be reduced to eliminate "significant contribution" to downwind air quality. In that process, EPA quantified possible emission reductions for upwind contributors at various cost thresholds and then used air quality modeling to show the effect that the upwind emissions reductions would have on downwind states. *See* 76 Fed. Reg. 48,248–49; *see also* 76 Fed. Reg. 48,254 ("Under EPA's two-step approach, only a state that (1) contributes a threshold amount or more to a particular downwind state receptor's air quality problem, and (2) has emission reductions available at the selected cost threshold can be deemed to have responsibility to reduce its emissions to improve air quality at that downwind receptor."). The *Homer II* petitioners challenged, among other things, EPA's use of its cost-effective air-quality improvement methodology. *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7 (D.C. Cir. 2012*), petition for cert. filed*, 134 S. Ct. 1584 (Mar. 29, 2013) (No. 12-1182).

The Supreme Court rejected that challenge. In doing so, the Court acknowledged that EPA is "obligated to require the elimination of only those 'amounts' of pollutants that contribute to the nonattainment of NAAQS in downwind States" and "must decide

how to differentiate among the otherwise like contributions of multiple upwind States."
*Homer II* at 520 (cleaned up). It also determined that allocating emission reductions
based on cost-effectiveness—and the EPA did—was an "efficient and equitable
solution to the allocation problem the Good Neighbor Provision requires the Agency
to address." *Homer II* at 519. The Court decided not only that the provision didn't
require EPA "to disregard costs and consider exclusively each upwind State's physically
proportionate responsibility for each downwind air quality problem," but in rejecting
alternative methodologies, observed that EPA's methodology was "a permissible,
workable, and equitable interpretation of the Good Neighbor Provision." *Id.* at 524.
For those reasons, the Supreme Court reversed this Court's decision that it would be
"inconceivable" that the Good Neighbor Provision authorized EPA to require upwind
contributors to install "every emission control technology EPA deems cost-effective."
*Homer I* at 28.

Since the *Homer* cases and *Michigan*, this Court has twice reaffirmed that "EPA
can take into account, among other things, the magnitude of upwind States
contributions and the cost associated with eliminating them." *Wisconsin v. EPA*, 938
F.3d 303, 320 (D.C. Cir. 2019) (cleaned up); *see also Maryland v. EPA*, 958 F.3d 1185,
1197 (D.C. Cir. 2020) ("Any evaluation under the Good Neighbor Provision requires
time-intensive research and analysis assessing air quality problems in the petitioning
downwind state, the cause of those problems in upwind states, and the cost-

effectiveness of possible solutions." (cleaned up)). And that remains true even though the two-step approach extant during *Homer II* has evolved into the four-step process. *See, e.g., Maryland*, 958 F.3d at 1188.

EPA may, beyond question, consider cost-effectiveness when determining emissions elimination. That was true in *Michigan* and *Homer II*. It has remained true through *Wisconsin* and *Maryland*. Despite those authorities, Wisconsin urges this Court make a more stringent Rule, one that doesn't consider cost-effective improvements in downstate air-quality when seeking to determine what must be done to eliminate "significant contribution." This is evident through Wisconsin's assertion that EPA "under-controls" upwind states by not requiring upwind states to fully eliminate their "significant contribution" to Wisconsin in the Rule. See Wisc. Br. 27-29.

However, it is well established that "Upwind States would be obliged to eliminate all and only emissions" that resulted in one or more percent of a NAAQS in a downwind state *and* could be cost-effectively eliminated, as determined by EPA. *See Homer II* at 502-03; *see also, Ohio v. EPA*. Wisconsin requests that this Court ignore the "and" here as well as the precedent that solidifies its importance to the Good Neighbor Provision program holistically. That would be an improper and inappropriate application of law. As such, This Court should not part ways with *Homer II* and its progeny, and it should deny Wisconsin's Petition.

## <u>CONCLUSION</u>

Wisconsin misinterprets the Good Neighbor Provision and ignores precedents from this Court and the Supreme Court. Accordingly, this Court should deny Wisconsin's Petition challenging the *Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards."*

David M. Flannery

David M. Flannery
Kathy G. Beckett
Keeleigh S. Huffman
Steptoe & Johnson PLLC
707 Virginia Street, East
Post Office Box 1588
Charleston, WV 25326
(304) 353-8000
Dave.Flannery@steptoe-johnson.com
Kathy.Beckett@steptoe-johnson.com
Keeleigh.Huffman@steptoe-johnson.com

Edward L. Kropp
Steptoe & Johnson PLLC
Post Office Box 36425
Indianapolis, Indiana 46236
(317) 946-9882
Skipp.Kropp@steptoe-johnson.com

*Counsel for Respondent-Intervenor Midwest Ozone Group*

Dated: July 8, 2024

**CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), (f) and (g) and Circuit Rule 32(e)(1), because it contains 2084 words, excluding exempted parts, according to the count of Microsoft Word 2010. I further certify that the foregoing brief also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared using Microsoft Word 2010 in 14-point proportionally spaced Garamond typeface.

David M. Flannery

David M. Flannery
Steptoe & Johnson PLLC
707 Virginia Street, East
Post Office Box 1588
Charleston, West Virginia 25326
(304) 353-8000
Dave.Flannery@steptoe-johnson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July 2024, the foregoing Intervenor's Brief was served electronically on all registered counsel through the Court's CM/ECF system.

David M. Flannery

David M. Flannery
Steptoe & Johnson PLLC
707 Virginia Street, East
Post Office Box 1588
Charleston, West Virginia 25326
(304) 353-8000
Dave.Flannery@steptoe-johnson.com