## <u>ORAL ARGUMENT NOT YET SCHEDULED</u>

No. 23-1157 and consolidated cases

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

STATE OF UTAH,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator, U.S. EPA,

*Respondents*.

---

**PROOF REPLY BRIEF OF
PETITIONER-INTERVENOR SIERRA CLUB**

Zachary M. Fabish
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(650) 388-8446
zachary.fabish@sierraclub.org

Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
(415) 977-5560
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

Neil Gormley
Kathleen Riley
Seth L. Johnson
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 797-5239
(202) 745-5227
(202) 797-5245
ngormley@earthjustice.org
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club*

Filed: August 9, 2024

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT.................................................................................1

ARGUMENT ...................................................................................................4

    I.  THE RULE UNLAWFULLY AND ARBITRARILY UNDERCONTROLS POLLUTION FROM STATES UPWIND OF WISCONSIN. ......................4

        A.  Whether EPA's approach to undercontrol violates the Act is not a "new issue" because Wisconsin and EPA both raise it....................................6

        B.  EPA faces a statutory mandate to avoid undercontrol of cross-state pollution................................................................................................7

        C.  EPA unreasonably and arbitrarily failed to heed the statutory mandate to avoid undercontrol..................................................................14

CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*EPA v. EME Homer City Generation*,
    572 U.S. 489 (2014) ........................................................2, 7, 8, 9, 10, 11, 12, 13

*Fox v. Gov't of DC*,
    794 F.3d 25 (D.C. Cir. 2015) ....................................................................15, 16

*Illinois Bell Tel. Co. v. FCC*,
    911 F.2d 776 (D.C. Cir. 1990) ............................................................................6

*Maryland v. EPA*,
    958 F.3d 1185 (D.C. Cir. 2020) .......................................................................12

*Michigan v. EPA*,
    213 F.3d 663 (D.C. Cir. 2000) .........................................................................12

*North Carolina v. EPA*,
    531 F.3d 896 (D.C. Cir. 2008) .........................................................................14

*NRDC v. EPA*,
    777 F.3d 456 (D.C. Cir. 2014) ...........................................................................9

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) .........................................................................15

*Train v. NRDC*,
    421 U.S. 60 (1975) .......................................................................................9, 10

*Whitman v. Am. Trucking Associations*,
    531 U.S. 457 (2001) .........................................................................................13

*Wisconsin v. EPA*,
    938 F.3d 303 (D.C. Cir. 2019) ..............................................................10, 11, 12

**Statutes**

42 U.S.C. § 7410(a)(2)(D)............................................................1, 4, 7, 9, 10, 13

42 U.S.C. §7511(a).............................................................................................9

**Other Authorities**

88 FR 36654 (June 5, 2023) .............................................................................15, 16

## SUMMARY OF ARGUMENT

EPA's brief confirms that the Good Neighbor Rule falls short of the pollution reductions required by the Act. EPA does not dispute that the Rule allows states upwind of Wisconsin to continue sending pollution to downwind areas with unhealthy air quality (even after full implementation in 2026), or that those states' contributions will exceed EPA's threshold of 1% of the health-based national ozone standard. This contravenes the Good Neighbor Provision's mandate to "prohibit[]" pollution that "will contribute significantly to nonattainment" or "interfere with maintenance" of the ozone standard in "any other state." 42 U.S.C. § 7410(a)(2)(D)(i)(I). It also contravenes EPA's obligation, which this Court has repeatedly enforced, to implement the Good Neighbor Provision consistently with the deadlines for downwind areas to attain the ozone standard.

EPA seeks to justify its choice to undercontrol states upwind of Wisconsin by claiming authority to define "contribute significantly" in terms of the cost of controlling pollution. So long as the Rule requires the use of controls that maximize cost effectiveness, EPA claims, any remaining pollution is insignificant by definition and any undercontrol challenge must fail. But Sierra Club addressed that argument directly in its opening brief, explaining that this interpretation of the Good Neighbor Provision runs headlong into the limits that the Supreme Court

identified in *EPA v. EME Homer City Generation*, 572 U.S. 489 (2014). Nothing EPA says in its response overcomes Sierra Club's argument.

