ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| STATE OF UTAH, et al., | ) |
| Petitioners, | ) |
| v. | ) No. 23-1157, and |
|  | ) consolidated cases |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) |
| Respondents | ) |

**REPLY IN SUPPORT OF MOTION FOR
PARTIAL VOLUNTARY REMAND**

On August 5th, Respondent EPA moved this Court for partial voluntary remand of the final rule known as the Good Neighbor Plan, 88 Fed. Reg. 36654 (June 5, 2023) ("Rule"). ECF 2068299. EPA explained that while the Agency believes that the Rule was reasonable when promulgated, the Supreme Court subsequently noted a "likely" procedural flaw: that EPA had likely inadequately responded to comments in the record related to the Rule's severability. Partial voluntary remand would allow EPA to address the identified comments. Mot., ECF 2068299.

Petitioners oppose this relief on the grounds that "reversal" is "the only appropriate remedy" for this possible error, Resp., ECF 2070323 at 2, and that

1

EPA's request is "borderline frivolous" and prejudicial, *id.* at 10-15. But this Court's equitable powers extend to granting requests for voluntary remand, including without vacatur. Neither the Supreme Court's stay decision nor the Clean Air Act's judicial review provisions restrain those powers; nor do Petitioners grapple with the fact that remand would generate a new agency action. As remand would nip in the bud a potential procedural issue in this case, EPA's motion will prevent needless and duplicative judicial process that could only serve to delay reductions in harmful pollution affecting downwind states. And with the Rule's enforcement stayed pending judicial review, Petitioners will not be prejudiced.

**A. Granting the motion for partial voluntary remand is within this Court's powers.**

This Court has long reserved to itself "broad discretion" to grant agencies' motions for remand, and "generally grant[s]" those motions where agencies intend on remand to "cure their own mistakes." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) ("*USWAG*") (citing *Limnia, Inc. v. Department of Energy*, 857 F.3d 379, 381, 386 (D.C. Cir. 2017), and *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). That authority plainly encompasses EPA's requested partial remand here.

Petitioners charge in response that the Supreme Court "closed th[e] door" on that authority, Resp. 6, relying on a footnote in the Supreme Court stay order stating that the Clean Air Act's judicial review provisions prevent courts "from

2

consulting explanations and information offered after [a] rule's promulgation." Resp. 12. But the Act's review provisions do not bear on EPA's motion. EPA is not proposing that this Court reach merits determinations based on information beyond the designated administrative record. EPA is requesting a partial remand so that it may address the likely procedural error identified by the Supreme Court and issue a revised rationale concerning the Rule's severability that responds to timely filed comments – resulting in a *new* final agency action on that issue, with a corresponding administrative record, that can be reviewed by this Court consistent with the Clean Air Act. *See* 42 U.S.C. § 7607(d)(6)(C) and (d)(7)(A).

Whether the Court proceeds with the remainder of Petitioners' challenges to the Rule now or holds those challenges in abeyance until the remand is complete, the nature of the Court's review will be the same: the Court will be able to review Petitioners' challenges – save those presented in Section I of both briefs – on the original, complete administrative record applicable to those challenges. And it will be able to review any remaining, substantive concerns with the Rule's severability discussion on the basis of EPA's revised rationale issued on remand. *See* Mot. 7 n.4 (identifying similar challenges where partial voluntary remand was granted). As such, granting EPA's motion would not conflict with the Act's judicial review provisions.

Nor would granting a request for voluntary remand violate the Act's language on remedies. *See* Resp. 9. First, although Petitioners assert that EPA's request for a partial voluntary remand is "tantamount to a request for judgment," Resp. 9, the postures are distinct: agencies may seek voluntary remand without confessing error. *Clean Wisconsin v. EPA*, 964 F.3d 1145, 1175 (D.C. Cir. 2020). Petitioners do not establish in the first instance that the potential scope of remedies after judgment bears on this Court's consideration of voluntary remand before judgment.

