**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| STATE OF UTAH, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES ENVIRONMENTAL )<br>PROTECTION AGENCY, et al., )<br>)<br>Respondents. )<br>_____) | No. 23-1157, and<br>consolidated cases |

**MOTION TO GOVERN FURTHER PROCEEDINGS**

Pursuant to this Court's September 12th and November 1st Orders, ECF 2074472 & 2083296, Respondents the United States Environmental Protection Agency and Michael S. Regan, Administrator (collectively, "EPA") respectfully submit this proposal to govern further proceedings. As addressed further below, interstate emissions of ozone-forming pollution continue to cause significant harm to downwind States who are unable to prevent those harms without the assistance of upwind States and their emitting sources. Resolving this case is essential to ensuring those downwind States receive the protections afforded by the Clean Air Act and established in the Rule challenged here. Accordingly, EPA opposes

further abeyance and proposes a schedule for limited supplemental briefing that will allow these consolidated cases to be argued in the spring of 2025.

EPA circulated its proposal to govern further proceedings to all parties and was advised that:

- Industry Petitioners[1] oppose the proposal presented by EPA, and Industry Petitioners intend to file a consolidated Response in Opposition and Motion to Govern on or before December 20, 2024. Industry Petitioners support continued abeyance of these cases.

- The Upwind State Petitioners oppose and intend to file a consolidated Response and Motion to Govern on or before December 23, 2024.

- Public Interest Respondent-Intervenors and Petitioner-Intervenor Sierra Club oppose EPA's proposed timing and format as they conflict with important considerations described in their own motion to govern.

- State and Local Government Respondent-Intervenors, and the State of Wisconsin as Petitioner in No. 23-1201, oppose EPA's proposed timing and format as they conflict with important considerations described in their own motion to govern.

---

[1] This position is on behalf of Industry Petitioners in D.C. Cir. No. 23-1157 and also includes Midwest Ozone Group as Respondent-Intervenor.

EPA did not receive a position from Petitioner-Intervenor City Utilities of Springfield, Missouri.

I.  BACKGROUND

Petitioners in the above-captioned consolidated cases challenge a rule signed and promulgated by EPA on March 15, 2023, under the Clean Air Act entitled, "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 36654 (June 5, 2023) ("Good Neighbor Plan" or "Rule"). In brief, the Good Neighbor Plan implements the Clean Air Act's Good Neighbor provision by addressing emissions of nitrogen oxides from sources in 23 States that are significantly contributing to downwind air quality problems.[2]

The protection afforded by the Good Neighbor Plan is more urgently needed than ever. While these cases have been pending, downwind States have continued to suffer from poor air quality attributable to stagnating ozone levels caused in part by pollution from their upwind neighbors. The resulting impacts on public health are severe. ECF 2071369 at 12; *see also* ECF 2013255, Exhibit 1, Declaration of Rona Birnbaum ¶¶ 16, 90. The delay in securing upwind reductions of dangerous pollution has already begun to trigger escalating statutory consequences for

---

[2] A more detailed discussion of the Good Neighbor provision of the Clean Air Act and the Good Neighbor Plan itself may be found in the Statement of the Case section of EPA's Final Brief, ECF 2071369 at 4-23.

3

downwind areas that remain out of compliance with their air quality obligations—notwithstanding that these downwind areas have taken steps to reduce their pollution beyond what is required from upwind States under the Rule. *See* ECF 2071369 at 5-6, 12-13; ECF 2013255, Exhibit 1, Declaration of Rona Birnbaum ¶¶ 90-95; *see also* 42 U.S.C. § 7511a(c) (listing mandatory requirements for ozone nonattainment areas classified as Serious). Some areas have already been reclassified to Serious and others are on the way.[3] Indeed, the latest data shows that the passage of time has not ameliorated the problems the Good Neighbor provision was designed to help solve: downwind air quality remains the same or worse than was projected when the Rule was promulgated and challenged.[4]

Petitioners' challenges were filed in the summer of 2023. The 24 consolidated petitions include four petitions transferred from the Sixth Circuit and two petitions transferred from the Seventh Circuit. *See* ECF 2025739 & 2027164. All but one of the 24 petitions were brought by upwind States whose sources are

---

[3] *See, e.g.,* 89 Fed. Reg. 51829 (June 20, 2024); 89 Fed. Reg. 59832 (July 24, 2024); 89 Fed. Reg. 60314 (July 25, 2024); 89 Fed. Reg. 60827 (July 29, 2024); 89 Fed. Reg. 61025 (July 30, 2024); 89 Fed. Reg. 62663 (August 1, 2024); 89 Fed. Reg. 92816 (November 25, 2024); 89 Fed. Reg. 97545 (December 9, 2024).

