# ORAL ARGUMENT NOT YET SCHEDULED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF UTAH, et al., *Petitioners*, v. U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., *Respondents*. | No. 23-1157 (and consolidated cases) |
| UNITED STATES STEEL CORPORATION, *Petitioner*, v. U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., *Respondents*. | No. 24-1172 (and consolidated case) |

**STATE RESPONDENT-INTERVENORS' OPPOSITION TO EPA'S MOTIONS TO HOLD CASES IN ABEYANCE** [1]

---

[1] This opposition is submitted in No. 23-1157 (and consolidated) on behalf of State Respondent-Intervenors New York, Connecticut,

(*continued on the next page*)

Just a few weeks after *Utah v. EPA* was restored to this Court's active docket following a round of motions to govern, the U.S. Environmental Protection Agency (EPA) and EPA Administrator Lee Zeldin[2] move to put the above-captioned cases into abeyance for sixty days "to allow new Agency leadership to review the underlying [Good Neighbor] Rule," with another round of motions to govern due at the end of that period. Respondents' Mot. to Hold Consolidated Cases in Abeyance 1, 6, *Utah v. EPA*, No. 23-1157 (D.C. Cir. Feb 6, 2025), ECF No. 2099213 ("EPA *Utah* Abeyance Mot."); *see* Respondents' Mot. to Hold Consolidated Cases in Abeyance 1, 7, *U.S. Steel Corp. v. EPA*, No. 24-1172 (D.C. Cir. Feb. 6, 2025), ECF No. 2099224 ("EPA *U.S. Steel* Abeyance Mot."); *see* Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36654 (June 5,

---

Delaware, Illinois, Maryland, Massachusetts, New Jersey, Wisconsin (also in its capacity as Petitioner in No. 23-1201); the District of Columbia; Harris County, Texas; and the City of New York; and in No. 24-1172 (and consolidated) on behalf of State Respondent-Intervenors New York, Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, Wisconsin; the District of Columbia; and Harris County, Texas.

[2] Per Federal Rule of Appellate Procedure 43(c)(2), EPA Administrator Lee Zeldin is automatically substituted for former EPA Administrator Michael Regan.

2023) ("Good Neighbor Rule" or "Rule"). The underlying Good Neighbor Rule, which restricts interstate ozone pollution by limiting ozone-forming emissions from large power plants and other high-polluting industries, is currently stayed pending disposition in this Court and any timely petitions for writ of certiorari. *See Ohio v. EPA*, 603 U.S. 279, 300 (2024). EPA acknowledges that the Rule will remain stayed during the pendency of any abeyance. *See* EPA *Utah* Abeyance Mot. 2-3.

The Court should deny the motions. The sixty-day abeyance that EPA seeks could impair the Court's ability to hold spring argument in these time-sensitive cases. Moreover, the requested abeyance will not necessarily terminate at the end of sixty days—instead, EPA asks for even more time at the conclusion of that period to file motions to govern. Nor does EPA commit to expeditious "review" that will cabin the harm that will result from postponing the judicial process while the extraordinary remedy of a stay prevents a duly promulgated regulation from taking effect. Instead, EPA's motion leaves open the possibility for indefinite delay of the underlying Rule through successive motions to govern—either because EPA may ask for more time to "review," or because it may inform the Court that it wishes to initiate a new

rulemaking. Such open-ended delay severely prejudices State Respondent-Intervenors by delaying the disposition of this case—and therefore the Rule's protections from harmful interstate pollution—likely past the May 1 through September 30, 2025 ozone season and beyond.

