<u>**ORAL ARGUMENT SCHEDULED FOR APRIL 25, 2025**</u>

No. 23-1157 (and consolidated cases)

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

STATE OF UTAH,
*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*,
*Respondents*.

---

On Petition for Review of Action of the U.S. Environmental Protection Agency,
88 FR 36,654 (June 5, 2023)

---

**JOINT SUPPLEMENTAL BRIEF OF
PUBLIC INTEREST RESPONDENT-INTERVENORS AND
STATE AND LOCAL GOVERNMENT RESPONDENT-INTERVENORS**

LETITIA JAMES
  Attorney General
  State of New York
28 Liberty Street
New York, New York 10005
(212) 416-6167

BARBARA D. UNDERWOOD
  Solicitor General
JUDITH N. VALE
  Deputy Solicitor General
ELIZABETH A. BRODY
  Assistant Solicitor General
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
  Assistant Attorneys General

*Counsel for State of New York*

KATHLEEN L. RILEY
SETH L. JOHNSON
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 745-5227

*Counsel for Air Alliance Houston,
Appalachian Mountain Club, Center for
Biological Diversity, Chesapeake Bay
Foundation, Downwinders at Risk,
Louisiana Environmental Action
Network, Sierra Club, Southern Utah
Wilderness Alliance, and Utah
Physicians for a Healthy Environment*

Dated: March 17, 2025

*(Additional counsel listed on signature pages.)*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1)(A), State and Local Government Respondent-Intervenors and Public-Interest Respondent-Intervenors provide the following update and additions to the certificates as to parties, ruling, and related cases filed with their final briefs, Doc#2071499, Doc#2071396:

### I.    Parties

<u>Respondents</u>: the U.S. Environmental Protection Agency; Lee Zeldin, Administrator of the U.S. Environmental Protection Agency.[1]

### II.    Related Cases

<u>In this Circuit</u>: *Kinder Morgan et al. v. EPA*, No. 25-1054 (and consolidated cases); *United States Steel Corp. v. EPA*, No. 24-1172 (and consolidated cases).

Dated: March 17, 2025

*/s/ Kathleen L. Riley*
Kathleen L. Riley

---

[1] Following the resignation of Michael Regan, Lee Zeldin was nominated and confirmed as Administrator of the U.S. Environmental Protection Agency. Pursuant to Fed. R. Civ. P. 25(d), Administrator Zeldin is automatically substituted as a party in this case.

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Public Interest Respondent-Intervenors Air Alliance Houston, Appalachian Mountain Club, Center for Biological Diversity, Chesapeake Bay Foundation, Citizens for Pennsylvania's Future, Clean Air Council, Clean Wisconsin, Downwinders at Risk, Environmental Defense Fund, Louisiana Environmental Action Network, the Ohio Environmental Council, Sierra Club, Southern Utah Wilderness Alliance, and Utah Physicians for a Healthy Environment state that they are non-profit environmental and community organizations without any parent corporation and without any stockholders.

Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 do not apply to the State and Local Government Respondent-Intervenors.

Dated: March 17, 2025

*/s/ Kathleen L. Riley*
Kathleen L. Riley

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ........................................................................................2

    I.    This Court can consider the Supplement...................................2

    II.    The Supplement defeats Petitioners' severability arguments. ...................8

    III.    Petitioners are not entitled to another comment opportunity. ...................12

CONCLUSION ...................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006)..........................3, 7

*Am. Fed'n of Gov't Emps., Loc. 3295 v. Fed. Lab. Rels. Auth.*,
  46 F.3d 73 (D.C. Cir. 1995) ...................................................................6

*Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324 (D.C. Cir. 2023) .........8

*City & Cnty. of San Francisco v. EPA*, 2025 WL 676441 (U.S. Mar. 4, 2025) ........4

*Cooper Indus. v. Aviall Servs.*, 543 U.S. 157 (2004). .................................5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020).............7

*EPA v. EME Home*r City, LP, 572 U.S. 489 (2014) ..................................11

