<u>**ORAL ARGUMENT SCHEDULED APRIL 25, 2025**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

STATE OF UTAH, et al.,

*Petitioners,*

v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY, et al.,

*Respondents.*

No. 23-1157 (and
consolidated cases)

**RESPONDENT-INTERVENORS' OPPOSITION TO EPA'S
MOTION FOR VOLUNTARY REMAND AND TO HOLD
CASES IN ABEYANCE [1]**

This motion marks the third recent attempt to hold these cases in

abeyance notwithstanding the serious harms that abeyance, combined

---

[1] This opposition is submitted on behalf of (i) State Respondent-Intervenors New York, Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, Wisconsin; the District of Columbia; Harris County, Texas; and the City of New York; (ii) Public Interest Respondent-Intervenors Air Alliance Houston, Appalachian Mountain Club, Center for Biological Diversity, Chesapeake Bay Foundation, Citizens for Pennsylvania's Future, Clean Air Council, Clean Wisconsin, Downwinders at Risk, Environmental Defense Fund, Louisiana Environmental Action Network, the Ohio Environmental Council, Sierra Club, Southern Utah Wilderness Alliance, Utah Physicians for a Healthy Environment, and; and (iii) Petitioner-Intervenor Sierra Club.

with the ongoing judicial stay of the underlying rule, would cause Respondent-Intervenors and Petitioner-Intervenor Sierra Club. This Court denied the two prior attempts. Because those harms will still occur, the Court should deny abeyance a third time.

Approximately one month ago, the United States Environmental Protection Agency (EPA) moved to put these cases into abeyance so that new agency leadership could review the underlying rule at issue. Resp'ts' Mot. to Hold Consolidated Cases in Abeyance, *Utah v. EPA*, No. 23-1157 (D.C. Cir. Feb. 6, 2025), Doc. No. 2099213 ("Feb. Mot."); *see* Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36654 (June 5, 2023) ("Good Neighbor Rule" or "Rule"). State Respondent-Intervenors and Wisconsin, in its capacity as Petitioner, opposed that motion, explaining that the Rule is stayed pending judicial review, *see Ohio v. EPA*, 603 U.S. 279, 300 (2024), and that even a short abeyance could impair the Court's ability to hold spring argument, and a longer abeyance could effectively nullify the Rule's critical and time-sensitive protections for downwind States. State Resp't-Intervenors' Opp'n to EPA's Mots. to Hold Cases in Abeyance, *Utah*, No. 23-1157 (D.C. Cir. Feb. 12, 2025), Doc. No. 2100268. Public Interest

Respondent-Intervenors and Petitioner-Intervenor Sierra Club also opposed an abeyance, noting the ongoing harms to public health during the Rule's stay and explaining that the Court had already considered arguments in December over whether to hold the case in abeyance—including arguments from Industry Petitioners related to the change in administration—but had ultimately declined to hold the cases in abeyance at that time. Opp'n of Public Interest Resp't-Intervenors & Pet'r-Intervenor Sierra Club to Resp'ts' Mots. to Hold Consolidated Cases in Abeyance and Extend Briefing Deadline, *Utah*, No. 23-1157 (D.C. Cir. Feb. 12, 2025) ("Public Interest Feb. Opp'n"), Doc. No. 2100349; *see* Order at 1, *Utah*, No. 23-1157 (D.C. Cir. Jan. 13, 2025), Doc. No. 2093845 (declining to hold cases in abeyance). The Court denied EPA's February motion for an abeyance and scheduled oral argument for April 25, 2025. Order at 1, *Utah*, No. 23-1157 (D.C. Cir. Feb. 21, 2025), Doc. No. 2102088; Order, *Utah*, No. 23-1157 (D.C. Cir. Feb. 24, 2025), Doc. No. 2102328.

Less than three weeks later, EPA filed the instant motion seeking a voluntary remand of the Rule and asking this Court to retain jurisdiction and to hold the cases in abeyance during the pendency of the remand. Resp'ts' Mot. for Remand at 1, 9-10, *Utah*, No. 23-1157 (D.C. Cir. Mar.

