SCHEDULED FOR ORAL ARGUMENT ON APRIL 25, 2025

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF UTAH, *et al.*, | ) |
| | ) |
| *Petitioners*, | ) |
| | ) |
| v. | ) No. 23-1157, and |
| | ) consolidated cases |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | ) |
| | ) |
| | ) |
| *Respondents*. | ) |
| | ) |

## INDUSTRY PETITIONERS' JOINT RESPONSE IN SUPPORT OF RESPONDENTS' MOTION FOR REMAND

### INTRODUCTION

Industry Petitioners agree with the U.S. Environmental Protection Agency and Administrator Lee Zeldin (collectively, "EPA" or "Respondents") that this Court should remand without vacatur the *Federal Good Neighbor Plan for the 2015 Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 36,654 (June 5, 2023) (the "Rule") because of new agency leadership's decision to reconsider key elements of the Rule and the underlying state implementation plan ("SIP") disapprovals that form the legal predicate for the Rule. *See* EPA Mot. 5–7; Tardif Decl. ¶ 19.

Respondents' Motion For Remand (ECF 2104881) is correct that remand without vacatur serves judicial economy and is well supported by past precedent.

Further, remand without vacatur will not prejudice State Respondent-Intervenors nor Public Interest Respondent-Intervenors because the Rule is already stayed. And even if this Court were ultimately to uphold the current Rule, and the Supreme Court were to deny certiorari, little to no emissions reductions would result, because the Rule's compliance timelines have been tolled during the stay, and any nearer-term reduction requirements would be negligible.

## BACKGROUND

EPA's Motion For Remand and the Declaration of Ms. Abigale Tardif set forth the relevant factual and legal background.

## REASONS TO GRANT THE MOTION

EPA's Motion For Remand should be granted for the following reasons: (1) this and other courts routinely and consistently grant voluntary remand when an agency intends to reconsider a prior action, including when such reconsideration is driven by policy changes; (2) remand without vacatur serves judicial economy; and (3) Respondent-Intervenors' claims of prejudice are overblown.

**I.   Remand Without Vacatur is Consistent with Past Precedent.**

As EPA explains, the agency will reconsider the Rule, and in so doing, will revisit the Rule's core legal and policy conclusions. EPA Mot. 5; Tardif Decl. ¶¶ 19–21. Further, EPA commits to completing its reconsideration and issuing a final rule

on reconsideration by the Fall of 2026. EPA Mot. 7; Tardif Decl. ¶ 21. This Court regularly grants agencies' requests for voluntary remand in similar circumstances.

"A remand is generally required," where, as here, an "intervening event may affect the validity of the agency action." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028–29 (Fed. Cir. 2001) (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (noting "the tradition of allowing agencies to reconsider their actions where events pending appeal draw their decision in question")). The court in *SKF USA Inc.* explained that in the case of remand where an agency intends to reconsider (but does not confess error), a remand is appropriate "if the agency's concern is substantial and legitimate." 254 F.3d at 1029. In the case of policy change, "remand to the agency is required, absent the most unusual circumstances verging on bad faith." *Id.* at 1029–30. Applying this framework, the Federal Circuit reversed the Court of International Trade's decision denying the agency's remand request where the agency "believe[d] that its original decision [was] incorrect on the merits and wish[ed] to change the result." *Id.* at 1029–30. Here, EPA has similarly requested remand to consider whether error exists in the current Rule. EPA Mot. 7.

And, courts favor remand for reconsideration following a shift in policy or change in administration. *See Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's

3

reappraisal of the costs and benefits of its programs and regulations." (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part)).[1]

This Court has occasionally expressed skepticism about granting voluntary remand where EPA had neither sufficiently "explained why it seeks remand" nor "committed to a course of action" that it would take on remand. *Clean Wis. v. EPA*, 964 F.3d 1145, 1175–77 (D.C. Cir. 2020) (citation omitted). Even in that case, however, this Court granted remand. And here, EPA has *expressly* "explained why it seeks remand" and "committed to a course of action": EPA intends to reconsider core elements of the Rule and the underlying SIP disapprovals, and has committed to move expeditiously by issuing a proposed "rulemaking by early in calendar year 2026" and promulgating a final rule "signed by Fall of 2026." EPA Mot. 7; Tardif Decl. ¶ 21.

