# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 23-1157**                                    **September Term, 2024**

**EPA-88FR36654**
**EPA-89FR99105**

**Filed On:** May 2, 2025

State of Utah, by and through its Governor,
Spencer J. Cox, and its Attorney General,
Sean D. Reyes,

        Petitioner

    v.

Environmental Protection Agency and Lee M.
Zeldin, Administrator, U.S. EPA,

        Respondents

------------------------------

City Utilities of Springfield, Missouri, et al.,
        Intervenors
------------------------------

Consolidated with 23-1181, 23-1183,
23-1190, 23-1191, 23-1193, 23-1195,
23-1199, 23-1200, 23-1201, 23-1202,
23-1203, 23-1205, 23-1206, 23-1207,
23-1208, 23-1209, 23-1211, 23-1306,
23-1307, 23-1314, 23-1315, 23-1316,
23-1317, 25-1054, 25-1055, 25-1057

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 23-1157**                                    **September Term, 2024**

**No. 24-1172**

                                                              **EPA-89FR23526**

United States Steel Corporation,

        Petitioner

    v.

Environmental Protection Agency and
Michael S. Regan, Administrator, United
States Environmental Protection Agency,

        Respondents

------------------------------

Air Alliance Houston, et al.,
        Intervenors
------------------------------

Consolidated with 24-1176


    **BEFORE:**   Wilkins, Rao, and Walker, Circuit Judges

### O R D E R  A N D  S T A T E M E N T S

    Upon consideration of the April 14, 2025 order holding these cases in abeyance, which indicated that the reasons for the order would be issued at a later date, attached are statements of Circuit Judge Rao and Circuit Judge Wilkins.  Circuit Judge Walker joins in the statement of Circuit Judge Rao.

### Per Curiam

                            **FOR THE COURT:**
                            Clifton B. Cislak, Clerk

                 BY:   /s/
                            Selena R. Gancasz
                            Deputy Clerk

Rao, *Circuit Judge*: EPA has begun reviewing its rules in light of the priorities and policies of the new administration. For the rule challenged here, *Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 36654 (June 5, 2023), the agency has identified specific issues that have prompted it to reconsider its previous approach. EPA attests that it plans to propose a new rule addressing these problems and has informed the court it intends to complete any final rulemaking by fall 2026. The agency has requested the court either remand the rule or, in the alternative, hold the challenges in abeyance pending this reconsideration.

The court correctly holds these cases in abeyance. Because a predictable flurry of similar motions occurs during each presidential transition, I write to explain the considerations that guide this court in exercising its discretion to hold a case in abeyance. Furthermore, I suggest some reasons why "remanding" a rule, without any consideration of the merits, is inappropriate in these circumstances.

I.

When a court holds a case in abeyance, it stays all proceedings until the court directs otherwise. *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008) (per curiam). A court's authority to stay proceedings derives from its inherent power to manage its docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). Whether to hold a case in abeyance is thus a matter of discretion and judgment, which must take into account the optimal use of judicial resources as well as the "competing interests" of the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). There are several circumstances in which abeyance may be justified. *See Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 79 (D.C. Cir. 2022) (Rao, J., dissenting) (collecting examples). I focus here on abeyance sought when an agency intends to review or reconsider a challenged regulation.

2

A.

Although the decision to hold a case in abeyance is committed to our discretion, "a motion to [the court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807) (Marshall, C.J.). Adherence to the rule of law demands we exercise our discretion in a manner that provides consistent treatment to similarly situated parties and to the government across political transitions. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005) ("Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike."). While we often grant abeyance without explaining how we are exercising discretion, our caselaw and practice provide several guiding principles. Many of these principles are drawn from cases granting abeyance because a case is unripe. *See, e.g.*, *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386–90 (D.C. Cir. 2012). Even when ripeness is not at issue, however, similar prudential considerations guide our general discretion to hold a case in abeyance in response to a motion from one of the parties.

First, the primary reason for holding a case in abeyance is to promote judicial economy. "It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate." *Ctr. for Biological Diversity*, 56 F.4th at 71. Allowing resolution of a dispute without the court's intervention "conserve[s] judicial resources" and "comports with our theoretical role as the governmental branch of last resort." *Am. Petrol. Inst.*, 683 F.3d at 386–87 (cleaned up); *see also Landis*, 299 U.S. at 255 ("Occasions may arise when it would be a scandal to the administration of justice … if power to coordinate the business

3

of the court efficiently and sensibly were lacking altogether.")
(cleaned up). Abeyance may be warranted when there are
legitimate developments that could obviate the need for judicial
review, such as when a new administration chooses to
reevaluate its litigating position or when an agency plans to
reconsider a challenged rule. *See, e.g.*, Order at 1, *SSM Litig.
Grp. v. EPA*, No. 23-1267 (D.C. Cir. Mar. 4, 2025); *Sierra Club
v. EPA*, 551 F.3d 1019, 1023 (D.C. Cir. 2008).