First, EPA cannot insulate its interpretation of "contribute significantly" from review by claiming that Sierra Club's challenge to the interpretation is a "new issue" other parties do not raise. Wisconsin contests EPA's interpretation too. And EPA itself relies on its interpretation as its defense to Wisconsin and Sierra Club's undercontrol challenge. For both reasons, EPA cannot prevent Sierra Club from contesting the interpretation.

Second, on the merits, EPA has no answer to *EME Homer*. The Supreme Court has made clear that EPA must prohibit enough cross-state pollution to enable downwind attainment. EPA must do so in a way that balances overcontrol and undercontrol, but it cannot devise a system that overlooks its statutory duty to prevent undercontrol. By maximizing cost effectiveness—rather than maximizing downwind attainment and then using cost to allocate the necessary reductions—EPA's interpretation flunks that test. Further, there is no way to reconcile EPA's interpretation, which allows cross-state pollution that prevents attainment to persist, with the obligation to implement the Provision consistently with the attainment deadlines that are at the heart of the Clean Air Act.

EPA's attempts to salvage its interpretation all fail. EPA emphasizes the need for the term "significantly" to play some role. But under Sierra Club's reading, it does: it excludes de minimis contributions. In any event, EPA has no sound explanation for how "significantly" could do the work EPA requires when it does not even appear in the "interfere with maintenance" prong. EPA also holds out the discretion it has under the Provision, but it has no discretion to ignore its statutory duty to minimize undercontrol. Any discretion EPA has to consider costs in allocating the reductions needed for downwind attainment cannot be leveraged to forgive the failure to enable downwind attainment in the first place. And contrary to EPA's suggestion, this Court's cases do not authorize EPA to permit undercontrol in pursuit of cost savings.

Finally, EPA has no answer to Sierra Club's argument that EPA failed in the record to reconcile ongoing contributions to nonattainment and interference with maintenance with statutory requirements. Even if EPA's interpretation of "contribute significantly" were lawful, the failure to require greater pollution reductions would still be unreasonable and arbitrary on this record.

## ARGUMENT

## I.   THE RULE UNLAWFULLY AND ARBITRARILY UNDERCONTROLS POLLUTION FROM STATES UPWIND OF WISCONSIN.

As Sierra Club's opening brief explains, the Good Neighbor Rule violates the Clean Air Act in a straightforward way. The statute requires EPA to "prohibit[]" emissions of any pollutant in "amounts which will . . . contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D); *see* Sierra Club Br. 31-34. But the record here makes clear that the Rule will permit states upwind of Wisconsin to continue to contribute significantly to nonattainment and interfere with maintenance of the ozone standard in Wisconsin and multiple other downwind states. *See* Sierra Club Br. 30-31. As a result, the Rule fails the Clean Air Act's requirements. *See id.* at 31-34.[1]

The factual bases for Sierra Club's argument are not in dispute. EPA does not contest that, when fully implemented, the Rule will allow states upwind of Wisconsin to continue interfering with maintenance of the ozone standard in Wisconsin and other states. *Id.* at 30-31. Nor does EPA contest that its ozone

---

[1] No party to this petition contests Sierra Club's argument that the proper remedy, if this petition is granted, is remand of the Rule without vacatur. Sierra Club Br. 37-39.

projections are too optimistic and that the polluted downwind areas are, in fact, likely to suffer nonattainment. *Id.*

EPA instead resists Sierra Club's challenge on other grounds, one procedural and one legal. Neither works. Its procedural argument is that Sierra Club's argument fails because it is a "new issue[]" that Wisconsin did not raise. EPA Br. 140 n.24. But Sierra Club's argument is the same as Wisconsin's: The Rule undercontrols upwind-state pollution in violation of the Act. *See infra* § I.A.