In any case, Petitioners are incorrect that "[a]ny remedy short of [vacatur]" would violate the Clean Air Act. Resp. 9. The Act simply does not say that. It states that courts "*may* reverse any [EPA] action found to be" unlawful (the language partially quoted by the Supreme Court). 42 U.S.C. § 7607(d)(9) (emphasis added). The Act also explicitly precludes vacatur for certain types of errors, for example stating that courts "may invalidate [a] rule" on the basis of procedural errors "only if" certain conditions are met. *Id.* § 7607(d)(8); *see also Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 947, 950 (D.C. Cir. 2004); *Sierra Club v. EPA*, 769 F.2d 796, 806 (D.C. Cir. 1985) (explaining that remand so that the agency may "provide us with its rationale" is a "purely procedural victory").

Nor is there any evidence the Supreme Court intended – in a footnote in a stay opinion, no less – to announce significant new constraints on the power of administrative agencies to correct their own mistakes or the power of the judiciary to consider a broader array of remedies for agency errors. Justice Kavanaugh (who joined the stay opinion here) just a week later highlighted courts' practice of remanding without vacatur "when a court rules that an agency must provide additional explanation" for its action. *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 144 S. Ct. 2440, 2466 n.6 (2024) (Kavanaugh, J., concurring). Although noting "some debate" over this widespread practice, *id.*, he did not suggest that the stay order in this case had declared it unlawful, or even called the practice into doubt.[1] *See also Michigan v. EPA*, 579 U.S. 903 (2016) (denying a petition for certiorari arguing that remand without vacatur was beyond this Court's authority under the Clean Air Act).

As the Supreme Court has explained, "we will not construe a statute to displace courts' traditional equitable authority absent the clearest command." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013); *see also Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71–72 (D.C. Cir. 2022). Clean Air Act text stating

---

[1] Notably, that "debate" concerns the Administrative Procedure Act's use of the phrase "shall … set aside agency action." *See Checkosky v. SEC*, 23 F.3d 452, 491 (1994) (opinion of Randolph, J.). There is no room for debate here, where the Clean Air Act's use of "may" expressly preserves courts' equitable discretion.

5

that courts "may reverse" unlawful actions clearly does *not* divest courts of their traditional equitable powers, including the power to consider remedies other than vacatur. *Cf. Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). This Court has, of course, long exercised that authority under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993).

Petitioners claim that *Allied-Signal* would not apply to this case, but present no argument except that the Supreme Court's use of the word "reversal" transforms the Act's "may" into a mandate and precludes remand without vacatur. As discussed, Petitioners are wrong that the Act defines vacatur as the "sole remedial avenue"; "*may* reverse" means what it says. And the consequence of Petitioners' argument here – requiring an entirely new notice-and-comment rulemaking for every rulemaking error, including failure to respond to a single comment – would be an extraordinary departure from both this Court's precedents and its foundational equitable powers. There is thus no basis for this Court to deviate here from its longstanding "prefer[ence]" that "agencies … cure their own mistakes" through voluntary remand "rather than wasting the courts' and the

6

parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Ethyl Corp.*, 989 F.2d at 524.[2]

### B. Granting EPA's request for partial voluntary remand is in the interest of the Court and the parties.

Granting partial voluntary remand in this instance is appropriate. Under this Court's precedents, EPA's stated intention to modify a portion of the existing rationale for the Rule by responding to unaddressed comments is "generally" sufficient to secure partial remand. *See USWAG*, 901 F.3d at 436 (citing *Limnia*). While "intervening events" like "a new legal decision" are not required to seek a voluntary remand, *Clean Wisconsin*, 964 F.3d at 1175, EPA's request comes after an exceedingly rare preliminary order from the Supreme Court specifically identifying a likely procedural flaw in the Rule's rationale – and one that EPA has the ability to quickly cure without disturbing the remainder of this case. These circumstances amplify EPA's basis for seeking voluntary remand. To be sure, the United States believes that the Supreme Court's conclusion (upon limited review) was incorrect for the reasons provided in EPA's brief and in Justice Barrett's dissent. But as this Court might ultimately agree with the Supreme Court's

---

[2] Nor can Petitioners reasonably claim that the grant of a stay is itself a guarantee of subsequent vacatur. *See* Resp. 9. Indeed, both EPA's 1998 NOX SIP Call and 2011 Cross-State Air Pollution Rule were ultimately implemented despite initial stay orders, and notwithstanding that some elements of each rule were remanded without vacatur.