[4] *See* Ozone Watch, *available at* https://www.epa.gov/outdoor-air-quality-data/ozone-watch (showing downwind receptor areas identified by the Rule continue to fail to attain federal air quality standards; default data shown is uncertified 2024 data and can be shown by pressing the blue button labeled "Go!" and reviewing column "Meets 2015 NAAQS?"; certified 2023 data can be viewed by changing the field "Select Years" to "2021-2023" and pressing "Go!").

4

subject to the Good Neighbor Plan, or by the sources themselves. Those petitioners, who generally assert the Good Neighbor Plan is too stringent, are referred to as Upwind State and Industry Petitioners. One petitioner, the State of Wisconsin, challenges the Good Neighbor Plan as not stringent *enough*. *See* ECF 2071618. Multiple parties have intervened on behalf of petitioners and respondents and still more parties have participated as amici.

The procedural history of this litigation reflects subsequent developments in the implementation of the Good Neighbor Plan itself. At promulgation on March 15, 2023, the Good Neighbor Plan's reductions were required in 23 upwind States that had submitted insufficient state plans or failed to submit any plan at all. Following promulgation of the Good Neighbor Plan, regional Circuits considering EPA's disapproval of some of those state plans stayed EPA's disapproval action pending judicial review. Because a valid disapproval of a state plan is a predicate to EPA's implementation of a federal plan, the Good Neighbor Plan was eventually stayed as to 12 States. To carry out those stays, EPA promulgated two interim final rules. *See* First Interim Final Rule, 88 Fed. Reg. 49295 (July 31, 2023); Second Interim Final Rule, 88 Fed. Reg. 67102 (Sept. 29, 2023).[5]

---

[5] Petitions challenging both interim final rules were filed in this Court and consolidated under *National Mining Association v. EPA*, No. 23-1275. Those cases are in abeyance and motions to govern further proceedings are due 30 days following the mandate in *Utah v. EPA*, No. 23-1157. No. 23-1275, ECF 2038443.

5

In this litigation, several petitioners moved to stay the Good Neighbor Plan as applied to additional States and source-types. *See, e.g.*, ECF 2008555 & 2009836. This Court denied those stay motions. ECF 2018645, 2021268, & 2029865. A group of petitioners then sought a stay from the Supreme Court, which granted a stay of enforcement as to the stay applicants on June 27, 2024. *Ohio v. EPA*, 603 U.S. 279 (2024). On preliminary review, the Supreme Court found that EPA had likely failed to adequately respond to comments concerning how a change in the number of covered States would impact the operation of the Good Neighbor Plan. *Id.* at 293-294. EPA carried out the Supreme Court's stay of enforcement through a third interim final rule staying the application of federal implementation plans in all 23 states as the "only practicable means of complying" with the Supreme Court's order. 89 Fed. Reg. 87960, 87962 (Nov. 6, 2024).

In response to *Ohio v. EPA*, EPA requested a partial voluntary remand to consider and respond to those comments identified by the Supreme Court. ECF 2068299. This Court remanded the record to EPA and placed the consolidated cases in abeyance pending the proceedings on remand. ECF 2074472. Acting promptly, EPA notified this Court on December 4th of the completion of proceedings in response to the remand of the record, attaching a pre-publication copy of the supplemental response to comments. ECF 2088052. That supplemental response has since been published in the Federal Register at 89 Fed.