State Respondent-Intervenors have already been irreparably harmed by the judicial stay, see *infra* at 10 (discussing reclassification of ozone-burdened areas in Wisconsin), and further delay of this litigation threatens additional harms. Pollution levels measured during the 2025 ozone season and beyond—which include emissions from sources in upwind States—will be used to determine whether State Respondent-Intervenors can meet mandatory, fixed statutory deadlines, or whether they will instead face increased restrictions on their sources. If the case is paused for sixty days, plus additional time for motions to govern, State Intervenor-Respondents will almost certainly lose the ability to have these cases argued this spring and potentially resolved in time for fast-approaching attainment deadlines. And pausing the Rule's protections for longer would be inconsistent with both the Clean Air Act's procedural time limits on pausing duly-enacted regulations, as well as the Act's substantive command to limit interstate pollution prior to these fixed

4

statutory deadlines. Indeed, EPA itself recently opposed an abeyance motion in this Good Neighbor Rule litigation by several petitioner States for the same reason—that delay in resolution of this case would harm downwind States. *See* Mot. to Govern Further Proceedings 10-12, *Utah*, No. 23-1157 (D.C. Cir. Dec. 13, 2024), ECF 2089570 ("EPA Mot. to Govern").

On the other hand, there is no prejudice to EPA or petitioners from having to complete the supplemental briefing here, which the Court recently ordered. EPA remains free to conduct its review of the Rule as the litigation proceeds and determine whether it will initiate notice-and-comment rulemaking to modify the Rule. And because the Rule is stayed, proceeding with the litigation will not impose on petitioners any of the harms they claimed would result from the Rule.

## REASONS TO DENY ABEYANCE

In considering a motion to defer resolution of a case, this Court considers whether the needs of the party seeking deferral "override[] the injury to the parties being stayed." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971); *see id.* at 786-87 (applying standard from *Landis v. North Am. Co.*, 299 U.S. 248 (1936)). Here, granting a sixty-day abeyance

5

will harm State Respondent-Intervenors. By contrast, denying an abeyance will not impose any "clear case of hardship or inequity" on any party. *See Landis*, 299 U.S. at 255. An abeyance and further delay of the Rule will, at minimum, foreclose time-sensitive emissions reductions that downwind States and localities urgently need for the upcoming 2025 ozone season and beyond, and could mean that these States never receive substantive protections against harmful interstate ozone pollution, contrary to the Clean Air Act's mandate.[3]

Consistent with the "good-neighbor provision" of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), the Good Neighbor Rule protects State Respondent-Intervenors and other "downwind" jurisdictions from out-of-state pollution that they cannot control, *see Ohio*, 603 U.S. at 283-84. For

---

[3] The State of Wisconsin in its capacity as Petitioner also faces unique harm from continued abeyance. Wisconsin argues that the Rule under-controls ozone pollution resulting from upwind State air emissions and seeks relief that would expand the already significant health and regulatory benefits of the Rule. Further delay occasioned by abeyance would deprive Wisconsin its opportunity to vie for relief, thus severely prejudicing its interests. *See* Joint Mot. to Govern Future Proceedings of State & Local Gov't Respondent-Intervenors, Public Interest Respondent-Intervenors, Petitioner State of Wisconsin, and Petitioner-Intervenor Sierra Club 10, *Utah v. EPA*, No. 23-1157 (D.C. Cir. Dec. 13, 2024), ECF No. 2089561.

6

years, State Respondent-Intervenors have worked diligently to reduce emissions from their in-state sources, typically by requiring the installation of emissions-control technology, whereas many other States have allowed their in-state sources to continue emitting ozone-forming pollution at high rates.[4] *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 519 (2014). Pollution from these "upwind" sources flows into State Respondent-Intervenors' jurisdictions, necessitating even more stringent in-state reduction measures to offset it. *Id.* The Rule is designed to limit these emissions and to restore equity by ensuring that all cost-effective pollution-reduction measures are exhausted before triggering the need for downwind States to employ even costlier strategies. *See id.*; *see also* 88 Fed. Reg. at 36691 (Rule stops upwind States "that have not yet implemented pollution controls of the same stringency as their neighbors . . . from free riding on their neighbors' efforts to reduce pollution").