*Essex Chem. Corp. v. Ruckelshaus*, 486 F.2d 427 (D.C. Cir. 1973) ........................6

*Ethyl Corp. v. Browner*, 989 F.2d 522 (D.C. Cir. 1993) ............................................2

*International Harvester Co. v. Ruckelshaus*, 478 F.2d 615 (D.C. Cir. 1973)...........6

*Kennecott Copper Corp. v. EPA*, 462 F.2d 846 (D.C. Cir. 1972) ............................6

*Lackey v. Stinnie*, 2025 WL 594737 (U.S. Feb. 25, 2025)......................................5

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) .................................11

*Lorillard v. Pons,* 434 U.S. 575 (1978)....................................................................7

*McQuiggin v. Perkins*, 569 U.S. 383 (2013)............................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. EPA*, 768 F.2d 385 (D.C. Cir. 1985)........6

*Ohio v. EPA*, 603 U.S. 279 (2024) .................................................................. 5, 13

*Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 393 (D.C. Cir. 1973) ..........6

*Russello v. United States*, 464 U.S. 16 (1983) .........................................................4

*Schact v. Liberman*, 103 F.4th 794 (D.C. Cir. 2024).................................................8

*SEC v. Chenery*, 318 U.S. 80 (1943).........................................................................7

*Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019) ...................................................11

**Statutes**

42 U.S.C. § 7426(b). .................................................................................................11

42 U.S.C. § 7607(d)(3)................................................................................................4

42 U.S.C. § 7607(d)(4)(B)(i).......................................................................................4

42 U.S.C. § 7607(d)(6)(A)-(B) ....................................................................................5

42 U.S.C. § 7607(d)(6)(C) ................................................................................ 3, 4, 5, 8

42 U.S.C. § 7607(d)(7)(A). ..........................................................................................5

42 U.S.C. § 7607(d)(7)(B) ..........................................................................................13

42 U.S.C. § 7607(d)(8)................................................................................................6

42 U.S.C. § 7607(d)(9)................................................................................................6

**Federal Register Notices**                                                    **Page(s)**

88 FR 36,654 (June 5, 2023)........................................................................ 4, 9, 10

89 FR 99,105 (Dec. 10, 2024)................................................ 1, 3, 4, 8, 9, 10, 11, 12

**Legislative History**                                                         **Page(s)**

H.R. Rep. 95-294 (1977)..........................................................................................6, 7

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Pursuant to D.C. Circuit Rule 28(a)(3), the following is a glossary of uncommon acronyms and abbreviations used in this brief:

"EPA" – the United States Environmental Protection Agency.

"EPA Br." – Respondent EPA's Final Brief, Doc#2071369.

"NY Br." – Final Brief for Intervenors States of New York *et al.*, Doc#2071396.

The "Rule" – Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 FR 36,654 (June 5, 2023).

"Industry Br." – Final Joint Opening Brief of Industry Petitioners, Doc#2071443.

"Industry Reply" – Final Joint Reply Brief of Industry Petitioners, Doc#2071451.

"Industry Supp." – Joint Supplemental Brief of Industry Petitioners, Doc#2098255.

"State Supp." – Supplemental Brief of Petitioners States of Ohio *et al*., Doc#2097914.

The "Supplement" – Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Notice on Remand of the Record of the Good Neighbor Plan To Respond to Certain Comments, 89 FR 99,105 (Dec. 10, 2024).

## INTRODUCTION

This Court remanded the record so that EPA could further respond to a question potentially raised in public comments and identified by the Supreme Court in its pre-merits stay decision: **Does the Good Neighbor Rule's viability depend on the States it covers?** Even if commenters had raised the question with reasonable specificity (they did not, EPA Br. 31-34; NY Br. 13-14), and any failure to respond were not harmless (it would be, NY Br. 27-28), EPA's Supplemental Response to Comments (the "Supplement"), 89 FR 99,105 (Dec. 10, 2024), resolves any further concern: **The answer is no.** This Court may consider the Supplement and should reject Petitioners' argument that the Rule is inseverable.