10, 2025), Doc. No. 2104881 ("Mot."). As this Court has previously observed, seeking a voluntary remand while the Court retains jurisdiction is the functional equivalent of seeking an abeyance—the precise relief that this Court just denied. *See* Order, *Newburgh Clean Water Project v. EPA*, No. 21-1019 (D.C. Cir. Feb. 1, 2023), Doc. No. 1984197. Because EPA seeks the same relief that this Court has twice denied in as many months, and because EPA does not satisfy the "extraordinary cause" required for continuance of a scheduled argument, D.C. Cir. R. 34(g), the Court should deny EPA's successive motion and retain the current schedule, including the April 25, 2025, oral argument date.

Circumstances have not materially changed since EPA made its prior request. Like EPA's prior abeyance motion, EPA's current motion represents only that EPA "intends to review and *potentially* revise" the Rule (Mot. at 8 (emphasis added)), and does not commit to completing the review and potential revision by any firm deadline.[2] Further, the same

---

[2] *See also id.* at 5 (same), 6 (seeking remand so EPA may "reconsider *whether* the Rule aligns with this administration's policy objectives" (emphasis added)), 7 (noting that new agency leadership's review is "just beginning"); Decl. of Abigale Tardif (Tardif Decl.) ¶ 20, *Utah*, No. 23-1157 (D.C. Cir. Mar. 10, 2025), Doc. No. 2104881 (discussing possible timeline

*(continued on the next page)*

timing concerns that caused the Court to reject EPA's prior abeyance motion and to schedule spring argument are still present, only with greater force, as EPA has now disclaimed (Mot. at 7) that it could conduct review expeditiously enough to be finished before the next attainment deadline that downwind States need to meet. See *infra* at 14-15.

The equities remain heavily in favor of denial. State Respondent-Intervenors have already been irreparably harmed by the judicial stay of the Rule, and further delay of this litigation threatens additional, escalating harms. As explained further below (and in State Respondent-Intervenors' opposition to EPA's prior abeyance request), without the Rule, cross-state emissions will increase ozone pollution measured in State Respondent-Intervenors' jurisdictions during the 2025 and 2026 ozone seasons. These measurements, along with data already measured in 2024, determine whether State Respondent-Intervenors can meet mandatory statutory deadlines to attain federally mandated limits on ozone pollution, or whether they will instead face reclassification to a more severe level of nonattainment—a one-way ratchet that carries legal consequences for a

---

"[*i*]*f* EPA ultimately determines that it would be appropriate to revise the Rule" (emphasis added)).

State and its sources. Similarly, Public Interest Respondent-Intervenors and Petitioner-Intervenor Sierra Club have now explained twice that "any further delay in the resolution of these cases prejudices them because the 'rule under review will result in significant air quality and public health improvements' but is 'stayed pending the conclusion of judicial review." Public Interest Feb. Opp'n 2 (quoting and citing Joint Mot. to Govern Future Proceedings 1-2, 8-10, *Utah*, No. 23-1157 (D.C. Cir. Dec. 13, 2024), Doc. No. 2089561. Indeed, EPA acknowledged these precise harms to downwind States and public health in December, when it opposed further abeyance because the consequences of "further delay are substantial." Mot. to Govern Further Proceedings 8, 11-12, *Utah*, No. 23-1157 (D.C. Cir. Dec. 13, 2024), Doc. No. 2089570 ("EPA Mot. to Govern").

By contrast, there is no prejudice to EPA from continuing with this litigation while it conducts its review of the Rule. Nothing about the litigation prevents EPA from moving forward with its plan to review the Rule—or even from proposing a new rule. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 14 (D.C. Cir. 2017) (EPA free to reconsider rules at any time); *cf. American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 541-42 (1970) (judicial review proceedings did not divest agency of jurisdiction

to reconsider action). And although EPA says that it is "not prepared to make representations to this Court concerning its position on the Rule" (Mot. 8.), that fact alone should not prevent other parties, including Respondent-Intervenors, from vigorously defending their own rights as direct beneficiaries of the Rule and from moving toward lifting the stay—particularly where the case is fully briefed on the merits, with only two supplemental reply briefs due on March 27, and has been scheduled for oral argument.