---

[1] *See also Ctr. for Biological Diversity v. Haaland*, 641 F. Supp. 3d 835, 841–43 (N.D. Cal. 2022) (granting voluntary remand based on policy change due to change in Administration); *Pascua Yaqui Tribe v. EPA*, 557 F. Supp. 3d 949, 953–54 (D. Ariz. 2021) (same); *Navajo Nation v. Regan*, 563 F. Supp. 3d 1164, 1165–67 (D.N.M. 2021) (granting voluntary remand where the agencies initiated a new rulemaking in response to Executive Order 13,990 issued by President Biden); *Organic Trade Ass'n v. USDA*, No. 17-1875, 2022 WL 951335, *5, *9 (D.D.C. Mar. 30, 2022) (granting voluntary remand so that the agency could "reconsider the the prior Administration's interpretation").

4

The circumstances of this case have now substantially changed since EPA's request for abeyance filed on February 6, 2025, ECF 2099213. At that time, EPA requested limited abeyance in order to provide agency leadership time to familiarize themselves with the Rule. EPA Mot. 4. EPA leadership has since done so; and they have decided to reconsider it. *Id.* at 5; Tardif Decl. ¶¶ 18–19. Remand is appropriate.[2]

## II. Remand also Saves Parties'—And this Court's—Resources.

When an agency does change its policy or has concerns regarding error of its action under review, it is far more efficient for the court and for all parties involved to allow voluntary remand. Here, in addition to Principal Deputy Assistant Administrator Tardif's Declaration, EPA Administrator Lee Zeldin has announced that EPA will "tackl[e] the troubled 'Good Neighbor Plan'" by "advanc[ing] cooperative federalism and work[ing] with states on [SIPs] that were nearly universally rejected . . . ." EPA, *Trump EPA Announces Plan to Work with States on SIPs to Improve Air Quality and Reconsider "Good Neighbor Plan,"* (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-announces-plan-work-states-

---

[2] Industry Petitioners opposed the EPA's earlier request for voluntary remand filed on August 5, 2024 (ECF 2068299), in very different circumstances. EPA's August 2024 request was so that it could gap-fill data and information in the record, contrary to 42 U.S.C. § 7607(d)(6)(C) and without allowing for comments. With this requested remand, EPA now plans to conduct an entirely new rulemaking process—with notice and comment—that would result in a new rule and would be procedurally proper under § 7607.

5

sips-improve-air-quality-and-reconsider-good.[3] The press release announces a clear shift in policy, explaining that EPA is working to reconsider the Rule. Courts have recognized this as reason enough to grant voluntary remand.

Indeed, citing to efficiency and judicial economy, the Sixth Circuit granted EPA's request for voluntary remand without vacatur where the Biden Administration's EPA intended to reevaluate a determination that a certain provision of a state air plan was properly removed. *See Sierra Club v. EPA*, 60 F.4th 1008, 1020–23 (6th Cir. 2023); *see also Ethyl Corp.*, 989 F.2d at 524 (the court "commonly grant[s] such motions" to avoid "wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete"). The court explained that, as here, both petitioners and the agency (but not the respondent-intervenor) agreed that remand was appropriate and that the issues EPA intended to analyze on reevaluation were "at the heart of th[e] case." *Sierra Club*, 60 F.4th at 1021.[4] "Because it would conserve the court's and parties' resources and would

---

[3] *See also* EPA, *Good Neighbor Plan (GNP): Powering the Great American Comeback Fact Sheet*, https://www.epa.gov/system/files/documents/2025-03/good-neighbor-plan_powering-the-great-american-comeback_fact-sheet.pdf (last visited Mar. 19, 2025).

[4] *See also Ctr. for Biological Diversity*, 641 F. Supp. 3d at 841–43 (granting voluntary remand based on policy change due to change in Administration); *Navajo Nation*, 563 F. Supp. 3d 1164, 1165–67 (granting voluntary remand where the agencies initiated a new rulemaking in response to Executive Order 13,990 issued by President Biden).