Second, the interest in judicial economy must be weighed
against any potential prejudice to the parties. *Landis*, 299 U.S.
at 258–59. Even when abeyance would conserve judicial
resources, it might nevertheless be inappropriate if regulated
parties are likely to face "immediate and significant" hardship.
*Am. Petrol. Inst.*, 683 F.3d at 389 (cleaned up). When the party
challenging a rule does not oppose the agency's motion for
abeyance, the court will generally presume there is no hardship
and grant abeyance. *See, e.g.*, *Mississippi v. EPA*, 744 F.3d
1334, 1341 (D.C. Cir. 2013) (noting the court had previously
granted an unopposed motion for abeyance to allow for
reconsideration of the challenged rule).

Even when abeyance is opposed and a party points to some
hardship, the possibility of inconvenience will not
categorically outweigh the need for the sound use of judicial
resources. *See Landis*, 299 U.S. at 256. The court will instead
consider the nature and degree of any alleged hardship. For
instance, the fact that a directly regulated entity may be
"required to engage in, or refrain from, any conduct" weighs
heavier than the mere uncertainty or additional proceedings
that might result from deferred review. *Devia v. Nuclear Regul.
Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007); *Nevada v. Dep't
of Energy*, 457 F.3d 78, 86 (D.C. Cir. 2006). Moreover, when
a challenger will not be subject to the regulation while the case
is held in abeyance—such as when the rule has been stayed—

4

a legitimate interest in judicial economy will likely prevail over any alleged hardship.[1] *See* Order at 2, *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. Apr. 28, 2017) (granting a series of requests for abeyance in litigation challenging a rule stayed by the Supreme Court); *cf. CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 989 (D.C. Cir. 2008) (holding a case in abeyance on prudential ripeness grounds because the challenged rule had not yet taken effect).

Third, when a court determines abeyance is warranted, it must be mindful of the duration for which it will defer review. The length of time a case is held in abeyance must be "kept within the bounds of moderation" and limited to accommodate the circumstances that prompted the stay in the first place. *Landis*, 299 U.S. at 256; *see also Jones*, 520 U.S. at 707 (reversing a district court's "lengthy and categorical stay" of proceedings that "t[ook] no account whatever of the respondent's interest in bringing the case to trial"). In other

---

[1] Regulatory challenges sometimes involve intervenors who support the government's efforts to regulate other parties. We have generally declined to consider the hardship to such respondent-intervenors when an agency seeks to reconsider a regulation. The hardship inquiry typically focuses on "effects of a sort that traditionally would have qualified as harm," such as requiring parties to do or refrain from doing certain activities or creating legal rights or obligations. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *cf. Devia*, 492 F.3d at 427 (focusing the hardship inquiry on "*challenging parties*" and noting the parties "cite no case in which a court actually considered the hardship to a respondent (or an intervenor-respondent) of deferring a decision on a challenger's petition") (cleaned up). Respondent-intervenors defending the regulation of others do not suffer such traditional harms; they merely benefit from the rule's regulation of other parties and stand to lose that benefit if the rule disappears. As such, their interests are generally not part of the hardship inquiry.

5

words, the length of a stay should depend on the reason
abeyance is granted. If the government needs time to reconsider
its litigation position, a short-term abeyance of sixty or ninety
days is typically justified. *See, e.g.*, Order at 1, *West Virginia
v. EPA*, No. 24-1120 (D.C. Cir. Feb. 19, 2025) (granting
motion for sixty-day abeyance to accommodate change in
administration); Order at 1, *Am. Fuel & Petrochem. Mfrs. v.
EPA*, No. 19-1124 (D.C. Cir. Feb. 5, 2021) (granting motion
for ninety-day abeyance to accommodate change in
administration). By contrast, a longer abeyance, coupled with
periodic status reports, may be justified if an agency has
committed to reconsidering a challenged rule. *See, e.g.*, *Am.
Petrol. Inst.*, 683 F.3d at 389–90.

B.