EPA's legal argument is that its Rule is valid because "the Good Neighbor obligation" does not require "upwind sources . . . to reduce *all* of their emissions that contribute to downwind nonattainment," but just "their 'significantly' contributing emissions." EPA Br. 137-39. In EPA's view, it has discretion to count as "significant" only pollution that can be eliminated with control strategies selected to "maximize cost effectiveness." *Id.* at 9; *accord id.* at 138-39. But that statutory interpretation conflicts with the Supreme Court's authoritative interpretation of the Act. *See infra* § I.B. EPA's interpretation would also authorize large upwind-state contributions to ongoing downwind air quality violations, contrary to the Act's central command of timely attainment. *Id.* In addition, EPA unreasonably and arbitrarily failed to explain—in the Rule and again in its brief— how its approach is consistent with *any* interpretation of the Good Neighbor Provision's requirements. *See infra* § I.C.

### A. Whether EPA's approach to undercontrol violates the Act is not a "new issue" because Wisconsin and EPA both raise it.

Seeking to sideline the issue of whether its approach to undercontrol is consistent with the Act, EPA labels Sierra Club's argument as seeking to "preclude EPA from using its longstanding methodology for determining 'significant' emissions" and contends that is a "new issue" that only Sierra Club raised. Br. 140 n.24. But Sierra Club actually argues that the Rule falls short of EPA's statutory obligation to avoid undercontrol and objects to EPA's "methodology" because its use here conflicts with that obligation. Sierra Club Br. 31-32. That parallels Wisconsin's argument, as Wisconsin also contends the Rule must be revisited because EPA undercontrolled upwind-state pollution in violation of the Act. Wisconsin Br. 27, 38; *see also* Wisconsin Reply Br. 10-15.

Indeed, EPA itself responds to Wisconsin's undercontrol claim by pointing to its interpretation of "significant" and its methodology for defining significant emissions. EPA Br. 137-41. Having done so, it can hardly complain that Sierra Club (like Wisconsin, Reply Br. 10-15) contests the lawfulness of EPA's interpretation and methodology. Sierra Club's arguments for why Wisconsin's statutory argument is correct, and EPA's is wrong, properly "join issue . . . on a matter that has been brought before the court by another party." *Illinois Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990).

**B. EPA faces a statutory mandate to avoid undercontrol of cross-state pollution.**

The Good Neighbor Provision's clear mandate to EPA is to "prohibit[]" emissions of any air pollutant in "amounts which will . . . contribute significantly to nonattainment," 42 U.S.C. § 7410(a)(2)(D), or "interfere with maintenance," *id.* EPA contends the Clean Air Act grants it authority to ignore the ongoing cross-state pollution by claiming that pollution is not "significant," on the theory that pollution is not significant unless the technologies that control it "maximize[] cost effectiveness." EPA Br. 9; *accord id.* at 138-39.

EPA's gloss on "contribute significantly" conflicts with the Supreme Court's decision in *EME Homer*. There, the Court confirmed that the Good Neighbor Provision, including the phrase "contribute significantly," requires EPA to prohibit upwind-state pollution that prevents attainment or interferes with maintenance. Faced with the same statutory text EPA relies on here, the Court explained that "EPA's task" "is to reduce upwind pollution" in "'amounts' that push a downwind State's pollution concentrations above the relevant [air quality standard]." *EME Homer*, 572 U.S. at 514 (quoting 42 U.S.C. § 7410(a)(2)(D)(i)). In other words, the statute requires EPA to reduce upwind-state pollution by "just enough" to enable downwind states to achieve legally mandated air quality levels. *Id.* at 515 n.18.

The Court's instructions to EPA about how to balance the competing risks of overcontrol (reducing pollution by more than needed to enable attainment) and

7

undercontrol (failing to reduce pollution enough to enable attainment) confirm that EPA must aim for eliminating the upwind pollution that prevents downwind attainment. *EME Homer*, 572 U.S. at 521-23. As the Court explained, the Good Neighbor Provision imposes a "statutory obligation" to "maximize achievement of attainment downwind" and thus "requires EPA to seek . . . attainment" "in *every* downwind state." *Id.* at 523. That "statutory obligation" to "avoid 'under-control'" remains even though EPA "cannot require a State to reduce its output of pollution by more than is necessary" to achieve that end. *Id.* at 521-23. EPA is obligated, therefore, to strike a balance between over- and undercontrol, but that balancing must reflect that EPA "maximize[d] the achievement of attainment downwind." *Id.* at 523.[2]

EPA's interpretation of "significantly" flouts the Supreme Court's instructions. It "maximizes" cost effectiveness instead of maximizing the Provision's goal of attainment. EPA Br. 9; *accord id.* at 138-39. And it does so even though elevating cost savings in this way allows upwind states to continue preventing attainment downwind.