7

preliminary view, remand to address the potentially overlooked comments now will save the parties and the Court from a far more prolonged process, whereby the same potential flaw must be corrected months or years from now – *after* argument, decision, and perhaps appeal, with all the harms to public health from delay – rather than at this relatively early juncture.

As against its general preference for voluntary remand, the Court weighs three additional factors: prejudice, frivolousness, and bad faith. *USWAG*, 901 F.3d at 436. But Petitioners fail to establish they are present here.

As to prejudice, enforcement of the Rule is presently stayed,[3] so this limited remand will not affect Petitioners' compliance burdens. Indeed, Petitioners' only argument (aside from claiming voluntary remand is unavailable) amounts to a projection that EPA's explanation on remand will be substantively flawed. Resp. 10-11. That speculation, and Petitioners' claim that they "will not have any opportunity to address EPA's continued misimpression of the Rule's fatal flaws," *id.*, is unfounded. If Petitioners object to how EPA addresses comments on remand, judicial review is the remedy.

As to frivolousness, Petitioners' argument that EPA's request is "futile" collapses into their distorted view of agencies' authority to correct their own errors.

---

[3] *See* EPA Memorandum, available at: https://www.epa.gov/system/files/documents/2024-08/gnp-stay-policy-memo-08-05-2024-signed.pdf (announcing plan for administrative stay).

8

*See* Resp. 11-13. As noted above, Petitioners are simply incorrect that this Court must keep the Rule frozen in amber until the Court can adjudicate the merits and, per Petitioners, order its vacatur.

Petitioners also claim that EPA has no "substantial and legitimate" interest in voluntary remand, Resp. 8-9, and is instead engaged in "gamesmanship." Resp. 14-15. But where the Supreme Court has not only granted emergency applications for stay but also issued an opinion that identifies a specific "likely" procedural flaw in the Rule, EPA's interest – and those of the Rule's supporters – in correcting that flaw is self-evidently legitimate and substantial.[4] The fact that EPA separately addressed reconsideration petitions on overlapping questions (but concerning after-arising judicial stays in other Circuits) and suggested consolidation of what all parties agree are related cases in this Court does not render EPA's interest in voluntary remand illegitimate. To the contrary, voluntary remand demands substantial Agency resources; it is not undertaken lightly.[5]

Petitioners' reliance on *Limnia*, Resp. 12-13, takes them no further, as that case stands for the proposition that voluntary remands must be for the genuine

---

[4] An agency's own, reviewable pronouncements are also far afield from *Chenery*'s concern with post hoc justifications of counsel. *See* Resp. 12.

[5] The timing of EPA's request also was not frivolous. *See* Resp. 6, 14. The Supreme Court's decision took eight months, and EPA moved for partial remand after a reasonable period reviewing its reasoning.

9

purpose of addressing some aspect of the original action, not serve as cover for agencies that "d[o] not intend to revisit" the original action such that remand would amount to dismissal. 857 F.3d at 386-88. EPA's express purpose here is to address the identified comments and revise that portion of its rulemaking rationale accordingly.

As such, the requested partial remand is consistent with this Court's preference for administrative, rather than judicial, corrections of possible rulemaking errors.

### C.  Vacatur is not appropriate here.

Petitioners lastly represent that if this Court grants the request for partial remand, they do not oppose a remand with vacatur. But no party has moved for vacatur here. In any case, vacatur is unwarranted and would be highly prejudicial.