Reg. 99105 (Dec. 10, 2024). EPA's response to comments does not add new reasons, information, or data to the record but instead draws together the analysis in the record to "more fully explain why, at the time the EPA issued the Good Neighbor Plan, it understood the Good Neighbor Plan's requirements to reasonably function on a state-by-state basis and therefore to be severable by state." *Id.* at 99106.

Apart from the matters addressed on remand, the merits of these petitions have been fully briefed since late August and are ready for argument and decision.[6] As for the remanded matters, Argument I from Upwind State Petitioners, ECF 2071453 at 27-35, and Argument II from Industry Petitioners, ECF 2071443 at 21-27, concern whether the Good Neighbor Plan is severable and can be properly applied to fewer than the 23 States initially covered. Therefore, a small portion of the completed briefing may be impacted by EPA's supplemental response to comments.

In addition, during the pendency of the remand, four Upwind State Petitioners filed an interlocutory Petition for Writ of Certiorari of this Court's

---

[6] The related cases, *U.S. Steel v. EPA*, Nos. 24-1172, 24-1174, challenging EPA's partial denial of petitions to reconsider the Good Neighbor Plan were also fully briefed as of November 15, 2024. Those cases are unaffected by the remand of the record, but this Court has ordered that oral argument in that case be held on the same day and before the same panel as oral argument in this case. ECF 2067416.

7

order remanding the record to EPA. *See* Petition for Writ of Certiorari (No. 24-450). EPA opposed the Petition for Writ of Certiorari, disputing the merits of the petition and arguing that, at a minimum, the request is premature. Brief for the Federal Respondents in Opposition 8-19 (No. 24-450). Those four Upwind State Petitioners also moved to extend the abeyance of the consolidated cases pending the Supreme Court's decision on the petition, ECF 2081800, which EPA similarly opposed, ECF 2081894, and which this Court rejected as premature, ECF 2083296. As of this filing, the Supreme Court has not acted on the Petition for Writ of Certiorari.

On December 13th, EPA filed a Certified Amended Index to the Administrative Record adding only its supplemental response to comments as published in the Federal Register. The parties are required to submit motions to govern future proceedings on or before December 30, 2024, and address the continuing abeyance of this case. *Id.* & ECF 2074472.

## II. OPPOSITION TO ABEYANCE

To begin, EPA opposes any further abeyance of this litigation. EPA did not oppose abeyance pending the remand of the record. ECF 2068299 at 4-5. Now, following the completion of the record remand, there is no sound basis to hold these cases in limbo. The consequences to downwind States of further delay are substantial and the mere possibility of a grant of certiorari on an interlocutory issue

should not disrupt the normal course of this litigation, especially where the underlying federal action is subject to a stay pending judicial review.

Four Upwind State Petitioners requested continued abeyance until the Supreme Court acted on their petition challenging this Court's remand of the record to EPA. ECF 2081800. The Petition for Writ of Certiorari was filed on October 18th and EPA responded on December 10th. *See* Dkt. No. 24-450. Based on this timeline, the petition will be distributed no earlier than December 24th, Sup. Ct. R. 15(5), and the Court's next scheduled Conference is January 10, 2025. *See* Supreme Court Calendar, October Term 2024.[7] Of course, it is uncertain whether the Court will act on the petition at the January Conference, but EPA submits that even continued abeyance until mid-January is both unnecessary and contrary to the public interest.

In support of their request for abeyance, the four Upwind State Petitioners offered just one example of this Court holding a case in abeyance pending a petition for certiorari on a pre-merits order. ECF 2082437 at 2 (citing *Utah v. EPA*, Nos. 23-1102, 24-1040, ECF 2051205 (April 24, 2024)). But that case is not analogous. In *Utah v. EPA*, petitioners filed protective petitions in the D.C. Circuit while pursuing their claims before the Tenth Circuit. *See, e.g.*, No. 23-1102, ECF

---

[7] *Available at* https://www.supremecourt.gov/oral_arguments/2024TermCourtCalendar.pdf.