---

[4] To illustrate, under the Rule, EPA estimated that sources in Ohio could lower their ozone-forming emissions in 2023 by 1,154 tons by installing or running basic control equipment, while sources in New York could reduce such emissions by only 64 tons because they already have installed and operate stringent controls. *See* 88 Fed. Reg. at 36,737, tbl. V.C.1-1.

Critically, the Good Neighbor Rule is also designed to ensure that these reductions take place in time for downwind States to meet a fast-approaching mandatory deadline under the Act, called an "attainment deadline." 88 Fed. Reg. at 36690; *see Wisconsin v. EPA*, 938 F.3d 303, 318 (D.C. Cir. 2019) (statute requires good-neighbor rules to align with attainment deadlines). After EPA promulgates a more stringent federal air quality standard for ozone, which here occurred in 2015, States must demonstrate "attainment" of that standard by a date certain—or face reclassification to a higher level of nonattainment, with another corresponding attainment deadline. 42 U.S.C. § 7511; *see* Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications Approach, 83 Fed. Reg. 10376, 10380 (Mar. 9, 2018) (setting attainment deadlines for 2015 ozone standard). Failure to meet attainment deadlines requires that State to implement progressively costlier and more stringent measures to reduce ozone until it reaches attainment. 42 U.S.C. § 7511a. If nonattainment persists, consequences can include statutory penalties assessed against sources. *Id.* § 7511(d).

A sixty-day abeyance, followed by additional weeks to resolve motions to govern, and thus a further delay of the Rule's protections, would prejudice State Respondent-Intervenors here. If the abeyance delays or derails argument in the spring of 2025, it could impair the Court's ability to resolve these cases by this year's ozone season. And even a few months' pause would likely put this litigation on a path to indefinite delay that will force State Respondent-Intervenors to meet the next attainment deadline without any relief from out-of-state pollution. Moreover, EPA's requested abeyance here does not commit to any deadline for completing its "review" and instead leaves open the possibility of indefinite extensions of the abeyance to continue the "review" or to initiate a new rulemaking.

Such extensive delay will be harmful to State Respondent-Intervenors. As an initial matter, the judicial stay in this litigation has already irreparably harmed State Respondent-Intervenors. For example, while this case has been pending, Wisconsin's nonattainment areas have been reclassified, or "bumped up," to a "Serious" nonattainment designation with more stringent requirements in place that may not sufficiently improve air quality in the area and will continue to impose

economic hardship. *See, e.g.*, Findings of Failure to Attain and Reclassification of Areas in Illinois, Indiana, Michigan, Ohio, and Wisconsin as Serious for the 2015 Ozone National Ambient Air Quality Standards, 89 Fed. Reg. 101901, 1019901 (Dec. 17, 2024). Several other Respondent-Intervenors also had their nonattainment areas reclassified to "Serious" during this litigation, due in large part to ozone pollution from upwind States and years of delay by EPA in issuing a rule to address this interstate pollution.[5]

Further delay will seriously jeopardize State Respondent-Intervenors' ability to meet the next attainment deadlines. The next attainment deadline is August 3, 2027 for States with areas that are in "Serious" nonattainment. *See* Implementation of the 2015 National Ambient Air Quality Standards for Ozone, 83 Fed. Reg. at 10380. Ozone attainment for this deadline is calculated by averaging air-quality measurements that are taken during the ozone season in each of the three preceding calendar years—2024, 2025, and 2026. 88 Fed. Reg. at

---

[5] *See* EPA, 8-Hour (2015) Nonattainment Areas (Jan. 31, 2025) (listing areas in New York and other State Respondent-Intervenors that were reclassified to "serious" nonattainment).

36692; *see* 40 C.F.R. pt. 50 app. U, § 3(e). Because of the Supreme Court's stay, higher ozone levels measured in State Respondent-Intervenors' jurisdictions during the 2024 ozone season are already locked into the attainment calculation for 2027.[6] Downwind States thus urgently need relief from interstate pollution during the 2025 and 2026 ozone seasons to have a chance at demonstrating attainment.