## SUMMARY OF ARGUMENT

Consideration of the Supplement is proper. This Court has commonly exercised its equitable authority to remand an administrative record, both before and after Congress added the Clean Air Act provisions on which Petitioners rely. Those provisions neither displace this Court's equitable authority to remand a record nor prevent this Court from considering agency responses that, like the Supplement, amplify the agency's original reasoning and are based solely on information and data in the record when the Rule was promulgated.

The Court should also reject Petitioners' claims that the Rule's methodology is based on a twenty-three-State analysis and that the Rule is rendered invalid if

1

applied in fewer than twenty-three States. The Supplement confirms that the Rule's methodology did not rest on an assumption that the Rule would cover twenty-three States. Petitioners' claims about discrete aspects of the Rule's methodology misapprehend the record and binding precedent.

Finally, this Court should reject Petitioners' assertion that, because they were not offered another public comment opportunity, the Supplement is procedurally invalid. If commenters already raised severability, as Petitioners previously claimed, then Petitioners have had their public comment opportunity. If not, as they now claim (and Respondent-Intervenors already explained), then the Act bars the Court in this case from reviewing an issue that could have been (but was not) raised during the rulemaking process.

## ARGUMENT

### I.     This Court can consider the Supplement.

This Court's consideration of the Supplement that it ordered accords with the Court's established equitable authority and longstanding remedial practices. *See* Order, Doc#2074472. This Court commonly remands the record "to allow agencies to cure their own mistakes rather than wasting the [Court's] and the parties' resources" reviewing a record that may be incomplete. *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). And when this Court remands the record for further agency explanation, "it is incumbent upon the court to consider that explanation

2

when it arrives." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). Nothing in the Act's text or statutory or legislative history provides anything approaching the sort of "clearest command" that would be required to displace that traditional authority. *See McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013) (quotation marks omitted).

There is no textual support for Petitioners' argument that § 7607(d)(6)(C) bars this Court's consideration of the Supplement. That provision explains that rules "may not be based (in part or whole) on any *information or data* which has not been placed in the docket" when the rule was promulgated. § 7607(d)(6)(C) (emphasis added).[2] But EPA's supplemental response to comments is not new "information or data"—i.e., factual material—within the meaning of that provision. *See* Information, Webster's New Collegiate Dictionary (1976 ed.) ("knowledge obtained from investigation, study, or instruction"; "facts, data"). By design, the Supplement relies only on "information" (such as "technical literature" describing emissions limits that facilities have achieved, 89 FR 99,116) and "data" (like "recent ozone monitoring data" measured at individual receptors, *id.* 99,109) that was already in the record when the Rule was promulgated.[3] *Id.* 99,106.

---

[2] All statutory citations are to 42 U.S.C.

[3] Industry Petitioners (at 17) allege that the Supplement advances new arguments about issues other than severability. The arguments and cost-control estimates Petitioners cite, however, are not new. *Compare* 89 FR 99,123 tbl.I (*e.g.*, $2,900 in

Moreover, because § 7607(d)(6)(C) references only "information or data," the Court can consider material that is not "information or data" even if it postdates a rule's promulgation. § 7607(d)(6)(C). Had Congress wished to bar all materials postdating promulgation, it would have used the same broad language as used in other parts of the statute. *See City & Cnty. of San Francisco v. EPA*, 2025 WL 676441, at *6 (U.S. Mar. 4, 2025) ("'Congress acts intentionally and purposely in the disparate inclusion or exclusion' of language in a statute." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). For example, another provision requires inclusion in the rulemaking docket of certain "data, information, and *documents*" associated with a proposed rule. § 7607(d)(3) (emphasis added); *see* § 7607(d)(4)(B)(i) ("all documents" must be placed in the docket once available). The statute thus distinguishes "documents" from "information and data," and excludes "documents" from § 7607(d)(6)(C)'s reach. The Supplement is a "document," qualifying as either as two types of "documents": a "response to … comments," § 7607(d)(6)(C), or a "statement of basis and purpose," § 7607(d)(3).