Finally, holding this case in abeyance indefinitely—certainly into 2026 under EPA's non-binding declaration—to allow for reconsideration would, under *Ohio*'s terms, transform a stay of the Rule's protections pending judicial review into a suspension of the Rule pending rescission, without either judicial review or administrative processes, including the notice-and-comment procedures ordinarily required to alter or rescind a duly promulgated Rule.[3] Such an end-run around required procedures is

---

[3] Indeed, notwithstanding the careful language of EPA's current motion (see *supra* n.2 and accompanying text), recent statements from EPA Administrator Lee Zeldin call into question whether this language is reliable, and whether EPA has instead prejudged the outcome of its review. *See* EPA, EPA Launches Biggest Deregulatory Action in U.S.

(*continued on the next page*)

even more inappropriate in light of the Clean Air Act's substantive command that EPA regulate cross-state pollution in advance of statutory attainment deadlines faced by downwind States—as EPA has previously acknowledged. *See Wisconsin v. EPA*, 938 F.3d 303, 317-18 (D.C. Cir. 2019); *see* EPA Mot. to Govern at 10-12 (acknowledging statutory duty to promulgate remedy prior to attainment deadlines). Because EPA's proposed timetable would foreclose relief by the next statutory attainment deadline, the equities weigh decisively against remand.

## REASONS TO DENY THE MOTION

As this Court has explained, when an agency seeks voluntary remand of an administrative action and asks a reviewing court to retain jurisdiction over the corresponding petitions for review, the agency is, in sum and substance, asking for an abeyance. *See* Order, *Newburgh Clean Water Project v. EPA*, No. 21-1019 (D.C. Cir. Feb. 1, 2023), Doc. No. 1984197. In considering a motion for an abeyance, in turn, this Court considers whether the need of the party seeking deferral "overrides the

---

History (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history (proposing "Ending so-called 'Good Neighbor Plan" [*sic*]).

injury to the parties being stayed." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971); *see id.* at 786-87 (applying standard from *Landis v. North Am. Co.*, 299 U.S. 248 (1936)). Further, where an agency seeks a voluntary remand, the court likewise considers "whether remand would unduly prejudice the non-moving party." *Utility Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). A voluntary remand may not function "as a dismissal of a party's claims" or deprive a party of its "opportunity to vindicate its statutory rights." *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 386, 388 (D.C. Cir. 2017).

Here, granting an abeyance of the litigation will harm Respondent-Intervenors and deprive them of any meaningful opportunity to lift the judicial stay and vindicate their rights under the Clean Air Act. *See Landis*, 299 U.S. at 255. EPA has now represented that, even if review is conducted "expeditiously," EPA will be unable to finalize *any* rule capable of providing relief from cross-state ozone pollution before late 2026. Because the ozone season runs from May 1 to September 30, a rule promulgated in late 2026 would not begin preventing harmful air pollution until May 1, 2027. Every day the Rule remains stayed, it results in none of the pollution reductions the Act requires. Respondent-Intervenors'

members and residents thus breathe in more pollution, which damages their lungs, forces them and their families to seek medical treatment, and endangers their lives.

In addition to harming public health, such delay will, at minimum, foreclose time-sensitive emissions reductions that downwind States and localities urgently need for the 2025 and 2026 ozone seasons. Moreover, because the current Good Neighbor Rule grants sources substantial lead time (three years) to install certain pollution-control equipment, further delay could mean that Respondent-Intervenors will not receive full protections against cross-state ozone pollution until 2029 or later, contrary to the Clean Air Act's mandate.

Sierra Club, in its capacity as Petitioner-Intervenor, also faces unique harm from continued abeyance. Sierra Club argues that the Rule under-controls ozone pollution resulting from upwind State air emissions and seeks relief that would expand the already significant health and regulatory benefits of the Rule. Further delay occasioned by abeyance while the Rule remains stayed would deprive Petitioner-Intervenor Sierra Club of its opportunity to vie for relief, thus severely prejudicing its interests—particularly where EPA's motion does not state whether it

10

intends to address Petitioner Wisconsin's claims in its planned reconsideration. *See* Joint Mot. to Govern Future Proceedings of State & Local Gov't Resp't-Intervenors, Public Interest Resp't-Intervenors, Pet'r State of Wis., & Pet'r-Intervenor Sierra Club at 10, *Utah*, No. 23-1157 (D.C. Cir. Dec. 13, 2024), Doc. No. 2089561.