6

serve judicial efficiency," the court remanded the action. *Sierra Club*, 60 F.4th at 1021; *see also Citizens Against Pellissippi Parkline, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (reversing district court denial of voluntary remand and explaining that "courts should permit [voluntary] remand in the absence of apparent or clearly articulated countervailing reasons").

Also citing efficiency and judicial economy, the Ninth Circuit likewise granted an EPA request for voluntary remand without vacatur in *NRDC v. EPA*, 38 F.4th 34 (9th Cir. 2022). There, even though EPA had not "conceded error nor given any clear indication of how it will proceed on remand," the court granted EPA's request to avoid the inefficiency of "fully litigating the issues." *Id.* at 60–61. *See also Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) ("[C]ourts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith."). Applying these precedents here, where EPA has explained it is undertaking the reconsideration "in good faith to allow the new administration to implement its policies while conserving the resources of this Court and the Parties," EPA Mot. 1; *see also id.* at 8, remand makes good sense and is compelled by this Court's precedent and is supported by other courts' decisions.

State Respondent-Intervenors and Public Interest Respondent-Intervenors argue that there would be no prejudice to this Court, EPA, or Petitioners from completing supplemental briefing and taking the case to oral argument. *See* State

7

Respondent-Intervenor Opp. to Mot. for Abeyance 12, ECF 2100268 (Feb. 12, 2025). That argument completely ignores the inefficiency for all parties—and for this Court—of devoting hours and hours to briefing and oral argument preparation related to a rule that is currently stayed and that EPA intends to amend by the Fall of 2026.

In addition to preparing for oral argument, a panel of this Court would need to work through detailed and complex legal arguments to ultimately decide the merits when EPA has represented that both the Rule and the underlying record *will* change. Assuming the Court issues a merits decision on an expedited timeframe (i.e., by July 25, 2025), the Court's work stands to be mooted only a year later by the new rule that EPA promulgates in the Fall of 2026. That outcome would result in the type of wasted effort that voluntary remand avoids.

Granting voluntary remand when an agency so requests also reflects deeper considerations about the "proper judicial role." *Dep't of Commerce v. New York*, 588 U.S. 752, 766 (2019) (citation omitted). EPA has the obligation and authority to decide when it reconsiders any rule. Once the agency decides to do so, remand is the far more efficient path, and remand also prevents a court from wading into how any new rule should be designed while the agency is developing it in the first instance.

In short, granting remand here is the most efficient path forward and recognizes the institutional balance between EPA and this Court.

8

## III. Claims of Prejudice to Respondent-Intervenors are Incorrect.

Respondent-Intervenors may claim that they benefit from the current (soon-to-be-reconsidered) Rule and would be prejudiced by a voluntary remand without vacatur. But those claims would be based on two incorrect premises: (1) that Respondent-Intervenors are likely to succeed on the merits; and (2) that Respondent-Intervenors *will in fact* benefit from the Rule's estimated emissions reductions before a new rule is promulgated in Fall 2026.

*First*, Respondent-Intervenors' arguments rest on the assumption that they will prevail on the merits. Quite the contrary. The Supreme Court has already held that *Petitioners* "are likely to prevail on their argument that the EPA's final rule was not reasonably explained, that the agency failed to supply a satisfactory explanation for its action, and that it instead ignored an important of the aspect of the problem before it." *Ohio v. EPA*, 603 U.S. 279, 294 (2024) (citations and internal quotations omitted)). Moreover, Petitioners have multiple other arguments on which they can prevail, thereby raising the overall likelihood of success even further. Just as this merits factor tipped the scales in *Ohio*, *see id.* at 292, so too should it apply here in considering the likelihood of actual prejudice.