The considerations set forth above weigh heavily in favor
of holding these cases in abeyance. EPA has stated it intends to
reconsider the challenged rule—identifying particular issues
that are relevant to the petitioners' challenges—and has
attested it plans to complete any new rule by fall 2026. None
of the petitioners oppose EPA's motion. We have previously
explained that abeyance is appropriate when an agency
contemplates "a complete reversal of course … that, if
adopted, would necessitate substantively different legal
analysis and would likely moot the analysis we could undertake
if deciding the case now." *Am. Petrol. Inst.*, 683 F.3d at 388–
89. Allowing EPA to reconsider the rule might obviate the need
for our review and avoid the unnecessary expenditure of
judicial resources in a matter of immense complexity.

Moreover, none of the parties will face substantial or
immediate hardship from holding these cases in abeyance. The
Supreme Court has stayed the enforcement of EPA's rule
pending the Court's review, and EPA has effectively stayed the

6

rule for every state in which it originally applied. *See Ohio v. EPA*, 144 S. Ct. 2040, 2058 (2024); 88 Fed. Reg. 49295 (July 31, 2023); 88 Fed. Reg. 67102 (Sept. 29, 2023); 89 Fed. Reg. 87960 (Nov. 6, 2024). As a result, regardless of how this court might eventually resolve the merits of the current challenges, the practical status quo will not change until, at a minimum, the Supreme Court completes its review or EPA completes a new rulemaking to lift its administrative stays.[2]

In similar situations, this court generally grants abeyance.[3] Because judicial economy will be served without any hardship to the parties, it is appropriate to "hold the case[s] in abeyance pending resolution of the proposed rulemaking, subject to

---

[2] Respondent-Intervenors oppose EPA's motion for abeyance, pointing to environmental and public health harms that may occur while the rule is not in effect. Even assuming we should consider the interests of Respondent-Intervenors, their claims of hardship are unavailing. As part of the hardship analysis, this court may consider "the likelihood that the [relevant parties] will prevail when the case is finally adjudicated." *Basardh*, 545 F.3d at 1069. The Supreme Court has already held that the challenges to the rule are likely to prevail on the merits, which suggests there will be less potential prejudice to Respondent-Intervenors from delaying our review. *See Ohio*, 144 S. Ct. at 2054.

[3] *See, e.g.*, Order at 1, *California Cmtys. Against Toxics v. EPA*, No. 21-1024 (D.C. Cir. Mar. 31, 2021) (holding matter in abeyance to allow new administration to review and consider challenged regulation); Order at 1, *California v. Regan*, No. 20-1357 (D.C. Cir. Feb. 12, 2021) (same); Order at 1, *New York v. Dep't of Lab.*, No. 19-5125 (D.C. Cir. Feb. 8, 2021) (same); Order at 2, *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. Apr. 28, 2017) (same); Order at 1, *Murray Energy Corp. v. EPA*, No. 16-1127 (D.C. Cir. Apr. 27, 2017) (same); Order at 2, *Walter Coke, Inc. v. EPA*, No. 15-1166 (D.C. Cir. Apr. 24, 2017) (same).

7

regular reports from EPA on its status." *Am. Petrol. Inst.*, 683 F.3d. at 389.

## II.

When an agency seeks to reconsider a regulation, whether during a presidential transition or otherwise, it sometimes requests remand without vacatur. While we have occasionally granted these requests, I have serious doubts that we have authority to take this action with respect to a challenged rule.

At the outset, it is important to recognize that abeyance and remand without vacatur are mutually exclusive approaches. When a case is held in abeyance, the court retains jurisdiction and can revive the dispute at any time. When a case is remanded, however, "this court *does not retain jurisdiction*, and a new notice of appeal or petition for review will be necessary if a party seeks review of the proceedings conducted on remand." D.C. Cir. Rule 41(b) (emphasis added). A court therefore must choose to grant either abeyance or remand—it cannot opt for both.

I am skeptical this court has authority to remand a rule to the agency without adjudicating the underlying merits. In limited circumstances, we have granted remand without vacatur after evaluating and deciding the merits of a challenge, but that remedy is the exception not the rule. *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518–19 (D.C. Cir. 2020) (explaining "vacatur is the normal remedy under the APA" and that remand without vacatur is used only in "exceptional" circumstances) (cleaned up). Putting aside the general propriety of remand without vacatur,[4] it is difficult to

---

[4] Numerous judges and commentators have argued we have no authority to grant this remedy even after deciding the merits. *See,*

8

identify any authority for this court to effectuate a remand, which terminates the pending litigation, without any resolution of the substantive merits.