---

[2] The Court also emphasized the conditions under which an upwind State might complain: where it "concludes it has been forced to regulate emissions . . . beyond the point *necessary to bring all downwind states into attainment*." *Id.* at 523-24 (emphasis added). It does not say that upwind states could challenge the plan where it has been forced to regulate emissions beyond the point where cost-effectiveness is maximized.

Indeed, the undisputed record in this case shows how EPA's interpretation—which is focused on maximizing cost-effectiveness—allows EPA to miss the target that the Provision and the Supreme Court said it must hit. EPA dismisses Wisconsin and Sierra Club's evidence of EPA's "overpredicting air quality improvement" as irrelevant because changes in air quality do not change what matters under EPA's interpretation—"what control measures would be cost-effective in upwind states." EPA Br. 141-42. This response turns EPA's Good Neighbor obligations on their head: rather than focus on reducing upwind-state pollution by "just enough" to enable "satisfactory air quality" downwind, as *EME Homer* demands, 572 U.S. at 515 n.18, EPA claims it can select relatively cheap pollution controls, ensure they do not *overcontrol*, and call it a day. *Accord* EPA Br. 9.

An approach that makes continuing nonattainment problems irrelevant cannot possibly be squared with a statute that not only requires attainment, but requires attainment by fixed deadlines. 42 U.S.C. § 7410(a)(2)(D), 7511(a); Sierra Club Br. 32. Those attainment deadlines are the "heart" of the Act, *Train v. NRDC*, 421 U.S. 60, 66-67 (1975), and "leave no room for claims of technological or economic infeasibility." *NRDC v. EPA*, 777 F.3d 456, 468 (D.C. Cir. 2014) (citation omitted). That EPA's approach undermines timely attainment—the Clean Air Act's "central object"—is another reason the Court should reject it. *See*

9

*Wisconsin v. EPA*, 938 F.3d 303, 316 (D.C. Cir. 2019) (citing *Train*, 421 U.S. at 64); Sierra Club Br. 32.

Nothing in *EME Homer* or this Court's cases permits EPA to redefine large pollution contributions to downwind air quality problems as "insignificant." EPA contends otherwise, claiming that the Supreme Court and this Court have upheld its "discretion" to "'defin[e]' significant emissions" and its cost-based "methodology for giving effect to the phrase 'significantly contribute.'" EPA Br. 138-39. EPA is doubly wrong.

First, EPA's authority to consider cost does not give "effect" to "the phrase significantly contribute." *EME Homer* locates EPA's authority to consider costs not in the term "significantly" but instead in "Congress' silence" regarding how EPA should *allocate* needed pollution reductions among overlapping upwind contributors. 572 U.S. at 515, 518-20; *accord id.* at 525 (Scalia, J., dissenting) (explaining that EPA advanced the argument that the statutory term "significantly" encompasses cost of compliance, but the majority did not adopt it). It would be passing strange for "significantly" to do that work where that term does not even appear in the interference-with-maintenance prong. 42 U.S.C. § 7410(a)(2)(D). EPA's authority for considering costs—which it concedes it does the same way under both prongs, EPA Br. 139 n.23—would have to come from somewhere else.

Second, EPA misunderstands the scope of its discretion. EPA's discretion to consider costs can come into play only *after* it has selected an emissions reduction target consistent with downwind attainment. Once EPA selects that target, it can use cost to determine which pollution reductions to prioritize and to allocate these reductions among overlapping upwind contributors. *EME Homer*, 572 U.S. at 518-20. Its discretion to consider costs does not permit it to define away emissions that contribute to nonattainment in the first place.