First, EPA's request for partial remand concerns a narrow, potential failure to respond to comments the Supreme Court preliminarily assessed to be fairly raised during rulemaking. There is no serious question that EPA can cure that procedural failure upon remand. Under *Allied-Signal*, the Court weighs "the seriousness of the [rule's] deficiencies" and "the disruptive consequences of an interim change that may itself be changed." 988 F.2d at 150-51. "The 'seriousness' of agency error turns in large part on 'how likely it is the agency will be able to justify its decision on remand.'" *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C.

10

Cir. 2022) (cleaned up). Accordingly, where, as here, "an agency may be able readily to cure a defect in its explanation of a decision," *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009), the first *Allied-Signal* factor favors remand without vacatur.

Second, vacatur is not necessary to avoid prejudice to Petitioners. Enforcement of the Rule is currently stayed, so partially remanding without vacatur would have no effect on the status quo. Remand *with* vacatur, however, would be highly disruptive. *Allied-Signal*, 988 F.2d at 150-51. Vacatur would delay final resolution of Petitioners' Good Neighbor obligations under the 2015 ozone air quality standards well beyond the Act's deadlines for upwind action, *see Wisconsin v. EPA*, 938 F.3d 303, 312-13 (D.C. Cir. 2019), by forcing EPA to restart rulemaking – which began here more than two years ago – on the basis of a "likely" inadequate explanation on a single issue. There is no reason to presume, at this juncture, that the Rule is otherwise unreasonable, let alone so beyond justification that vacatur would be an appropriate remedy. *See Allied-Signal*, 988 F.2d at 150-51 (tying vacatur to "the extent of doubt whether the agency chose correctly" in designing a rule). And there is no reason to start back at the beginning of this litigation where the parties have already briefed a wide variety of disputes that will remain unaffected by the partial remand. That result would be both inefficient and would deal a significant blow to the people of downwind

states, who are awaiting the reductions in Petitioners' pollution promised by the Clean Air Act.

Accordingly, where the Court has found flaws in Good Neighbor rulemakings, it has regularly remanded those rulemakings without vacatur in recognition of the strong equities of downwind states and the unequivocal statutory command that EPA expeditiously eliminate offending pollution where upwind states have not done so. *See Wisconsin*, 938 F.3d at 336; *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 138 (D.C. Cir. 2015); *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008). Those concerns weigh equally against vacatur here, and indeed more so, as Petitioners have yet to actually prevail on any issue on the merits.

## CONCLUSION

For these reasons and those in EPA's motion, the United States respectfully requests that this Court grant EPA's motion for partial voluntary remand without vacatur.

DATE: August 29, 2024                                   Respectfully submitted,

|  |  |
|---|---|
| OF COUNSEL:<br><br>DANIEL P. SCHRAMM<br>KYLE DURCH<br>ROSEMARY H. KABAN<br>Office of General Counsel<br>U.S. Environmental Protection Agency<br>1200 Pennsylvania Ave., N.W.<br>Washington, D.C. 20460 | TODD KIM<br>Assistant Attorney General<br><br>*/s/ Chloe H. Kolman*<br>CHLOE H. KOLMAN<br>ELISABETH H. CARTER<br>ZOE PALENIK<br>U.S. Department of Justice<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, D.C. 20044<br>(202) 598-3141<br>elisabeth.carter@usdoj.gov<br><br>*Counsel for Respondents* |

13

## CERTIFICATE OF COMPLIANCE

      I hereby certify that this reply complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

      I further certify pursuant to Fed. R. App. P. 32(f) and (g) that this reply contains 2,597 words, excluding exempted portions, according to the count of Microsoft Word, and that this reply complies with the type-volume limitation set forth in Circuit Rule 27(c).

      */s/ Chloe H. Kolman*
      CHLOE H. KOLMAN

## CERTIFICATE OF SERVICE

      I hereby certify that on this 29th day of August, 2024, the foregoing reply was electronically filed with the Clerk of the Court using the CM/ECF system, which will cause of copy of this motion to be served upon all attorneys of record in this matter.

      */s/ Chloe H. Kolman*
      CHLOE H. KOLMAN