9

1994857.  Thus, the protective petitions in *Utah v. EPA* were held in abeyance for seven months until the Tenth Circuit transferred the relevant petitions filed there to the D.C. Circuit.  *See* No. 23-1102, ECF 2005201 & 2042800.  Petitioners filed a petition for certiorari seeking review of the Tenth Circuit's decision to transfer the petitions and, rather than begin briefing, the Court agreed to hold *Utah v. EPA* and the transferred petitions in abeyance pending the Supreme Court's disposition of the petition.  No. 23-1102, ECF 2051205 & 2066828.

Here, briefing on a vast majority of the issues is already complete, unlike in *Utah v. EPA*.  And, while venue in *Utah v. EPA* was a threshold issue, the Supreme Court's disposition of the instant petition challenging the mid-litigation remand of the record will have no impact on those issues already briefed—the record for this Court's review of those issues will remain unchanged.  Thus, for most of the issues already before the Court, the petition is simply irrelevant.[8]

More importantly, the application of the Good Neighbor Plan's requirements, which are intended to deliver important relief to downwind communities suffering from air quality problems, has been stayed in part since the first and second interim final rules issued in the summer of 2023, and in full since the third interim final rule published in November of 2024.  That stay will remain

---

[8] For example, Petitioner Wisconsin and Petitioner-Intervenor Sierra Club argued that the Good Neighbor Plan is not stringent enough.  *See* ECF 2071618 & 2071513.  That petition is fully briefed and ripe for review.

10

in effect until the conclusion of this litigation and the Supreme Court's disposition of any timely filed petition for certiorari. Thus, if the Good Neighbor Plan is upheld even in part, important reductions in harmful interstate emissions will have been severely delayed. *See Wisconsin v. EPA*, 938 F.3d 303, 318-20 (D.C. Cir. 2019) (holding that good neighbor obligations must be addressed as expeditiously as practicable and, if at all possible, no later than downwind states' statutory deadline to attain the air quality standards); *accord Maryland v. EPA*, 958 F.3d 1185, 1203-04 (D.C. Cir. 2020); *North Carolina v. EPA*, 531 F.3d 896, 911-12 (D.C. Cir. 2008).

While Upwind State Petitioners may benefit from prolonging this litigation, downwind communities and overburdened downwind States will not. It is true, as the four Upwind State Petitioners argue, *see* ECF 2081800 at 2, that the parties will expend *some* resources on supplemental briefing following the remand of the record. However, as reflected in the proposal below, the anticipated supplemental briefing is focused on a narrow issue and can be completed on a relatively short timeframe and with moderate word limits. But the four Upwind State Petitioners' argument also ignores the much more substantial resources the parties have already sunk into briefing myriad arguments ready for argument and decision—and the continuing burdens on downwind communities suffering from air pollution.

At bottom, this litigation has continued for more than a year and a half. All parties, this Court, and the numerous communities and States waiting for relief from harmful interstate emissions would benefit from the efficient resolution of these 24 petitions. A Petition for Writ of Certiorari on an interlocutory order that may impact only one of many arguments before this Court cannot justify further delay.

### III. PROPOSAL AND RATIONALE

As noted above, EPA's supplemental response to comments on remand addresses and was intended to resolve one set of issues raised in the existing challenges to the Rule. In the event that Upwind State and Industry Petitioners who raised those original challenges wish to address EPA's supplemental response to comments, EPA proposes the following schedule and format for supplemental briefing:

| BRIEF | FORMAT | DEADLINE |
|---|---|---|
| Combined Opening Brief of Upwind State Petitioners[9] and Industry Petitioners[10] | 3,250 words | 35 days after Scheduling Order |
| Brief of Respondent EPA | 3,250 words | 35 days after filing of Opening Brief |
| Combined Brief of Respondent-Intervenors | 2,275 words | |
| Combined Reply Brief of Upwind State Petitioners and Industry Petitioners | 1,625 words | 17 days after filing of Respondent and Respondent-Intervenors' Briefs |

    EPA's proposed briefing schedule and format takes appropriate account of the need for expeditious resolution of this case, and the extensive briefing that has already taken place, while allowing the parties to air any limited additional challenges to EPA's explanation on remand.