If States cannot meet the "Serious" nonattainment deadline in 2027, they will be reclassified to "Severe" or even "Extreme" nonattainment. These classifications carry tremendous burdens, including extremely stringent pollution-control regulations, restrictions on new development, and burdensome planning and reporting requirements. *See* 42 U.S.C. § 7511a(d)-(e); *see also id.* § 7511(d) (discussing statutory penalties).

Further, to the extent that EPA's request for an abeyance now is in contemplation of additional abeyance requests pending reconsideration of the Good Neighbor Rule, any such abeyance under those circumstances—where the underlying rule is stayed pending judicial

---

[6] *See, e.g.*, EPA, 2024 Ozone Exceedances (Nov. 10, 2024).

review, and judicial review is deferred indefinitely—would be contrary to the Clean Air Act and basic principles of administrative law. Section 307(d)(7)(B) of the Clean Air Act allows EPA *and courts* to stay the effectiveness of a rule only for a period "not to exceed three months" pending reconsideration, and even then, only if such reconsideration is mandatory. 42 U.S.C. § 7607(d)(7)(B). Indeed, this Court has held that EPA lacks inherent authority to suspend a duly promulgated rule for longer than the statutory period. *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017).

By contrast, there is no prejudice to EPA or petitioners from having to complete the supplemental briefing here, which the Court recently ordered. Indeed, as EPA recently explained when opposing Petitioners' December 2024 request for a continued abeyance, the "supplemental briefing is focused on a narrow issue and can be completed on a relatively short timeframe and with moderate word limits." EPA Mot. to Govern 11. Moreover, the pending litigation does not prevent EPA from reviewing the Rule as the litigation proceeds and determining whether to initiate any notice-and-comment rulemaking. Review of existing regulations in light of new or changed policy priorities is a routine component of agency

work, and there is no basis to further delay litigation about a duly enacted regulation while this work is ongoing. *See Clean Air Council*, 862 F.3d at 9. And because the Rule is stayed, proceeding with the litigation will not impose on Petitioners any of the harms they claimed would result from the Rule.

Finally, granting an abeyance would also be highly inefficient in these cases, which are already far into the litigation and supposed to be calendared for argument in the spring due to the time sensitivity of the protections and attainment deadlines impacted by each ozone season's pollution levels. Several motions panels of this Court have already invested significant resources in this case, having adjudicated several stay motions, adjudicated EPA's remand request in light of the Supreme Court's stay order, and recently rejected Petitioners' motion for an abeyance and Industry Petitioners' argument that the change in presidential administration supported one. *See* Industry Petrs' Joint Mot. to Govern 9-10, *Utah*, No. 23-1157 (D.C. Cir. Dec. 20, 2024), ECF No. 2091022. Two of the cases—*United States Steel Corporation v. EPA*, No. 24-1172, and *Hybar LLC v. EPA*, No. 24-1176—are fully briefed and awaiting calendaring of argument. And in *Utah v. EPA*, No. 23-1157, the

13

parties have already filed opening, response, and reply briefs, with only short supplemental briefing—which is already underway—remaining. Indeed, in deciding the parties' recent motion to govern in *Utah*, the Court was presented with an alternative and longer schedule for briefing, and instead entered an order with a schedule that allows for these cases to be calendared for argument this spring. The Court should continue to follow this approach.

## CONCLUSION

The Court should deny the abeyance motions.

Dated: New York, New York
February 12, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent-Intervenor State of New York

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
ELIZABETH A. BRODY
  *Assistant Solicitor General*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
  *Assistant Attorneys General*

By:   /s/ Morgan A. Costello
MORGAN A. COSTELLO
Assistant Attorney General

State Capitol
Albany, New York 12224
(518) 776-2392

14

FOR THE STATE OF
CONNECTICUT

WILLIAM TONG
Attorney General of
Connecticut

*/s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
Attorney General of the
District of Columbia

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street N.W., Ste 8100
Washington, D.C. 20001
Tel. (202) 724-6609
caroline.vanzile@dc.gov