---

2001$ for SCR for 4-stroke, lean burn gas engines), *with, e.g.*, EPA-HQ-OAR-2021-0668-1049 (*e.g.*, $4,013 in 2018$); *compare* 89 FR 99,125-26 n.59 (regarding tribal jurisdictions), *with* 88 FR 36,691-92 (same); *see also* 89 FR 99,116-17 (regarding control-cost methodology, including citations to the Rule and record). Moreover, new non-severability arguments would be irrelevant to the issue here of severability.

Nor does § 7607(d)(7)(A) bar this Court's consideration of the Supplement. *See* State Supp. 9. Section 7607(d)(7)(A) provides that "[t]he record for judicial review shall consist exclusively of the material referred to in" other provisions, including "statement[s] of basis and purpose" and "response[s] to … comments." § 7607(d)(6)(A)-(B). As explained, because the Supplement fits either description, it falls within the materials that the statute includes for judicial review. § 7607(d)(7)(A). And critically, neither § 7607(d)(7)(A) nor the provisions it refers to contain the temporal restrictions Petitioners urge.

Petitioners err in relying on a footnote in the Supreme Court's stay opinion because it is dicta that contradicts the Act. *Compare Ohio v. EPA*, 603 U.S. 279, 295 n.11 (2024) (suggesting the Act bars agency "explanations" post-dating promulgation), *with* § 7607(d)(6)(C) (barring "information or data" post-dating promulgation). Critically, *Ohio* did not involve remedy at all, much less explanatory remands. Such questions "neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 170 (2004) (quotation marks omitted). Moreover, the Supreme Court's order granting preliminary relief should not be considered "tantamount to [a] decision[] on the underlying merits." *Lackey v. Stinnie*, 2025 WL 594737, at *4 (U.S. Feb. 25, 2025) (quoting *University of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981)).

5

The Act's statutory and legislative history further confirm that the Act does not displace this Court's equitable authority to order explanatory remands. This Court's practice of remanding the record in Clean Air Act cases was common when Congress adopted § 7607(d) in the 1977 amendments.[4] Courts presume that "Congress legislates with a full understanding of existing law." *Am. Fed'n of Gov't Emps., Loc. 3295 v. Fed. Lab. Rels. Auth.*, 46 F.3d 73, 78 (D.C. Cir. 1995). Additionally, here, the House committee that drafted the 1977 amendments relied on an article that discussed favorably a line of cases where this Court remanded the record. H.R. Rep. 95-294, 318-19 (1977); Pedersen, *Formal Record and Informal Rulemaking*, 85 Yale L.J. 38, 74-78 (1975) (discussing *Portland Cement*, 486 F.2d 375, *Kennecott Copper*, 462 F.2d 846; and *International Harvester*, 478 F.2d 615). In the resulting legislation, Congress did not expressly forbid record remands in the 1977 amendments but instead preserved courts' flexibility to craft a remedy short of reversal. *See* § 7607(d)(9) (court "may," but not must, "reverse"); § 7607(d)(8) (deeming certain EPA errors harmless). Indeed, this Court continued its practice of remanding the record after the 1977 amendments[5]—and Congress again declined

---

[4] *See, e.g.*, *Kennecott Copper Corp. v. EPA*, 462 F.2d 846, 849 (D.C. Cir. 1972); *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 393, 393 n.66 (D.C. Cir. 1973); *Essex Chem. Corp. v. Ruckelshaus*, 486 F.2d 427, 432 (D.C. Cir. 1973); *International Harvester Co. v. Ruckelshaus*, 478 F.2d 615 (D.C. Cir. 1973).
[5] *See, e.g., Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. EPA*, 768 F.2d 385, 388 (D.C. Cir. 1985); Order, *United States Sugar Corp v. EPA*, No. 11-1108 (D.C Cir. May 15, 2014).

to forbid that practice when it amended the Act in 1990. *Cf. Lorillard v. Pons,* 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of … judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