By way of background, consistent with the "good neighbor provision" of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), the Good Neighbor Rule represents EPA's exercise of its nondiscretionary duty to protect State Respondent-Intervenors and other "downwind" jurisdictions from out-of-state pollution that they cannot control, to protect the health of the people living and working in those downwind areas. *See Ohio*, 603 U.S. at 283-84. For years, State Respondent-Intervenors have worked diligently to reduce emissions from their in-state sources, typically by requiring the installation and operation of emissions-control technology, whereas many other States have allowed their in-state sources to continue emitting ozone-forming pollution at high rates, without employing such technol-

ogy.[4] *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 519 (2014). Pollution from these "upwind" sources flows into State Respondent-Intervenors' jurisdictions, necessitating even more emissions-control technologies and other in-state reduction measures to offset it. *See id.* The Good Neighbor Rule is designed to address good-neighbor requirements by limiting these upwind emissions, and to restore equity by ensuring that all low-hanging fruit (in the form of cost-effective pollution-reduction measures) is exhausted before costlier solutions are required. *See id.*; *see also* 88 Fed. Reg. at 36691 (Rule stops upwind States "that have not yet implemented pollution controls of the same stringency as their neighbors . . . from free riding on their neighbors' efforts to reduce pollution").

Critically, EPA's statutory duties are both nondiscretionary and subject to statutory deadlines. As this Court has explained, EPA must ensure it remediates cross-state pollution in time for downwind States to meet mandatory deadlines under the Act, called "attainment deadlines."

---

[4] To illustrate, under the Rule, EPA estimated that sources in Ohio could lower their ozone-forming emissions in 2023 by 1,154 tons by installing or running basic control equipment, while sources in New York could reduce such emissions by only 64 tons because they already have installed and operate stringent controls. *See* 88 Fed. Reg. at 36,737, tbl. V.C.1-1.

88 Fed. Reg. at 36690; *see Wisconsin*, 938 F.3d at 318 (statute requires good neighbor rules to align with attainment deadlines). Each time that EPA promulgates a more stringent federal air quality standard for ozone, which here occurred in 2015, States must demonstrate "attainment" of that standard by a date certain—or face reclassification to a higher level of nonattainment, with another corresponding attainment deadline. 42 U.S.C. § 7511; *see* Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications Approach, 83 Fed. Reg. 10376, 10380 (Mar. 9, 2018) (setting attainment deadlines for 2015 ozone standard). Failure to meet attainment deadlines requires a State to implement progressively costlier and more stringent measures to reduce ozone until it reaches attainment. *See* 42 U.S.C. § 7511a. If nonattainment persists, consequences can include statutory penalties assessed against pollutant sources. *Id.* § 7511d.

Because of the Act's attainment deadlines, the judicial stay in this litigation has already irreparably harmed State Respondent-Intervenors. For example, while this case has been pending, Wisconsin's nonattainment areas have been reclassified, or "bumped up," to a "Serious" nonattainment designation with more stringent requirements that may

13

not sufficiently improve air quality and will continue to impose economic hardship. *See, e.g.*, Findings of Failure to Attain and Reclassification of Areas in Illinois, Indiana, Michigan, Ohio, and Wisconsin as Serious for the 2015 Ozone National Ambient Air Quality Standards, 89 Fed. Reg. 101901, 101901 (Dec. 17, 2024). Several other State Respondent-Intervenors also had their nonattainment areas reclassified to "Serious" during this litigation, due in large part to ozone pollution from upwind States and years of delay by EPA in issuing a rule to remedy this cross-state pollution.[5]

A prolonged remand, and thus a further, yearslong delay of the Rule's protections, would further severely prejudice State Respondent-Intervenors by jeopardizing their ability to meet future attainment deadlines. The next attainment deadline is August 3, 2027, for States with areas that are in "Serious" nonattainment. *See* Good Neighbor Rule, 88 Fed. Reg. at 36657. Ozone attainment for this deadline is calculated

---

[5] *See* EPA, Green Book, *8-Hour Ozone (2015) Federal Register Notice Classification Changes* (Feb. 28, 2025), https://www3.epa.gov/airquality/greenbook/jfr2rpt2.html (listing areas in New York and other State Respondent-Intervenors that were reclassified to "serious" nonattainment).

by averaging air-quality measurements that are taken during the ozone season in each of the three preceding calendar years—2024, 2025, and 2026. *See id.* at 36692; Data Reporting and Data Handling Conventions, 40 C.F.R. pt. 50 app. U, § 3(e). Because of the Supreme Court's stay, higher ozone levels measured in State Respondent-Intervenors' jurisdictions during the 2024 ozone season are already locked into the attainment calculation for 2027.[6] Downwind States thus urgently need relief from interstate pollution during the 2025 and 2026 ozone seasons to have a chance at demonstrating attainment.