*Second*, and more fundamentally, the actual emissions reductions that would be expected if the Rule goes into effect are the very definition of de minimis, if they exist at all. The Supreme Court stay remains in effect pending "the disposition of the

9

applicants' petitions for review in the United States Court of Appeals for the D.C. Circuit and any petition for writ of certiorari, if such writ is timely sought." *Id.* at 300. Even if one assumes that this Court were to issue a decision on the merits favoring Respondent-Intervenors within just three months after oral argument, that would not end the case or lift the stay. Petitioners would have 90 days to file a petition for writ of certiorari (Fall of 2025 at the earliest), and Respondents and Respondent-Intervenors would have at least 30 days to file a response. S. Ct. R. 13.1, 15.3. The Supreme Court would then schedule the petition for consideration at one or more conferences, meaning that a decision on the petition is unlikely to occur before the end of 2025. Further, the issuance of the stay is an indication that the Court would grant certiorari, in which case the Supreme Court would not likely issue a merits decision until June 2026 or even Fall 2026. But even if certiorari were denied and the judicial stay of the Rule were lifted, EPA's administrative stay would still need to be lifted. *See* 89 Fed. Reg. 87,960 (Nov. 6, 2024) (staying Rule in remaining 11 states in response to *Ohio*). By the time all of that occurred, the 2025 ozone season would certainly have already concluded; the ozone season runs "May through September." 88 Fed. Reg. at 36,817. If the Supreme Court grants certiorari, then the 2026 ozone season would likely also have concluded.

If and when the judicial stay and administrative stays are lifted, EPA would allow an implementation period at least as long as the lead times offered in the Rule

10

(approximately three-years for most sources).[5] In previous multi-state rules issued under 42 U.S.C. § 7410(a)(2)(D) that were stayed, this Court and EPA have treated the period of the stay as a tolling period that extends deadlines for the period of the stay. *See* Order, *Michigan v. EPA*, No. 98-1497, ECF 535128 (D.C. Cir. Aug. 30, 2000) (providing for full 1,309-day implementation period contemplated under the rule); 79 Fed. Reg. 71,663, 71,670 (Dec. 3, 2014) ("This action simply tolls the deadlines of [the rule] by three years, consistent with the order of the DC Circuit lifting the previous stay of the rule."). And when EPA published its second interim final rule staying the Rule for six states in response to SIP disapproval stays, EPA stated that it anticipated that the Rule's original "lead times" for installing controls would be "comparable" to the lead times in the Rule to "giv[e] parties sufficient time to prepare for implementation." 88 Fed. Reg. 67,102, 67,103–04 (Sept. 29, 2023); 89 Fed. Reg. at 87,962 (interim final rule staying the Rule as applied to the remaining States and declaring sources would have "comparable" lead times should the stay lift). For the Rule, that means that none of the emissions reductions that EPA

---

[5] *See* 88 Fed. Reg. at 36,755 ("[T]he EPA is aligning its analysis and implementation of the emissions reductions addressing significant contribution from [powerplant] and non-[powerplant] sources that require relatively longer lead time at a sectoral scale with the 2026 ozone season. . . . The timing of this final rule provides three to four years for [powerplant] and [other industrial] sources to install whatever controls they deem suitable to comply with required emissions reductions by the start of the 2026 and 2027 ozone seasons.").

11

estimated based on installation of certain controls (rather than short-term measures like optimization of existing controls) would come into effect before the 2026 ozone season—the last ozone season before EPA promulgates a replacement rule. To put a finer point on it, regardless of the judicial outcome, administrative stays of the Rule would also need to lift before emissions reductions would occur prior to the completion of EPA's reconsideration process. In short, Respondent Intervenors' claim that this Court's review at this time would benefit them is a mirage.

So, what emissions reductions would likely occur from the short-term measures like optimization of existing controls, assuming that the judicial and administrative stays are eventually lifted? The answer: very little, and potentially none. Because of the stays and lead times built into the Rule, the large majority of the Rule's emissions reductions requirements would not be implemented until 2028 or beyond. Before that time, the Rule estimates an average reduction of ozone concentrations of 0.06 parts per billion, 88 Fed. Reg. at 36,742, 36,743 tbl. V.D.1–1, which amounts to just 0.086% of the 2015 ozone standard of 70 parts per billion, see 80 Fed. Reg. 65,292 (Oct. 26, 2015).[6]

---

[6] This 0.06 parts per billion value is one-tenth of the 0.66 parts per billion average ozone reductions EPA estimated would occur once the three-year implementation period for installing controls had concluded. *See* 88 Fed. Reg. at 36,747 tbl. V.D.2–2.