In these and other cases, EPA asks the court to remand the rule to the agency without deciding the merits. We have sanctioned this remedy—often called "voluntary remand"—on several occasions without identifying or evaluating the source of our authority. *See, e.g.*, *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436–38 (D.C. Cir. 2018) (partially granting an agency request to voluntarily remand a rule); *Clean Wisconsin v. EPA*, 964 F.3d 1145, 1174–77 (D.C. Cir. 2020) (same).

Voluntary remand first appeared in our caselaw in the context of individual agency determinations involving adjudications and licensing. In these circumstances, we analogized voluntary remand to the established power of appellate courts to remand a case to a lower court for further proceedings. *See, e.g.*, *Fleming v. FCC*, 225 F.2d 523, 526 (D.C. Cir. 1955) (observing "it is not unusual for an appellate body to remand causes for further proceedings without deciding the merits") (cleaned up). A decision by the court to vacate an agency's adjudication or license would usually result in a remand for further administrative proceedings, and we have explained that it is sometimes appropriate to let an agency correct an error before judicial determination of the merits.

---

*e.g.*, *Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., concurring) ("No statute governing judicial review of agency action permits such a disposition and the controlling statute—5 U.S.C. § 706(2)(A)—flatly prohibits it."); John Harrison, *Remand Without Vacatur and the Ab Initio Invalidity of Unlawful Regulations in Administrative Law*, 48 BYU L. Rev. 2077, 2103–39 (2023) (questioning the statutory basis for remand without vacatur in the APA and the Clean Air Act).

9

*Util. Solid Waste Activities Grp.*, 901 F.3d at 436 ("Remand has the benefit of allowing agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.") (cleaned up). In such instances, remand of an individual agency decision sends the party back to the agency for further proceedings in the same individual action.

While we have analogized agencies to lower courts in the context of individual determinations, we have never explained how or why the analogy extends to agency rulemaking. The analogy seems inapposite for several reasons. A final rule is generally applicable to the public and cannot be revised without the agency undertaking a new rulemaking, following the procedures required by the Administrative Procedure Act. *See* 5 U.S.C. § 553; *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change."). A judicial directive to "remand" a rule for "reconsideration" does not provide the agency with any authority to bypass the ordinary APA requirements. The agency must still undertake a new rulemaking to modify, amend, or repeal the challenged rule. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("The [APA] makes no distinction … between initial agency action and subsequent agency action undoing or revising that action."). Moreover, an agency does not need a remand to reconsider a challenged rule—it can do so at any time, including while challenges are pending before this court. And because the remanded rule has not been vacated, it remains legally binding on petitioners and other private parties until a replacement rule is finalized.

Finally, remand of a rule generally results in dismissal of the case under circuit rules. This can have potentially severe

10

consequences. Judicial review of many agency actions, including the rule at issue here, is subject to strict statutes of limitation or repose. *See* 42 U.S.C. § 7607(b)(1) ("Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register."); *id.* § 7607(b)(2) (providing action that could be reviewed by filing a petition for review "shall not be subject to judicial review in civil or criminal proceedings for enforcement"). In these cases, the sixty-day statutory clock from the original rule's promulgation has long since run. Granting remand here would likely leave petitioners without judicial recourse if EPA ultimately fails to follow through with a new rulemaking or resumes enforcement of the challenged rule.

Abeyance is well within the court's recognized discretion and does not carry the same risks as remand. Abeyance simply holds the pending challenge and preserves the possibility of judicial review in the event the agency's reconsideration of its rulemaking "takes an unforeseen turn." *Am. Petrol. Inst.*, 683 F.3d at 389.

* * *

When an agency seeks to reconsider a rule challenged in court, it should request abeyance. The court may exercise discretion to suspend consideration of the case for a reasonable period based on the factors discussed above. Abeyance is warranted here while EPA considers a replacement for the rule challenged in this litigation.

1

WILKINS, *Circuit Judge*:  While the EPA did not commit to proposing a new Rule, the agency has stated that it "intends to diligently and timely undertake . . . reconsideration [of the Rule] and to complete any new rulemaking by Fall 2026."  EPA Motion for Remand at 1.  Given those circumstances and the emergency stay of the Rule entered by the Supreme Court, I agree to hold the cases in abeyance.  Our Court has received a variety of motions to remand and/or hold cases in abeyance over the past several decades, and they are usually resolved by unpublished orders which are difficult to research, so I do not feel comfortable attempting to distill comprehensively our practices and considerations when ruling on such motions.  Regarding the issue of voluntary remand without vacatur, none of the parties have raised or briefed the issue as to whether the past practices of our Court have been inappropriate, and thus I see no need to opine on the issue at this time.