The distinction is important. Allowing EPA discretion to consider cost in deciding how to *allocate* needed reductions leaves intact the obligation to reduce pollution enough to enable downwind attainment, while empowering EPA to pursue that goal efficiently and equitably. EPA's interpretation—where upwind state pollution is not "significant" unless identified controls "maximize cost effectiveness," EPA Br. 9—could be used to allow even large contributions to downwind nonattainment to persist, defeating not only the core requirement of the Good Neighbor Provision, but the "central object" of the Clean Air Act itself: timely attainment of air quality standards. *Wisconsin*, 938 F.3d at 316.

None of the cases EPA and Midwest Ozone Group invoke alter this conclusion. *Wisconsin*, for example, acknowledges that the Good Neighbor Provision gives EPA "a measure of latitude" to determine significance, but *Wisconsin* did not suggest that latitude authorizes EPA to abandon the target of

downwind attainment. *Id.* at 320. Indeed, *Wisconsin* emphasized that the Provision was enacted "to enable downwind States to keep their levels of air pollution in check," and rejected the rule at issue as inconsistent with the Act's attainment deadlines. *Id.* at 316. And while *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000), approved EPA's use of cost to determine what emissions upwind states must eliminate, that decision predates *EME Homer*, where the Supreme Court found this Court had not "accurately construed the limits the [Act] places on EPA's authority." 572 U.S. at 506. In so holding, the Supreme Court rejected the view that deliberate undercontrol is acceptable, and there is no decision from this Court since holding otherwise.[3]

EPA makes two additional arguments in support of its reading of "contribute significantly," and this Court should reject both. First, it contends that this qualifier must exclude some emissions from consideration or else "significantly" would be "read . . . out of the statute." EPA Br. 137-38. Here again, *EME Homer* supplies the answer: "[S]ignifican[ce]" still does work where it excludes de minimis levels of contribution (in that case, contributions below 1% of the standard) to a downwind state's nonattainment. 572 U.S. at 521-23. It would make little sense, by

---

[3] EPA also cites language (at 139) from *Maryland v. EPA*, but that language appeared in a section of the opinion entitled "Regulatory History" that simply recited EPA's methodology, without opining on its legality. 958 F.3d 1185, 1192 (D.C. Cir. 2020).

contrast, for Congress to silently imply what EPA contends is the central framework for its decision-making—maximizing cost-effectiveness—in that term. Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001). Indeed, as noted above (at 10), that term does not modify the interference with maintenance prong. Without "significantly," EPA lacks *any* textual basis—even an implausible one—for allowing pollution to interfere with maintenance on cost-effectiveness grounds. 42 U.S.C. § 7410(a)(2)(D).

Second, EPA contends *EME Homer* cannot be understood to prohibit undercontrol because "the Supreme Court in *EME Homer* considered an EPA rule" that allowed continued downwind nonattainment. EPA Br. 140 n.24. But the Supreme Court was confronted with the question of what the statute requires; whether the rule *in fact* resulted in undercontrol or overcontrol was left to be worked out through "particularized, as-applied challenge[s]." 572 U.S. at 524.

That leaves EPA's final fallback argument that, even if *EME Homer* supports an "undercontrol argument," it fails if a challenger does not "demonstrate[] any flaws in EPA's technical assessments" or "identify any technology EPA neglected to consider." EPA Br. 140-41. EPA has disclaimed any argument that is it technically impossible to provide for additional reductions, EPA Br. 138 n.22, so this argument must operate from the same flawed premise just

13

addressed—that there is no undercontrol if the control strategies for the remaining emissions would not maximize cost effectiveness. But again, undercontrol exists under the statute where EPA fails to require the pollution reductions necessary for downwind attainment and maintenance, *see supra* 7-11. And so, Sierra Club (and Wisconsin) made the only showing required to support an undercontrol argument when they demonstrated that the fully implemented Rule allows states upwind of Wisconsin to continue contributing pollution above EPA's 1% threshold to downwind areas with ongoing attainment and maintenance problems. Sierra Club Br. 30-31.