    With respect to schedule, the proposed timeline will allow for oral argument in the spring of 2025, which is essential to ensure the important environmental protections provided by the Rule are not unduly delayed. The protections due downwind States under this Rule have been stayed pending judicial review. This

---

[9] Upwind State Petitioners' challenges are Case Nos. 23-1157, 23-1183, 23-1209, 23-1314, and 23-1315.

[10] Industry Petitioners' challenges are Case Nos. 23-1181, 23-1190, 23-1191, 23-1193, 23-1195, 23-1199, 23-1200, 23-1202, 23-1203, 23-1205, 23-1206, 23-1207, 23-1208, 23-1211, 23-1306, 23-1307, 23-1316, and 23-1317.

schedule provides for prompt supplemental briefing that will ensure a timely conclusion of judicial review in the D.C. Circuit.

EPA proposes traditional staggered briefing, with an opening brief, responses, and a reply, to ensure that briefing is specifically focused on the issues of concern to Petitioners and to spare both the Court and the parties from unnecessary briefing on matters that may not ultimately be at issue. To ensure that such a schedule will not delay resolution here, however, EPA also proposes simultaneous response briefs for both Respondents and Respondent-Intervenors to allow for a more expeditious reply. Finally, EPA proposes that the parties proceed without the use of a deferred appendix, given the limited additional record material implicated here.

Likewise, the proposed 35-day intervals, while ensuring timely argument in the spring of 2025, also take necessary account of any briefing and coordination that may occur over the approaching winter holidays, as well as the necessary period for review and approval of Respondents' brief by both EPA and Department of Justice management.

With respect to format, EPA's proposal reasonably provides for quarter-length briefs for all parties' opening, response, and reply briefs (appropriately setting equivalent word limits for Petitioners and Respondents, Fed. R. App. P.

32(a)(7)(B)).  Given the extensive briefing already submitted in this case, supplemental briefing in excess of the proposal above is unnecessary.

For merits briefing, the Court allocated more than 133,000 words across all parties.  ECF 2029865.  Addressing this discrete issue—the severability of the Good Neighbor Plan in light of EPA's supplemental response to comments— raised by only some petitioners in the first instance, would require only limited additional briefing.  As an illustration, Upwind State Petitioners devoted about 1,842 words to the severability issue in Argument Sections I.A and B of their opening merits brief, ECF 2071453 at 27-35, and Industry Petitioners similarly spent about 1,154 words on that question in Argument Section II of their opening merits brief, ECF 2071443 at 21-27.  EPA's proposal would provide those Petitioners with 3,250 words, more than they spent on the same arguments in their opening briefs.  Moreover, in preparing supplemental briefs, the parties need not include broad introductions, statutory backgrounds, or other prefatory material already before the Court.

EPA's proposal also appropriately limits supplemental briefing only to parties that previously raised arguments that overlap with EPA's supplemental response to comments.  The remaining parties excluded from this proposal did not raise severability concerns with respect to the Rule and so have already had an

15

opportunity to fully brief their challenges. The remand of the record was narrowly limited in scope and any supplemental briefing should be as well.

Accordingly, upon completion of this limited supplemental briefing, EPA requests that the case be promptly calendared for oral argument, along with *U.S. Steel v. EPA*, No. 24-1172 (and the consolidated case), during the Court's Spring 2025 argument session.

DATE: December 13, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General

/s/ *Zoe Palenik*
CHLOE H. KOLMAN
ELISABETH H. CARTER
ZOE PALENIK
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 353-5625
zoe.palenik@usdoj.gov

*Counsel for Respondents*

OF COUNSEL:

DANIEL P. SCHRAMM
KYLE DURCH
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Motion to Govern Further Proceedings complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify pursuant to Fed. R. App. P. 32(f) and (g) that this Motion to Govern Further Proceedings contains 3,285 words, excluding exempted portions, according to the count of Microsoft Word, and that this Motion to Govern Further Proceedings complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A).

                                                     /s/ *Zoe Palenik*
                                                     ZOE PALENIK

# CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2024, the foregoing Motion to Govern Further Proceedings was electronically filed with the Clerk of the Court using the CM/ECF system, which will cause of copy of this Motion to be served upon all attorneys of record in this matter.

/s/ *Zoe Palenik*
ZOE PALENIK