FOR THE STATE OF
DELAWARE

KATHLEEN JENNINGS
Attorney General of Delaware

/s/ *Vanessa L. Kassab*
IAN R. LISTON
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov

FOR THE STATE OF
ILLINOIS

KWAME RAOUL
Attorney General

*/s/Jason E. James*
JASON E. JAMES
Assistant Attorney General
MATTHEW DUNN
Chief, Environmental
Enforcement/
Asbestos Litigation Division
Illinois Office of the Attorney
General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

| | |
|---|---|
| FOR THE STATE OF MARYLAND<br><br>ANTHONY G. BROWN<br>Attorney General of Maryland<br><br>/s/ *Michael F. Strande*<br>MICHAEL F. STRANDE<br>Assistant Attorney General<br>STEVEN J. GOLDSTEIN<br>Special Assistant Attorney General<br>Office of the Attorney General<br>1800 Washington Blvd.<br>Baltimore, MD 21230<br>(410) 537-3421<br>Michael.strande@maryland.gov<br>sgoldstein@oag.state.md.us | FOR THE COMMONWEALTH OF MASSACHUSETTS<br><br>ANDREA JOY CAMPBELL<br>Attorney General of Massachusetts<br><br>/s/ *Jillian M. Riley*<br>JILLIAN M. RILEY<br>JOHN S. CRAIG<br>Assistant Attorneys General<br>Office of the Attorney General<br>One Ashburton Place<br>Boston, MA 02108<br>(617) 963-2424<br>jillian.riley@mass.gov |
| FOR THE STATE OF NEW JERSEY<br><br>MATTHEW J. PLATKIN<br>Attorney General of New Jersey<br><br>/s/Nell Hryshko<br>NELL HRYSHKO<br>Deputy Attorney General<br>Division of Law<br>25 Market St., P.O. Box 093<br>Trenton, NJ 08625<br>Telephone: (609) 376-2735<br>nell.hryshko@law.njoag.gov | FOR THE STATE OF WISCONSIN<br><br>JOSHUA L. KAUL<br>Attorney General of Wisconsin<br><br>/s/ *Gabe Johnson-Karp*<br>GABE JOHNSON-KARP<br>Assistant Attorney General<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, WI 53702-7857<br>Telephone: (608) 267-8904<br>Fax: (608) 267-2223<br>johnsonkarpg@doj.state.wi.us |

| FOR THE CITY OF NEW YORK, NEW YORK | FOR HARRIS COUNTY, TEXAS |
|---|---|
| MURIEL GOODE-TRUFANT<br>Corporation Counsel<br><br>*/s/ Christopher Gene King*<br>CHRISTOPHER GENE KING<br>Senior Counsel,<br>Environmental Law Division<br>New York City Law Department<br>100 Church Street<br>New York, NY 10007<br>(212) 356-2074<br>cking@law.nyc.gov | CHRISTIAN MENEFEE<br>Harris County Attorney<br>JONATHAN FOMBONNE<br>First Assistant County Attorney<br>TIFFANY BINGHAM<br>Managing Counsel<br><br>*/s/ Sarah Jane Utley*<br>SARAH JANE UTLEY<br>Environmental Division Director<br>State Bar No. 24042075<br>1019 Congress, 15th Floor<br>Houston, Texas 77002<br>Telephone: (713) 274-5124<br>Fax: (713) 437-4211<br>Email: sarah.utley@harriscountytx.gov |

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing State Respondent-Intervenors' Opposition to EPA's Motions to Hold Cases in Abeyance contains 2,389 words, excluding exempted portions, and was composed in double-spaced, 14-point Century Schoolbook font. I certify that the foregoing complies with applicable type-volume and typeface requirements. I further certify, consistent with D.C. Circuit R. 32(a)(2) that all parties listed in the signature blocks consent to this filing.

　/s/ Morgan A. Costello　
MORGAN A. COSTELLO