Petitioners argue that explanatory remands violate the Act because Congress purportedly passed the 1977 amendments in response to concerns about violations of *SEC v. Chenery*, 318 U.S. 80 (1943). *See* State Supp. 9. Even if that were so, *but see* H.R. Rep. 95-294, 318 (identifying Act's failure to require "a clearly defined record" in informal rulemakings), *Chenery* "is not a time barrier which freezes an agency's exercise of its judgment … and bars it from further articulation of its reasoning." *Alpharma*, 460 F.3d at 6-7 (quotation marks omitted); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citing *Alpharma*, 460 F.3d at 5-6). As the Supreme Court has explained, explanatory remands in which an agency offers a fuller explanation of its reasoning "at the time of the agency action," do not present a *Chenery* problem. *Regents*, 591 U.S. at 20, 23 (quotation marks and emphasis omitted). Thus, *Chenery* would not bar this Court from considering the Supplement.

To be sure, explanatory remands have limits—in Clean Air Act cases and otherwise. For example, although an agency may provide a fuller explanation of its original reasoning, *id.* 20, or provide a previously absent explanation, *Schact v.*

*Liberman*, 103 F.4th 794, 797 (D.C. Cir. 2024), an agency may not offer "entirely new information critical to [its] determination." *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1338 (D.C. Cir. 2023) (quotation marks omitted); *accord* § 7607(d)(6)(C) (regarding post-promulgation "information or data"). Petitioners identify nothing in the Supplement that oversteps those limits. *Supra* pp.3-4.

## II.    The Supplement defeats Petitioners' severability arguments.

Petitioners continue to assert that the Rule is inseverable, but Petitioners misunderstand EPA's methodology, mischaracterize the record, or both.

First and fundamentally, Petitioners are simply wrong that EPA identified the Rule's final control stringency by projecting the proposed, twenty-three-State Rule's effect on air quality. *See* State Supp. 10-12; Industry Supp. 4-6. Instead, as the Supplement confirms, EPA identified the final control stringency based on a "*nationwide* assessment of air quality effects of different control stringencies." 89 FR 99,120 (emphasis added). Specifically, in identifying the final control stringency, EPA looked to all upwind States, of which there are twenty-eight, "regardless of whether or not they were included in the Rule," and each downwind State, for a total of thirty States (some States being both upwind and downwind). *Id.* 99,117, 99,120. The final control stringency is the stringency which, "appl[ied] … across all contributing States … plus [the downwind] home state," EPA determined would "reasonably address the 'significant contribution' of any

8

particular state." *Id.* 99,120. Because EPA's methodology did not depend on the Rule's application to any particular States, the final control stringency—and thus States' resulting emission reduction obligations—"stay[s] the same" as the number of States subject to the Rule changes. *Id.* 99,112.

Petitioners also argue that EPA might have identified a different final control stringency if it had examined a different number of States because the cost-benefit curve of various control stringencies may have looked different. *See* State Supp. 10-11. The Rule's final control stringency, however, depended neither on a particular set of States nor on any "knee" in the cost-benefit curve, and Petitioners' attempt to recast any "knee-in-the-curve" as a central feature of the Rule is contrary to the record. As explained, EPA did not rely on the Rule's coverage of any particular States to model the cost-benefit curve, so the cost-benefit curve would not have looked different under different permutations of covered States. Moreover, there is not one correct "knee-in-the-curve" (i.e., inflection point). 89 FR 99,118. Accordingly, EPA was clear that the "knee-in-the-curve" analysis was "not on its own a justification" in selecting the final control stringency but instead served only as "a useful indicator for informing potential stopping points" and confirming it had not overlooked any highly effective, low-cost control strategies. 88 FR 36,741; *id.* 36,741-48 & n.238; 89 FR 99,117, 99,120.

Petitioners fare no better in claiming that the Rule is inseverable because it is premised on a twenty-three-State trading program. Industry Supp. 15. Although EPA observed that a trading program has benefits (namely, providing compliance flexibility to regulated parties), *see* 89 FR 99,123, EPA explained that the number of States participating in the trading program was not material to the Rule's design. *Id.* That makes sense: as the record demonstrates, States do not trade—regulated sources do. EPA thus properly considered trading to be "fully implementable in each individual state," without participation from a minimum number of States.[6] 89 FR 99,112.