If States cannot meet the "Serious" nonattainment deadline in 2027, they will be reclassified to "Severe" or even "Extreme" nonattainment. These classifications carry tremendous burdens for the reclassified nonattainment areas, including extremely stringent pollution-control regulations, restrictions on new construction and development, and burdensome planning and reporting requirements. *See* 42 U.S.C. § 7511a(d)-(e);

---

[6] *See* EPA, *Air Data – Ozone Exceedances* (last updated June 27, 2024), https://www.epa.gov/outdoor-air-quality-data/air-data-ozone-exceedances (interactive data); *see, e.g.*, EPA, *2024 Ozone Exceedances (New England)* (Nov. 10, 2024), https://webcf.waybackmachine.org/web/20250202030258/https:/www.epa.gov/AQNE/2024-ozone-exceedances (archived page).

*see also id.* § 7511d (discussing statutory penalties). And because of the Clean Air Act's requirements, these restrictions do not dissolve automatically even after the area reaches attainment. Instead, a State must affirmatively ask EPA to remove them, and EPA may do so only if the State successfully demonstrates that their removal will not interfere with continued attainment. *See id.* §§ 7410(*l*), 7505a(a) (discussing requirements for plans after area reaches attainment).

A remand would not only jeopardize State Respondent-Intervenors' ability to meet impending attainment deadlines but also place Respondent-Intervenors "between a remand and a hard place," as remand pending reconsideration of the Rule would effectively foreclose the stay from being lifted. *See Limnia*, 857 F.3d at 388. The judicial stay gives Respondent-Intervenors concrete interests in obtaining resolution of these petitions and ultimately lifting the stay. Remand would "function[] as a dismissal" of these interests and any possible relief. *See id.* at 381. Indeed, when a judicial stay has been entered, it is typically *expedition* (rather than delay) that is appropriate. *See* D.C. Cir. Handbook of Practice and Internal Procedures VIII(B) (recognizing that, upon disposing of motion for stay

16

pending appeal, expedited review may be appropriate "to minimize possible harm to the parties or the public").

By contrast, there is no prejudice to EPA or petitioners from denying an abeyance. The pending litigation does not prevent EPA from reviewing the Rule as the litigation proceeds and determining whether to initiate any notice-and-comment rulemaking. Review of existing regulations in light of new or changed policy priorities is a routine component of agency work, and there is no basis to further delay litigation about a duly enacted regulation while such work is ongoing. *Cf. Clean Air Council*, 862 F.3d at 14. And because the Rule is stayed, proceeding with the litigation will not impose on those Petitioners who claim that the Rule is overly stringent any of the harms they claimed would result from the Rule.

The remand proposed by EPA is inappropriate for the independent reason that it would constitute an abuse of the interim stay entered by the Supreme Court. The Supreme Court's four-factor stay analysis, and its resulting stay order, in *Ohio* expressly contemplated that the case would be adjudicated on the merits. *See Ohio*, 603 U.S. at 291-92. A prolonged remand while the interim stay remains in effect would function to suspend a duly promulgated rule without it having been reviewed on the

merits by a court and without any of the normally required public process or procedure that accompanies an administrative suspension (such as a notice-and-comment rescission). The Court should not condone EPA's attempt to bootstrap the federal courts' equitable authority to enter an interim stay during judicial review into an opportunity to skirt the agency's administrative law duties and public process requirements.