But even that miniscule reduction assumes implementation of the Rule in all 23 states for which it was intended to apply. Subtracting out the emissions reductions from the states where EPA's SIP disapprovals have been judicially stayed (or vacated on the merits, in the case of Kentucky), the volume of emissions reductions that would be expected for the 2026 ozone season is *less than one-fifth* of the emissions reductions EPA originally anticipated because the states with the largest estimated reductions tended to be the ones where their SIP disapprovals were stayed.[7] Of course, because EPA failed to consider "what happens if some or many of [the original] States are not covered," *Ohio*, 603 U.S. at 287, nothing in the record shows how this emissions reduction would convert to parts per billion of ozone reductions. Suffice it to say, the value would be well below the already de minimis 0.06 parts per billion noted above. And EPA has not represented (and cannot represent) that air quality improvements below 0.06 parts per billion would in any way be "meaningful," the criterion EPA uses in developing the Rule and prior rules promulgated under 42 U.S.C. § 7410(a)(2)(D). *See, e.g.*, 88 Fed. Reg. at 36,741

---

[7] *See* 88 Fed. Reg. at 36,737–38 tbl. V.C.1–1 (summing reduction amounts for states without a judicial stay of the SIP disapproval or a vacatur on the merits of the SIP disapproval, i.e., for Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, New York, Ohio, Pennsylvania, Virginia, and Wisconsin).

(noting that "meaningful" air quality improvements are "a central component" of EPA's analysis).[8]

In sum, combining (1) the stay's tolling period, (2) the Rule's original multi-year implementation timeline for installation of emissions controls, (3) the de minimis levels of anticipated ozone reductions in parts per billion in the Rule's first three years of implementation, (4) EPA's administrative stays of the Rule, with (5) the judicial stays and vacatur of the underlying SIP disapprovals, any potential benefit of the Rule flowing to Respondent-Intervenors during the timeframes they claim they need for attainment demonstrations is nil or virtually nil.

Accordingly, no prejudice results from remanding this case now while EPA reconsiders the Rule by Fall 2026.

---

[8] State Respondent-Intervenors have previously framed the timeline for their alleged need for upwind emissions reductions as being needed before the August 3, 2027 attainment deadline for the 2015 ozone standard and explaining that air quality measurements taken during the ozone seasons in the three preceding years will be used to demonstrate compliance. State Respondent-Intervenor Opp. to Mot. for Abeyance 10. Accordingly, the nominal reductions in ozone concentrations that may be produced in 2026 (if any) would also be attenuated by being averaged with air quality data from 2024 and 2025.

## CONCLUSION

For the reasons set forth in EPA's Motion for Remand and for the additional reasons set forth above, this Court should Remand the Rule to the Agency without vacatur.

Dated: March 20, 2024

Catherine E. Stetson
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
cate.stetson@hoganlovells.com

Respectfully submitted,

*/s/ Ana Maria Gutiérrez*
Ana Maria Gutiérrez
Michael Dean Miller
Womble Bond Dickinson (US) LLP
1601 19th Street, Suite 10000
Denver, CO 80202
(720) 983-1350
ana.gutierrez@wbd-us.com
michael.miller@wbd-us.com

*Counsel for Kinder Morgan, Inc.*

*/s/ Michael B. Schon*
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. N.W.
Washington, DC 20001
(512) 693-8350

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main St.
Oklahoma City, OK 73102
(512) 693-8350

*Counsel for National Mining Association*

*/s/ Kathleen Mueller*
Samuel B. Boxerman
Kathleen Mueller
Jeremy Rozansky
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005

*Counsel for Interstate Natural Gas Association of America and American Petroleum Institute*

15

/s/ Allison D. Wood
Allison D. Wood
Makram B. Jaber
Aaron M. Flynn
MCGUIRE WOODS LLP
888 16th Street N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006

*Counsel for Associated Electric Cooperative, Inc., Deseret Generation & Transmission Co-Operative d/b/a Deseret Power Electric Cooperative, Ohio Valley Electric corporation, Wabash Valley Power Association, Inc. d/b/a Wabash Valley Power Alliance, America's Power, National Rural Electric Cooperative Association and Portland Cement Association*