## C. EPA unreasonably and arbitrarily failed to heed the statutory mandate to avoid undercontrol.

EPA does not respond to Sierra Club's related argument (at 34-36) that the agency unreasonably and arbitrarily failed to address undercontrol in the record. Though in its brief EPA argues the Act is satisfied so long as EPA selects control technologies based on cost, in the record EPA failed to provide that (incorrect) explanation. EPA said nothing about undercontrol and failed to explain how allowing upwind pollution that prevents downwind attainment and interferes with downwind maintenance "comports with the statute." Sierra Club Br. 35-36; *North Carolina v. EPA*, 531 F.3d 896, 909 (D.C. Cir. 2008). Instead, EPA pointed irrationally to its overcontrol analysis, without providing any account of why the conclusion that the rule does not *overcontrol* would show that the rule does not

*undercontrol*. Sierra Club Br. 36; 88 FR 36654, 36750 (June 5, 2023) (overcontrol analysis relying on unabated contributions above 1% to nonattainment and maintenance areas after full implementation). EPA thus failed to respond adequately to comments objecting to undercontrol, "demonstrat[ing] that [EPA's] decision was not based on a consideration of the relevant factors." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012).

The closest EPA came to a record explanation of why continued upwind-state contributions to nonattainment and maintenance areas after 2026 are lawful was the conclusory statement that "all possible emissions reductions" had been required "in all cases." Sierra Club Br. 25-26, 36. But EPA abandons that claim in its brief and defends only the limited claim that certain controls cannot be installed by 2024. EPA Br. 138 n.22, 144-45. *See Fox v. Gov't of DC*, 794 F.3d 25, 29 (D.C. Cir. 2015) (an argument not briefed is forfeited).

EPA also never addressed whether additional pollution reductions would meet the significance test EPA advances in its brief (at 9, 138-39). Commenters pointed out a wide range of available pollution reductions—including but not limited to reductions in volatile organic compound (VOC) pollution and mobile-source pollution, Sierra Club Br. 14; Wisconsin Br. 41-55; EPA-HQ-OAR-2021-0668-0758 64, 154-59, JA___—and EPA rejected them without ever claiming those reductions are not significant, either in terms of magnitude or under the

interpretation focused on cost of controls. *E.g.*, 88 FR 36720 (mobile sources), JA___; *id.* at 36671, JA___ (VOCs); Response to Comments 374-76 (buildings and other pollution sources not evaluated), JA___-__. Even now, EPA still does not advance any claim that VOC and mobile-source pollution is not significant, only vague and statutorily irrelevant claims that addressing them is "unnecessary" or not "appropriate." EPA Br. 149-59. EPA has therefore forfeited the argument that this pollution is not significant. *See Fox*, 794 F.3d at 29. And EPA's complete failure to reconcile the treatment of VOC and mobile-source pollution with statutory requirements—in the record or in its brief—confirms the Rule's unlawfulness.

## CONCLUSION

For the foregoing reasons, the Court should remand the Good Neighbor Rule to EPA, without vacatur, with instructions to promulgate expeditiously a revised rule that achieves the pollution reductions required by the Act.

Dated:     August 9, 2024                          Respectfully submitted,

*/s/ Zachary M. Fabish*                            */s/ Neil Gormley*
Zachary M. Fabish                                  Neil Gormley
Sierra Club                                        Kathleen L. Riley
50 F Street NW, 8th Floor                          Seth L. Johnson
Washington, DC 20001                               Earthjustice
(650) 388-8446                                     1001 G Street NW, Suite 1000
zachary.fabish@sierraclub.org                      Washington, DC 20001
                                                   (202) 797-5239
Joshua D. Smith                                    (202) 745-5227
Sierra Club                                        (202) 797-5245
2101 Webster Street, Suite 1300                    ngormley@earthjustice.org
Oakland, CA 94612                                  kriley@earthjustice.org
(415) 977-5560                                     sjohnson@earthjustice.org
(415) 977-5704
joshua.smith@sierraclub.org                        *Counsel for Sierra Club*

*Counsel for Sierra Club*

17

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), D.C. Circuit Rule 32(e)(2)(C), and the Court's December 4, 2023 and January 4, 2024 Orders establishing the briefing format, counsel hereby certifies that the foregoing Proof Reply Brief of Petitioner-Intervenor Sierra Club contains 3,482 words, as counted by counsel's word processing system, and thus complies with the limit of 3,640 words. This document further complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: August 9, 2024

*/s/ Neil Gormley*
Neil Gormley