Industry Petitioners' argument (at 7-8) that the Rule is inseverable because it is premised on achieving a specific, cumulative air-quality benefit from twenty-three States also fails. Nowhere in the rulemaking did EPA target a specific tonnage of emission reduction or downwind improvement as "meaningful"—from twenty-three States or otherwise. Instead, EPA confirmed that the final control strategy, "if … applied uniformly" across upwind and downwind States, regardless of whether those States are included in the Rule, would result in "on average and in the aggregate, widespread reductions in ozone levels." 89 FR 99,110.

---

[6] Contrary to Industry Petitioners (at 16), the record supports EPA's observation that trading programs have worked with as few as one State. *See, e.g.*, 88 FR 36,813. The Group 1 program includes only Georgia. *E.g.*, EPA-HQ-OAR-2021-0668-0326 at 6.

Indeed, the heart of the Rule's methodological construct, approved in *EME Homer*, is a fair alignment of investments in pollution control across all upwind States, rather than any total amount of emission reductions.[7] 89 FR 99,118 (citing *EPA v. EME Home*r City, LP, 572 U.S. 489 (2014)). There is no serious dispute that the downwind ozone problem results from many small contributions, and that the inability to craft a perfect solution neither excuses any contributor from doing its part to reduce its emissions, nor renders meaningless the improvements that do occur. *Cf. Wisconsin v. EPA*, 938 F.3d 303, 322 (D.C. Cir. 2019) (EPA rule reasonable where regulated sources in State benefitted downwind air quality "by just two ten-thousandths of a part per billion"). The Act allows a downwind State to seek relief from even a *single upwind source* that contributes to its ozone problem, even if the source is not the but-for cause of nonattainment. § 7426(b). The same principle applies here.

Finally, Petitioners incorrectly argue that a separate methodological step, the screening assessment for industries other than power-plants, was based on analyzing emissions from the twenty-three States that the Rule was anticipated to cover. Industry Supp. 10-15. Instead, EPA looked to a "broadly representative" set

---

[7] Industry Petitioners (at 8-9) suggest this Court should not follow the statutory precedent of *EME Homer*, 572 U.S. 489 (2014), but offer no "special justification" to do so. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024).

of States—the twenty-seven States that were covered under a prior good neighbor rule—to identify "at the industry-level rather than … state-by-state" those industries with the potential for cost-effective emission reductions. 89 FR 99,121-22. Because the screening assessment made "industry-level" determinations based on a "broadly representative" set of States, the screening assessment "did not need to be redone on the basis of changes in the scope of [the Rule's] coverage." *Id.* And Petitioners offer no argument that these States were not "broadly representative and appropriate" for this limited industry-by-industry analysis. *Id.* The screening assessment, like the final control stringency, is "sound" for any grouping of states. *Id.* 99,122.

### III.    Petitioners are not entitled to another comment opportunity.

Industry Petitioners' argument (at 17-18) that they were denied the opportunity to comment on the Rule's severability directly conflicts with their prior contentions that EPA did not reasonably respond to their comments on severability. Industry Br. 22-23; Industry Reply 6-7 (quoting *Ohio*, 603 U.S. at 281). If this Court were to agree with Petitioners' prior assertion that commenters raised severability objections with reasonable specificity, then Petitioners have had their comment opportunity. But if the Court accepts Petitioners' current concession that commenters did *not* in fact raise these severability objections during the notice-and-comment period, as Respondent-Intervenors and EPA previously argued (NY

Br. 13-14; EPA Br. 31-34), then the Act bars the Court from considering those objections in this case. § 7607(d)(7)(B) (exhaustion requirements); *Ohio*, 603 U.S. at 305-06 (Barrett, J., dissenting); *see also U.S. Steel v. EPA*, Nos. 24-1172 and 24-1176 (D.C. Cir.) (reviewing EPA's denial of reconsideration petitions).

## CONCLUSION

This Court properly ordered a narrow remand of the record. This Court is entitled to consider EPA's response to that remand and should reject Petitioners' argument that the Rule is inseverable.