Concerns about prolonging an already damaging stay are especially pronounced in the context of the Clean Air Act, which imposes a strict, three-month time limit on stays associated with administrative reconsideration, reflecting the value Congress placed on public health protections. 42 U.S.C. § 7607(d)(7)(B); *cf. Clean Air Council*, 862 F.3d at 1, 5-6, 9, 14 (rejecting EPA's attempt to grant three-month stay despite non-satisfaction of statutory conditions); *Air Alliance Houston v. EPA*, 906 F.3d 1049, 1060-61 (D.C. Cir. 2018) (rejecting EPA's attempt to evade section 307(d)(7)(B)'s three-month time limit). This Court should not allow EPA to leverage an interim judicial stay to accomplish a prolonged administrative stay—which the agency could not do under the statute.

EPA's remaining arguments are unavailing. Contrary to EPA's representations (Mot. at 6, 8-9), an agency is not entitled to a remand

merely because it expresses its intent to review the underlying rule. Instead, in that situation, an agency's request for a voluntary remand is subject to a court's "broad discretion."[7] *Limnia*, 857 F.3d at 381; *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). A court must consider whether the agency raises "substantial and legitimate concerns," *SKF USA*, 254 F.3d at 1029, as well as the "practical effect" of any remand order, *see Limnia*, 857 F.3d at 385; *see also Dellinger*, 442 F.2d at 787. Notably, EPA's prior February motion likewise indicated that EPA planned to review the Rule and argued for an abeyance on those grounds (*see* Feb. Mot. 1, 3-4), and this Court rejected those arguments. Re-raising identical arguments does not present the type of "substantial and legitimate" concerns that justify a remand.

---

[7] EPA's cited cases (Mot. at 5-6) are distinguishable because, in each of those cases, EPA sought remand after confessing error. *See California Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *Ethyl Corp. v. Browner*, 989 F.2d 522, 523 (D.C. Cir. 1993); *see also SKF USA*, 254 F.3d at 1028 (error confessed by Department of Commerce). Moreover, in *California Communities*, all parties agreed to remand, 688 F.3d at 991, and in both *California Communities* and *Ethyl Corporation*, there is no indication that the underlying action was stayed pending review, 688 F.3d at 992; 989 F.2d at 523; *see* Docket, *California Cmtys.*, No. 11-71127 (9th Cir.).

Finally, granting an abeyance would also be highly inefficient in this case, which is already calendared for argument on April 25, 2025. Several motions panels of this Court have already invested significant resources in this case, including two motions panels that recently declined to hold these cases in abeyance. See *supra* at 3. Moreover, the parties have already completed their principal merits briefing, and are close to completing the limited supplemental briefing recently ordered by the court, with only supplemental reply briefs remaining to be submitted on March 27. The inefficiencies would be further compounded here because EPA has not sought any relief with respect to two related cases—*United States Steel Corp. v. EPA*, No. 24-1172 (D.C. Cir.), and *Hybar LLC v. EPA*, No. 24-1176 (D.C. Cir.)—which are fully briefed and which the Court ordered should be calendared for argument on the same day as *Utah*. The Court should maintain the current schedule and argument on April 25.

20

## CONCLUSION

The Court should deny EPA's motion.

Dated: New York, New York
      March 20, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
  *Assistant Attorneys General*
  *Environmental Protection Bureau*

*/s/Elizabeth A. Brody*[8]
  ELIZABETH A. BRODY
  *Assistant Solicitor General*

Office of the Attorney General
28 Liberty Street, 23rd Floor
New York, NY 10005
(212) 416-6167
elizabeth.brody1@ag.ny.gov

(*Counsel listing continues on next page.*)

---

[8] Counsel for the State of New York certifies that the other parties listed in the signature blocks consent to this filing.

WILLIAM TONG
*Attorney General*
*State of Connecticut*

*/s/ Jill Lacedonia*
JILL LACEDONIA
*Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
*Solicitor General*
400 6th Street N.W., Suite 8100
Washington, DC 20001
(202) 724-6609
caroline.vanzile@dc.gov

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*

/s/ *Vanessa L. Kassab*
IAN R. LISTON
VANESSA L. KASSAB
*Deputy Attorneys General*
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov

KWAME RAOUL
*Attorney General*
*State of Illinois*

*/s/Jason E. James*
JASON E. JAMES
*Assistant Attorney General*
MATTHEW DUNN
*Chief, Environmental*
*Enforcement/Asbestos Litigation*
*Division*
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