/s/ Aaron M. Streett
Aaron M. Streett
Matthew L. Kuryla
Beau Carter
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855

*Counsel for Energy Transfer LP*

/s/ David M. Flannery
David M. Flannery
Kathy G. Beckett
Keeleigh S. Huffman
STEPTOE & JOHNSON, PLLC
707 Virginia St. East
Post Office Box 1588
Charleston, WV 25326
(304) 353-8000

Edward L. Kropp
STEPTOE & JOHNSON, PLLC
Post Office Box 36425
Indianapolis, Indiana 46236
(317) 946-9882

*Counsel for Petitioners American Forest & Paper Association, American Iron and Steel Institute, and Midwest Ozone Group*


/s/ Brittany M. Pemberton
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street N.W., Suite 900
Washington, D.C. 20036
(202) 828-1708

*Counsel for TransCanada PipeLine USA Ltd.*

16

*/s/ John D. Lazzaretti*
John D. Lazzaretti
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114
(216) 479-8500

*Counsel for Petitioner United States Steel Corporation*

*/s/ Kelly M. McQueen*
Kelly M. McQueen
THE MCQUEEN FIRM, PLLC
12 Woodsong Drive
Roland, AR 72135
(501) 580-3291

*Counsel for Petitioner Arkansas League of Good Neighbors*

*/s/ Richard S. Moskowitz*
Richard S. Moskowitz
Tyler Kubik
American Fuel & Petrochemical Manufacturers
1800 M Street, NW
Suite 900 North
Washington, DC 20036
(202) 844-5474

*Counsel for Petitioner American Fuel & Petrochemical Manufacturers*

*/s/ Elliot Zenick*
Elliott Zenick
AMERICAN CHEMISTRY COUNCIL
700 2nd St. N.E.
Washington, DC 20002
(202) 249-6744

*Counsel for Petitioner American Chemistry Council*

*/s/ Michael E. Born*
Michael E. Born (49961)
Cheri A. Budzynski (51761)
SHUMAKER, LOOP & KENDRICK, LLP
Huntington Center
41 South High Street, Suite 2400
Columbus, OH 43215
(614) 463-9441

*Counsel for Petitioners Buckeye Power, Inc. and the Ohio Valley Electric Corporation*

*/s/ Laura K. McAfee*
Laura K. McAfee
(D.C. Cir. Bar No. 62386)
BEVERIDGE & DIAMOND, PC
201 North Charles Street, Suite 2200
Baltimore, MD 21201

*Counsel for Enbridge (U.S.) Inc.*

| | |
|---|---|
| */s/ Elbert Lin* | */s/ Mark W. DeLaquil* |
| Elbert Lin | Mark W. DeLaquil |
| Kevin S. Elliker | BAKER & HOSTETLER LLP |
| David N. Goldman | Washington Square, Suite 1100 |
| HUNTON ANDREWS KURTH LLP | 1050 Connecticut Avenue N.W. |
| 951 East Byrd Street, East Tower | Washington, D.C. 20036 |
| Richmond, VA 23219 | (202) 861-1500 |
| (804) 788-8200 | |
| | Martin T. Booher |
| F. William Brownell | Joshua T. Wilson |
| E. Carter Chandler Clements | BAKER & HOSTETLER LLP |
| HUNTON ANDREWS KURTH LLP | 2000 Key Tower |
| 2200 Pennsylvania Avenue N.W. | 127 Public Square |
| Washington, DC 20037 | Cleveland, Ohio 44114 |
| (202) 955-1500 | |
| | *Counsel for Hybar LLC* |
| *Counsel for Petitioners Union Electric Company, d/b/a Ameren Missouri, and Arkansas League of Good Neighbors* | |

18

## Certificate of Compliance

I hereby certify that the foregoing Joint Response complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a 14-point, proportionally spaced font, Times New Roman.

I further certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,381 words, excluding exempted portions, according to the count of Microsoft Word.

/s/ *Ana M. Gutiérrez*
Ana M. Gutiérrez

## Certificate of Service

I hereby certify that on March 20, 2025, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to the parties.

*/s/ Ana M. Gutiérrez*
Ana M. Gutiérrez