Dated: March 17, 2025

Noha Haggag
Vickie L. Patton
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
(202) 572-3286
nhaggag@edf.org
vpatton@edf.org

Megan M. Herzog
Sean H. Donahue
Donahue, Goldberg & Herzog
1008 Pennsylvania Avenue SE
Washington, DC 20003
(650) 353-8719
megan@donahuegoldberg.com
sean@donahuegoldberg.com

*Counsel for Environmental Defense
Fund*

Shaun A. Goho
Hayden Hashimoto
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
sgoho@catf.us
hhashimoto@catf.us

*Counsel for Citizens for Pennsylvania's
Future, Clean Air Council, Clean
Wisconsin, and the Ohio
Environmental Council*

Respectfully submitted,

/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 745-5227
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston,
Appalachian Mountain Club, Center for
Biological Diversity, Chesapeake Bay
Foundation, Downwinders at Risk,
Louisiana Environmental Action
Network, Sierra Club, Southern Utah
Wilderness Alliance, and Utah
Physicians for a Healthy Environment*

Zachary M. Fabish
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(650) 388-8446
zachary.fabish@sierraclub.org

Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
(415) 977-5704
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

14

FOR THE STATE OF
CONNECTICUT

WILLIAM TONG
Attorney General of
Connecticut

*/s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
Attorney General of the
District of Columbia

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street N.W., Ste 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR THE STATE OF
DELAWARE

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

*/s/ Jason E. James*
JASON E. JAMES
Assistant Attorney General
MATTHEW DUNN
Chief, Environmental Enforcement/
Asbestos Litigation Division
Illinois Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

FOR THE STATE OF
MARYLAND

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Michael F. Strande*
MICHAEL F. STRANDE
Assistant Attorney General
STEVEN J. GOLDSTEIN
Special Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 537-3412
michael.strande@maryland.gov
sgoldstein@oag.state.md.us

FOR THE STATE OF
NEW JERSEY

MATTHEW J. PLATKIN
Attorney General of New Jersey

*/s/ Nell Hryshko*
NELL HRYSHKO
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
nell.hryscko@law.njoag.gov

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Jillian M. Riley*
JILLIAN M. RILEY
JOHN S. CRAIG
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2424
jillian.riley@mass.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
  Attorney General
BARBARA D. UNDERWOOD
  Solicitor General

*/s/Claiborne E. Walthall*
JUDITH N. VALE
  Deputy Solicitor General
ELIZABETH A. BRODY
  Assistant Solicitor General
MORGAN A. COSTELLO
  Assistant Attorney General
CLAIBORNE E. WALTHALL
  Assistant Attorney General
The Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov

16

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53702-7857
Telephone: (608) 267-8904
Fax: (608) 267-2223
johnsonkarpg@doj.state.wi.us

FOR HARRIS COUNTY, TEXAS

CHRISTIAN MENEFEE
Harris County Attorney
JONATHAN FOMBONNE
First Assistant County Attorney
TIFFANY BINGHAM
Managing Counsel

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
Environmental Division Director
State Bar No. 24042075
1019 Congress, 15th Floor.
Houston, Texas 77002
Telephone: (713) 274-5124
Fax: (713) 437-4211
sarah.utley@harriscountytx.gov

FOR THE CITY OF
NEW YORK

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New
York

*/s/Christopher Gene King*
CHRISTOPHER GENE KING
Senior Counsel, Environmental Law
Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2074
cking@law.nyc.gov

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), D.C. Circuit Rule 32(e)(2)(C), and the Court's Order establishing the briefing format for supplemental briefing in this case, Doc#2093845 (Jan. 13, 2025), counsel hereby certifies that the foregoing Joint Supplemental Brief of State and Local Government Respondent-Intervenors and Public Interest Respondent-Intervenors contains 2,867 words, as counted by counsel's word processing system, and thus complies with the limit of 3,000 words. This document further complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: March 17, 2025

*/s/ Kathleen Riley*
Kathleen Riley