*(Counsel listing continues on next page.)*

22

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*

*/s/ Michael F. Strande*
MICHAEL F. STRANDE
*Assistant Attorney General*
STEVEN J. GOLDSTEIN
*Special Assistant Attorney*
*General*
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3421
Michael.strande@maryland.gov
sgoldstein@oag.state.md.us

ANDREA JOY CAMPBELL
*Attorney General*
*State of Massachusetts*

*/s/ Jillian M. Riley*
JILLIAN M. RILEY
JOHN S. CRAIG
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
(617) 963-2424
jillian.riley@mass.gov

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*

*/s/Nell Hryshko*
NELL HRYSHKO
*Deputy Attorney General*
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
nell.hryshko@law.njoag.gov

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP
*Assistant Attorney General*
Post Office Box 7857
Madison, WI 53702
(608) 267-8904
(608) 267-2223 (*f*)
johnsonkarpg@doj.state.wi.us

*(Counsel listing continues on next page.)*

MURIEL GOODE-TRUFANT
*Corporation Counsel*

*/s/ Christopher Gene King*
CHRISTOPHER GENE KING
*Senior Counsel,*
*Environmental Law Division*
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2074
cking@law.nyc.gov

CHRISTIAN MENEFEE
*Harris County Attorney*
JONATHAN FOMBONNE
*First Assistant County Attorney*
TIFFANY BINGHAM
*Managing Counsel*

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
*Environmental Division Director*
1019 Congress, 15th Floor
Houston, TX 77002
(713) 274-5124
(713) 437-4211 (*f*)

(*Counsel listing continues on next page.*)

ENVIRONMENTAL DEFENSE FUND

*/s/ Megan M. Herzog*
MEGAN M. HERZOG
SEAN H. DONAHUE
Donahue, Goldberg & Herzog
1008 Pennsylvania Avenue SE
Washington, DC 20003
(650) 353-8719
megan@donahuegoldberg.com
sean@donahuegoldberg.com

VICKIE L. PATTON
NOHA HAGGAG
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
(202) 572-3286
vpatton@edf.org
nhaggag@edf.org

CITIZENS FOR PENNSYLVANIA'S
FUTURE, CLEAN AIR COUNCIL, CLEAN
WISCONSIN, AND THE OHIO
ENVIRONMENTAL COUNCIL

*/s/ Shaun A. Goho*
SHAUN A. GOHO
HAYDEN HASHIMOTO
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
sgoho@catf.us
hhashimoto@catf.us

AIR ALLIANCE HOUSTON,
APPALACHIAN MOUNTAIN CLUB,
CENTER FOR BIOLOGICAL
DIVERSITY, CHESAPEAKE BAY
FOUNDATION, DOWNWINDERS AT
RISK, LOUISIANA ENVIRONMENTAL
ACTION NETWORK, SIERRA CLUB,
SOUTHERN UTAH WILDERNESS
ALLIANCE, AND UTAH PHYSICIANS
FOR A HEALTHY ENVIRONMENT

*/s/ Seth L. Johnson*
SETH L. JOHNSON
KATHLEEN L. RILEY
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 797-5245
(202) 745-5227
sjohnson@earthjustice.org
kriley@earthjustice.org

SIERRA CLUB

*/s/ Zachary M. Fabish*
ZACHARY M. FABISH
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(650) 388-8446
zachary.fabish@sierraclub.org

JOSHUA D. SMITH
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
(415) 977-5704
joshua.smith@sierraclub.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing State Respondent-Intervenors' Opposition to EPA's Motion for Voluntary Remand contains 3,871 words, excluding exempted portions, and was composed in double-spaced, 14-point Century Schoolbook font. I certify that the foregoing complies with applicable type-volume and typeface requirements. I further certify, consistent with D.C. Circuit R. 32(a)(2) that all parties listed in the signature blocks consent to this filing.

/s/ *Elizabeth A. Brody*

Dated: March 20, 2025                    Elizabeth A. Brody

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I have served the foregoing State Respondent-Intervenors' Opposition to EPA's Motion for Voluntary Remand on all registered parties through the Court's electronic case filing (CM/ECF) system.

/s/ *Elizabeth A. Brody*
Elizabeth A. Brody